**AKERMAN LLP**
Michael R. Weiss (SBN 180946)
Email: michael.weiss@akerman.com
Joshua R. Mandell (SBN 225269)
Email: joshua.mandell@akerman.com
725 South Figueroa Street, 38th Floor
Los Angeles, California 90017-5433
Telephone: (213) 688-9500
Facsimile:  (213) 627-6342

Attorneys for Plaintiff
CENTRAL FREIGHT LINES, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| **CENTRAL FREIGHT LINES, INC.,** a Texas corporation,<br><br>Plaintiff,<br><br>v.<br><br>**AMAZON FULFILLMENT SERVICES**, a Delaware corporation, and **DOES 1** through **25,** inclusive,<br><br>Defendant. | **Case No. 2:17-cv-3147**<br><br>**COMPLAINT FOR DAMAGES FOR:**<br><br>**1.  DECLARATORY RELIEF;**<br><br>**2.  BREACH OF CONTRACT;**<br><br>**3.  VIOLATION OF CONSUMER PROTECTION ACTS; AND**<br><br>**4.  FRAUD**<br><br>**DEMAND FOR JURY TRIAL** |

COMES NOW, Plaintiff Central Freight Lines, Inc. ("Central Freight") and complains and alleges against defendants, and each of them, the following in support of its Complaint:

## NATURE OF THE CASE

1.      Amazon.com, Inc. is the number one shipper in the United States, the largest retailer in the world by market value, and one of the top ten retailers in the world by retail revenue.  Amazon Fulfillment Services ("Amazon") is a subsidiary of Amazon.com, Inc.

2.      Amazon has unlawfully used its economic power and dominance in the freight shipping industry in an attempt to bully Central Freight into accepting unfair contract terms it did not agree to, to unilaterally impose onerous non-industry standards and terms for Less Than Truckload ("LTL") shipping, and to repudiate fee arrangements mutually agreed to by the parties.

3.      Amazon then, without justification or adjudication, assessed overcharge fees of millions of dollars against Central Freight without contractual or legal authority.  When Central Freight attempted to resolve the dispute in order to continue the business relationship, Amazon terminated Central Freight's LTL shipping relationship through the 2016 bid.  Then, in an attempt to collect its unauthorized and onerous overcharge fees, Amazon fraudulently induced Central Freight to continue to work for other divisions of Amazon thereby incurring millions of dollars in freight fees so that Amazon could, without any legal justification, not pay the millions of dollars owed to Central Freight for  such freight shipping fees incurred by the other Amazon divisions.

4.      In this regard, Amazon first breached its contract with Central Freight, and then used its economic power and dominance to fraudulently induce Central Freight to perform additional services for Amazon for payment, when all the while Amazon had no intention of paying Central Freight for such services.  After

Amazon induced Central Freight to perform the additional services, it withheld payment under a theory of set-off not contained in any written document.   In addition to fraud and breach of contract, Amazon's conduct constitutes a deceptive trade practice under California's and Washington's consumer protection statutes, and is simply an unlawful attempt to throw its economic power around and force compliance with unfair contractual terms.   Amazon's conduct should not be tolerated.

## THE PARTIES AND OTHERS

5.     Plaintiff, Central Freight, is a corporation organized and existing under the laws of the State of Texas, with its principal place business located in Waco, Texas.  Central Freight is a resident and citizen of the State of Texas.

6.     Defendant, Amazon, is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located in Seattle, Washington. Amazon is a resident and citizen of the State of Washington.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8.     Venue in this District is appropriate pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District. Specifically, more than 50 percent of Central Freight's freight services that are in dispute in this matter took place either partially or fully within this District.

9.     The conduct being complained about in this matter is Amazon's improper set-off of millions of dollars of freight fees.  The contract between the parties does not allow for set-off.  Amazon, rather than following the contract, which selects Washington State to resolve disputes, instead engaged in self-help

that is entirely outside the contract.  Therefore, any venue clause in the contract, to the extent it would otherwise be applicable, should not be enforced.

<u>**ALLEGATIONS COMMON TO ALL COUNTS**</u>

**I.      The Parties' Contractual Relationship.**

10.     Central Freight is a less-than-truckload ("LTL") freight carrier based in the southwestern United States. LTL is a shipping option when the volume of the freight is less than a full truckload ("TL"), but greater than what can be sent via a parcel.  As a LTL carrier, Central Freight picks up multiple freight shipments from multiple customers on a single truck and then routes that freight for delivery.

11.     Central Freight and Amazon entered into a Transportation Agreement ("Agreement") with an effective date of July 7, 2011. (A true and correct copy of the Agreement is attached hereto as Exhibit A and incorporated herein.)

12.     Amazon and Central Freight subsequently renewed the Agreement on a yearly basis, and the Agreement was in full force and effect at all relevant times.

13.     Pursuant to the Agreement, Central Freight agreed to provide freight transportation services for Amazon, including but not limited to receiving, loading, storing, transporting, unloading, and other related transportation services.  (Ex. A, at Exhibit A-1.)

14.     In return for these transportation services, Amazon agreed to pay Central Freight in accordance with the rate structure set forth in the Agreement, including fuel surcharges, "or as mutually agreed to by the parties." (Ex. A, Section 2.1.)

15.     Central Freight has fully performed under the Agreement.

16.     Amazon, however, breached the Agreement and otherwise acted wrongfully by: (i) falsely claiming that Central Freight overcharged Amazon for the freight services; (ii) attempting to force Central Freight to accept billing and procedure changes that Central Freight never agreed to; (iii) failing to honor billing arrangements that were specifically agreed to by the parties; (iv) terminating

1    Central Freight as a LTL carrier when it refused to accept Amazon's unilateral

2    modifications to the Agreement; and (v) withholding payment for other unrelated

3    freight services provided by Central Freight as purported set-off.

4
**II.    Amazon's Attempts to Use Economic Power to Wrongly and**
5    **Unilaterally Force Unfair Contractual Modifications on Central Freight.**

6
**A.    LTL Shipping Custom and Practice and the Parties' Relationship.**

7    17.    Freight carriers in the United States generally offer two main types of

8    service, TL (full truckload) and LTL (less-than-truckload). LTL shipping means a

9    shipment that does not require a full 48-foot or 53-foot trailer.

10   18.    LTL rates are generally determined by class, weight, lane (*i.e.*, pickup

11   and delivery locations), and any additional required services.

12   19.    In addition, the long-standing custom and practice in the LTL shipping

13   industry is that shipments that take up 16 ft. or more, or 8 pallet spaces, on the floor

14   of a trailer do not qualify for the LTL rate.  Shipments of eight or more pallet

15   spaces can create logistical and profitability problems for a carrier because they

16   result in carrier additional cost associated with the loss of trailer capacity for

17   additional shipments, as well cause equipment imbalances that increase carrier non-

18   revenue empty miles.

19   20.    Because of this, an 8 Pallet Shipment is considered a volume shipment

20   that requires a carrier to provide a volume "spot quote." A spot quote is a one-time

21   rate quote issued to a shipper for one transaction or one group of transactions.

22   21.    In addition, custom and practice in the LTL shipping industry is that

23   each bill of lading is a separate shipment and is invoiced separately, even if the

24   shipment is for the same day and the same destination.  Thus, multiple items going

25   to the same location are individually billed and generate more revue for the shipper.

26   22.    Central Freight began providing freight services to Amazon in mid-

27   2011.  During most of their relationship up until mid-2016, Central Freight and

28   Amazon followed LTL shipping custom and practice with regard to 8 Pallet

shipments and the billing for same destination/same day shipments

23.   However, and as described below, Amazon in mid-2016 attempted to wield its economic power to force through billing and procedure changes that Central Freight never agreed to.

**B.   Amazon Attempts to Unilaterally Change the Parties' Express Agreement That There Would Be No Discount For 8 Pallet Shipments.**

24.   After Central Freight began performing under the 2011 Agreement, it received orders from Amazon not only for LTL transportation services, but also for 8 Pallet Shipments.

25.   The Agreement does not address payment for 8 Pallet Shipments.

26.   However, Central Freight and Amazon entered into an oral modification of the Agreement in early 2012 pursuant to which: (i) Central Freight agreed to pick up any 8 Pallet Shipments tendered by Amazon; and (ii) Amazon agreed to pay Central Freight's volume "spot quote" plus the LTL fuel surcharge for the 8 Pallet Shipments (instead of paying Central Freight's full TL "rack rate" plus the TL fuel surcharge).

27.   From June 2012 to August of 2016, Amazon continued to tender to Central Freight shipments consisting of 8 or more pallet spaces.  From June 2012 to August of 2016, in accordance with the parties' oral modification, Central Freight picked up the 8 Pallet Shipments, and for these shipments Amazon paid without protest Central Freight's volume spot quote plus the LTL fuel service charge for the 8 Pallet Shipments.

28.   In e-mail correspondence in January of 2014, Central Freight and Amazon discussed the pricing for 8 pallet shipments that was mutually agreed to in 2012. (A true and correct copy of the e-mail correspondence is attached hereto as Exhibit B and incorporated herein.)

29.   In the January 2014 e-mail correspondence, Christian Piller ("Piller"),

6

Case No. 2:17-cv-3147

**COMPLAINT**

Amazon's manager for Inbound Transportation, acknowledged the 2012 oral modification and proposed that this ***already existing agreement*** be memorialized in writing by stating "Let's get an addendum to the contract ***to include this agreement***" (emphasis added). *Id*.

30.   In addition, Pillar approved the payment of Central Freight's spot quote rate for the specific 8 Pallet Shipment that was being discussed in the January 2014 e-mails, stating "I approved the shipment and appreciate your efforts to give us the best rates." *Id*.

31.   Central Freight prepared a written addendum to the Agreement in January of 2014 memorializing the parties' already existing oral modification of the Agreement providing that the price Amazon would pay for 8 Pallet Shipments was Central Freight's volume spot quote plus the LTL fuel surcharge.

32.   Amazon neglected to sign by the addendum, but otherwise performed as if the modification was in place for another two and a half years.

33.   In June of 2016, two and a half years after Piller acknowledged the oral agreement, and four years after the 8 pallet spot quote was agreed upon, Amazon reversed its position and claimed for the first time that the oral modification is unenforceable because the Agreement requires any modifications to be made in writing.   (A true and correct copy of the June 2016 e-mail correspondence is attached hereto as Exhibit C and incorporated herein.)

34.   Amazon's position is contrary to law, which permits parties to orally modify a written agreement even when the agreement contains a "no oral modification clause," as long as there is mutual agreement of the parties.

35.   Amazon conducted an audit of Central Freight's services in 2016.  In the August 10, 2016 Demand Letter, Amazon formally demanded that Central Freight reimburse it on the 8 Pallet Issue a total of $2,389,538, which is the amount that Amazon wrongfully claims it overpaid from 2012 to June 2016 because a 30 percent discount was not applied to the 8 Pallet Shipments. (A true and correct copy

of the August 10, 2016 Demand Letter is attached hereto as Exhibit D and incorporated herein.)

36.     However, the Agreement provides that all claims by Amazon must be filed within 18 months of the original invoice.  Amazon subsequently reduced its total demand to $1,302,440.00 because that is the amount that Amazon wrongly claims it overpaid for the 8 Pallet Shipments for the 18 months preceding June of 2016.

37.     Central Freight declined to pay the $1,302,440.00 demanded because Amazon's retroactive demand for reimbursement was contrary to the parties' express oral and confirmed in writings agreement and the parties' custom and practice and course of dealings.

**C.     Amazon's Unilateral Attempt to Change the Parties' Custom and Practice for Billing for Multiple Shipments.**

38.     Amazons procedure is to generate an Amazon pick up Tender ID that can contain multiple Amazon Reference Numbers ("ARN").

39.     The parties' custom and practice and course of dealings from the execution of the Agreement in 2011, was that Central Freight would invoice Amazon separately for each Bill of Lading ("BOL") given to Central Freight by the Amazon vendor.

40.     On February 13, 2016, Amazon sent an e-mail to Central Freight (the "Directive") directing that from that date onwards, all shipments from the same origin to the same destination on the same day would constitute a single shipment notwithstanding the existence of multiple ARNs and BOLs.  (A true and correct copy of the February 13, 2016 Directive is attached hereto as Exhibit E and incorporated herein.)

41.     By issuing this Directive, Amazon was attempting to unilaterally modify the Agreement in order to secure a reduced shipping rate for itself.

42.     Amazon sent the Directive not only to Central Freight, but also to "All

Carriers" listed in the bcc field of the e-mail.  On information and belief, these other carriers who received the Directive include Estes Express Lines, XPO Logistics, New England Motor Freight, Dayton Freight Lines, Inc., and AAA Cooper Transportation.  Both Estes Express Lines and XPO Logistics maintain terminals in California.

43.     Amazon made this unilateral shipping rate change without the agreement of its LTL carriers and was thus using it market size to dictate modified terms not only to Central Freight in violation of the parties' understandings and practices, but also to an unknown number of other carriers and in violation of the agreements they have with Amazon and/or the custom and practice that they had established with Amazon.

44.     Moreover, the established custom and practice and course of dealings between Central Freight and Amazon was that any requests for changes in procedure or billing were addressed to senior management at Central Freight, specifically Tom Botsios, Central Freight's Executive Vice President & Chief Operating Officer.

45.     When Amazon unilaterally sought to impose the Directive to modify the parties' business relationship relating to multiple ARNs, it did not advise Central Freight senior management of this fact.   Instead, Amazon merely communicated its mandate to personnel in Central Freight's accounts receivable department that had no authority or ability to alter the parties' relationship in any substantive manner.

46.     No one in management at Central Freight was even aware for a number of months after Amazon issued the Directive of Amazon's attempt to modify the existing custom and practice for billing for same destination/same day shipments with multiple ARNs.

47.     Simply put, there was no meeting of the minds on this issue between Central Freight and Amazon. Consequently, Amazon's unilateral directive was not

binding on Central Freight.

48.     Despite this, Amazon's August 10, 2016 Demand Letter ordered that Central Freight pay it $431,028.00, which is the amount that Amazon wrongly claims it overpaid for same destination/same day shipments with multiple BOLs.

49.     Central Freight declined to pay the $431,028.00 because Amazon's retroactive demand for reimbursement was contrary to the parties' custom and practice and course of dealings, and was an improper attempt by Amazon to use its market size to extract concessions from Central Freight.

**D.     Amazon's Unilateral Attempt to Change the Parties' Custom and Practice Regarding Tender IDs.**

50.     In the Directive, Amazon also unilaterally attempted to change the parties' custom and practice and course of dealings with respect to Tender IDs. (*See* Ex. E.)

51.     A Tender ID is transmitted from Amazon to a carrier such as Central Freight and is authorization to move that particular shipment from origin to destination.

52.     Since the beginning of the parties' relationship in mid-2011, Amazon's vendors gave Central Freight shipments without tender IDs.  Central Freight picked up shipments without tender IDs, appointed those shipments in the Amazon appointment system, and delivered the shipments to Amazon.

53.     Amazon, without Central Freight's consent or agreement, issued the Directive that purportedly required Central Freight to cross-reference the tender IDs ARNs received to the ARN information on the vendors' BOL at time of pick up.

54.     Moreover, the Directive dictated that Central Freight refuse to pick up any bill of lading for which Central Freight did not have a corresponding tender ID.

55.     This would lead to situations where Central Freight would incur –

through no fault of its own – the costs of going to pick-up shipments that would not leave the dock.  It would also lead to situations where Central Freight's drivers would get into disputes with irate vendors incensed at Central Freight's refusal to pick-up the Amazon shipment.

56.     Further, in the Directive Amazon also mandated that if Central Freight picked up a shipment without a tender ID, it had to return the shipment to the vendor at the vendor's cost.

57.     Central Freight in the Agreement never agreed to take on these additional responsibilities and costs, and therefore these additional requirements/contract terms are not enforceable against Central Freight.

58.     As with the Multiple ARN Dispute, Amazon did not advise Central Freight's senior management of its unilateral attempt to change the parties' custom and practice and course of dealings with regard to Tender IDs.  Instead, Amazon only communicated the Directive to personnel in Central Freight's accounts receivable department that had no authority or ability to alter the parties' relationship in any substantive manner.

59.     Now, after the fact, Amazon is demanding reimbursement of money it already paid because certain shipments did not have a tender ID and purportedly should have been returned to the vendor to route to a different carrier, and because Central Freight did not return the shipments to their vendor but instead appointed those shipments in the Amazon appointment program and was given appointments by Amazon to deliver the shipments to Amazon.

60.     Instead of returning the shipments, Central Freight delivered the shipments to Amazon per the bill of lading received from the vendor, as was always the parties' custom and practice and course of dealings.  Therefore, Central Freight should not be penalized.

61.     Furthermore, Central Freight never agreed to take responsibility to cross-reference with the vendor's documents to ensure the vendor's compliance

with Amazon procedures.

62.     Amazon's August 10, 2016 Demand Letter ordered that Central Freight pay it $36,036.00, which is the amount that Amazon wrongly claims it overpaid for same destination/same day shipments with multiple ARNs and BOLs.

63.     Central Freight declined to pay the $36,036.00 because Amazon's retroactive demand for reimbursement was contrary to the parties' express oral agreement, which was confirmed in writings, and was an improper attempt by Amazon to use its market size to extract concessions.

## III.     Amazon's Demand That Central Freight Capitulate to Amazon's Unilateral Modification of the Parties' Agreement.

64.     Amazon sent Central Freight a letter (the "Demand Letter") dated August 10, 2016, in which Amazon demanded that Central Freight repay $2,856,602.00 to Amazon based on purported overpayments under the Agreement dating back many years in some cases.  (*See* Exhibit D.)

65.     In the Demand Letter, Amazon raises three issues regarding the invoices that Central Freight submitted to Amazon and that Amazon accepted and paid without protest at the time.

66.     These issues are: 1) that CFL is not providing a discount for shipments of 8 pallets or more ("8 Pallet Dispute"); (2) that Central Freight failed to follow Amazon's February 13, 2016 Directive regarding billing same origin/same destination/same day freight with multiple Amazon Reference Numbers ("Multiple ARN and BOL Dispute"); and 3) that Central Freight failed to follow Amazon's February 13, 2016 Directive regarding the submission of invoices for payment for shipments that Amazon claims did not have a proper Tender ID ("Tender ID Dispute").

67.     Amazon's demand ignores the parties' agreements and practices, and attempts to impose unilateral modifications contrary to basic contract principles,

then without adjudication imposes millions of dollars in purported overage fees.

68.    Central Freight did not agree to Amazon's demand for purported reimbursement to Amazon because Central Freight did not overbill Amazon for any of the services it provided.

**IV.    Termination of Central Freight's LTL Business with Amazon.**

69.    After issuance of the Demand Letter, Central Freight attempted to resolve the disputes regarding billing practices and procedures with Amazon.

70.    Amazon demanded in November of 2016 that Central Freight pay back $1,302,440.00, which is the full amount of purported overcharges during the period for which the Agreement permitted reimbursement, per the following terms:

- Amazon would permit Central Freight to participate in Amazon's 2016 LTL bid process, but Amazon was not required to actually award Central Freight any business as a result of the 2016 LTL bid;

- If Central Freight was awarded any business as a result of the 2016 LTL bid, Central Freight would have to discount its rates by certain set percentages until the full amount of the purported overcharges was paid back;

- However, if Central Freight was not awarded any business as a result of the 2016 LTL bid, Central Freight would still have to pay to Amazon the full $1,302,440.00 within 90 days of notification of the closing of the 2016 LTL bid; and

- Central Freight would be required to sign a written agreement capitulating to Amazon's terms.

71.    Amazon's demand was a lose-lose situation for Central Freight.  Even though Central Freight had not overcharged Amazon, Central Freight could only a bid for further LTL business with Amazon if it unconditionally agreed to pay $1,302,440.00 that it did not owe.  However, Amazon was under no obligation to grant Central Freight any of its 2017 LTL shipping business and, if it did not,

Amazon would still receive the $1,302,440.00 from Central Freight within 90 days, which amount Central Freight contends it never owed in the first place.

72.    Central Freight refused Amazon's strong-arm tactics.

73.    After Central Freight refused Amazon's wrongful attempts to extort unjustified overcharge payments, Amazon ceased using Central Freight for any LTL shipping and refused Central Freight's bid for 2017 LTL shipping business.

**V.    Amazon's Fraudulent Inducement.**

74.    While Central Freight was attempting to resolve Amazon's unfounded demands regarding billing practices and procedures, Amazon had a back-up scheme if Central Freight refused Amazon's unreasonable and unlawful demands for reimbursement.

75.    Despite the fact that Amazon could have chosen to use the court system to seek to collect the monies it claimed it overpaid, Amazon instead chose to use a fraudulent inducement.

76.    Amazon induced Central Freight to perform freight services for an Amazon affiliate, Amazon Truckload Services, with the intent that if Central Freight would not pay the $1,302,440.00, Amazon, through its affiliate, would simply withhold payments for the services provided to its affiliate as purported set-off of this amount.

77.    Specifically, after Amazon terminated Central Freight's LTL business, Amazon, through its affiliate, Amazon Truckload Services, represented to Central Freight that it would pay to Central Freight a specified bid price for performing freight services for Amazon Truckload Services.

78.    When Amazon made these representations, it knew that it would not pay Central Freight for these freight services.  Instead, Amazon's representation was just a ruse, and Amazon intended at that time to retain the payments from the Amazon affiliate as a set-off to the amounts Amazon claimed it overpaid for the other unrelated LTL freight services provided by Central Freight.

79.   Because Amazon represented that it would pay for the freight services, Central Freight provided the services to the Amazon affiliate and did not know the representation was false.

80.   In addition, Amazon representatives David Wagner ("Wagner") (Manager of Amazon Truckload Services) and Mark Michner ("Michner") (Director of Transportation Services) traveled to Texas on or about March 10, 2017.

81.   Wagner and Michner represented to Central Freight that they were aware of the dispute between the parties over the purported overcharges, but despite this Amazon wanted to expand the parties' business relationship in other carrier areas.

82.   Wagner and Michner solicited a bid from Central Freight to provide additional freight services for Amazon Truckload Services.

83.   At this meeting, Amazon represented to Central Freight the prices that Amazon would pay Central Freight for the services performed for Amazon Truckload Services.

84.   When Amazon made this representation, it knew that it was false because Amazon knew it would not pay Central Freight for these freight services. Instead, Amazon intended all along to retain the payments from Amazon Truckload Services as a set-off to the amounts Amazon claimed it overpaid for the other unrelated LTL freight services provided by Central Freight.

85.   Wagner and Michner made these misrepresentations on Friday, March 10, 2017.  Only two business days later, March 13, 2017, the first of the invoices from the January shipments that Central Freight made became due and owing pursuant to Central Freight's standard 60 day payment terms.

86.   Amazon failed to make the payment due on March 13, 2017.

87.   When Central Freight inquired about Amazon's non-payment, Pillar informed Central Freight that Amazon is "setting off funds owed by Central Freight . . . [and] will start to pay any outstanding funds once the funds owed to Amazon

have been recouped."  (A true and correct copy of the March 27, 2017 e-mail correspondence is attached hereto as Exhibit F and incorporated herein.)

88.    Amazon's purported "set-off" is improper and a breach of the parties agreement because Central Freight does not owe any money to Amazon and, even if it did, Amazon does not have a right to set-off funds owed for different services provided to a different Amazon entity.

89.    To date, Amazon is wrongfully withholding $2,399,544.83 in payments that are past due.    Amazon owes Central Freight an additional $958,511.17 in payments that will became due in the future.

## FIRST CLAIM FOR RELIEF

### (Declaratory Judgment)

90.    Central Freight repeats and realleges the allegations set forth herein and above as though fully set forth herein.

91.    An actual dispute and controversy exists between Central Freight and Amazon regarding the parties' rights and obligations, pursuant to the Agreement, with regard to the 8 Pallet Discount Dispute, the Multiple ARN Dispute, and the Tender ID Dispute.

92.    Under 28 U.S.C. § 2201, this Court is authorized to issue a declaration of rights as and between the parties as to these issues.

WHEREFORE, Plaintiff, Central Freight, respectfully requests that the Court enter a declaration of rights, as follows:

A.    Declare that Amazon breached the Agreement by back-charging Central Freight a 30 percent discount for shipments of 8 pallets or more;

B.    Declare that Amazon breached the Agreement by back-charging Central Freight for separately invoicing Amazon for shipments from the same origin to the same destination on the same day but had been

**COMPLAINT**

issued multiple ARNs;

C.   Declare that Amazon breached the Agreement by back-charging Central Freight for the Tender ID Issue;

D.   Declare that Amazon wrongfully withheld payments as purported set-off to the amounts it wrongfully claimed it overpaid; and

E.   Grant such further relief as is just and equitable.

## SECOND CLAIM FOR RELIEF
## (Breach of Contract)

93.   Central Freight repeats and realleges the allegations set forth herein and above as though fully set forth herein.

94.   The Agreement is a valid and binding contract between Central Freight and Amazon.

95.   Central Freight and Amazon validly modified the Agreement by their mutual assent that the rate for 8 Pallet Shipments would be Central Freight's volume "spot quote" plus the LTL fuel surcharge.

96.   Central Freight fully performed its obligations pursuant to the Agreement.

97.   Amazon breached the Agreement by:

A.   Back-charging Central Freight a 30 percent discount for shipments of 8 pallets or more;

B.   Back-charging Central Freight for separately invoicing Amazon for shipments from the same origin to the same destination on the same day but had been issued multiple ARNs;

C.   Back-charging Central Freight for the Tender ID issue; and

D.   Wrongfully terminating the Agreement and refusing to allow Central Freight to bid on future freight services in order to force unfair terms and reimbursements; and

E.      Wrongfully withholding payments as purported set-off to the amounts it wrongfully claimed it overpaid to Central Freight.

98.     As a direct, foreseeable and proximate result of the breaches of the contract by Amazon and Amazon's acts and conduct, Central Freight has suffered and continues to suffer damages in an amount not less than $1,000,000 plus interest thereon at the rate of ten percent (10%) and additional amounts according to proof.

## THIRD CLAIM FOR RELIEF

### (Violation of the Washington Consumer Protection Act and the California Unfair Competition Law)

99.     Central Freight repeats and realleges the allegations set forth herein and above as though fully set forth herein.

100.    The California Unfair Competition Law, Bus. & Prof. Code, § 17200, *et seq.*, prohibits any unlawful, unfair or fraudulent business act or practice.

101.    The Agreement contains a State of Washington choice of law provision.

102.    The Washington Consumer Protection Act, Chapter 19.86 RCW, *et seq.*, requires that all parties to the transaction refrain from unfair and deceptive practices or acts.

103.    Amazon engaged in an unfair or deceptive acts or practices with regarding to the 8 Pallet Issue, the Multiple ARNs Issue and the Tender ID Issue.

104.    Specifically, Amazon exercised its economic might to force Central Freight and other carriers to accept unilateral changes to the parties' customs and practices in order to obtain for Amazon a better bargain that it was entitled to under the then-existing agreements.

105.    When Central Freight refused Amazon's improper demands, Amazon wrongfully terminated any further LTL business with Central Freight, induced

Central Freight to provide other freight services that Amazon knew it would not pay for, and withheld, and continues to withhold, over $1.75 million in payments due and owing to Central Freight.

106.   Amazon's unfair or deceptive acts or practices affects the public interest because: (i) it hinders the free flow of, and increases the costs of, interstate commerce; (ii) it is directed not only at Central Freight, but also at numerous other carriers as well; and (iii) because Amazon has demonstrated that if unchecked it will continue to unlawfully attempt to use its economic power to force capitulation with unfair and unilateral contractual modifications.

107.   As a direct and proximate result of the Amazon's unfair and deceptive acts and practices, Central Freight was severely damaged.

108.   Amazon's acts, as set out above, were willful and deliberate, in violation of Washington and California consumer protection laws.

109.   As a direct, foreseeable and proximate result of Amazon's acts and conduct, Central Freight has suffered and continues to suffer damages in an amount not less than $1,000,000 plus interest thereon at the rate of ten percent (10%) and additional amounts according to proof.

110.   Pursuant to Chapter 19.86 RCW and California law, a successful plaintiff may recover the costs of the suit, including a reasonable attorney's fee.

## **FOURTH CLAIM FOR RELIEF**

### **(Fraud)**

111.   Central Freight repeats and realleges the allegations set forth herein and above as though fully set forth herein.

112.   Amazon represented to Central Freight that it wanted to expand the parties' relationship in other carrier areas, and that Amazon would pay the costs associated with the freight services that Central Freight performed for Amazon Truckload Services.

113.   However, when Amazon made these representations, it knew that it did not want to expand the parties' business relations, and that it would not pay Central Freight for these freight services.  Instead, Amazon intended at that time to retain the payments from Amazon Truckload Services as a set-off to the amounts Amazon claimed it overpaid for the other unrelated freight services by Central Freight.

114.   Amazon induced Central Freight to provide freight services when Amazon knew that it would not pay for those services.

115.   Amazon's misrepresentations and/or omissions were material to Central Freight's decision to perform the freight services.

116.   Central Freight reasonably relied on these misrepresentations and/or omissions and was damaged as a result.

117.   Amazon refused to pay Central Freight. Instead, Pillar informed Central Freight that Amazon is "setting off funds owed by Central Freight . . . [and] will start to pay any outstanding funds once the funds owed to Amazon have been recouped."

118.   As a direct, foreseeable and proximate result of Amazon's acts and conduct, Central Freight has suffered and continues to suffer damages in an amount not less than $1,000,000 plus interest thereon at the rate of ten percent (10%) and additional amounts according to proof.

119.   In committing the alleged acts, Amazon acted knowingly, willfully and with oppression, fraud and malice.  Central Freight therefore is entitled to receive from Amazon punitive damages and attorneys' fees and costs in such amount as shall be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Central Freight prays for judgment against defendants, and each of them, as follows.

1.   As to the First Claim For Relief, that a declaration be entered as

follows:

    A.   That Amazon breached the Agreement by back-charging Central Freight a 30 percent discount for shipments of 8 pallets or more;

    B.   That Amazon breached the Agreement by back-charging Central Freight for separately invoicing Amazon for shipments from the same origin to the same destination on the same day but had been issued multiple ARNs;

    C.   That Amazon breached the Agreement by back-charging Central Freight for the Tender ID Issue; and

    D.   That Amazon wrongfully withheld payments as purported off-set to the amounts it wrongfully claimed it overpaid; and

    2.   As to Second Claim For Relief, that judgment be entered for breach of contract, granting it all damages available, including but not limited to actual, incidental and consequential damages, costs, attorneys' fees, and any other damages authorized by law, in an amount according to proof in excess of at least $1,000,000;

    3.   As to the Third Claim for relief, that judgment be entered for violation of the Consumer Protection Act, granting it all damages available, including but not limited to actual damages, treble damages to the extent permitted by law, the costs of the suit including a reasonable attorney's fee.

    4.   As to the Fourth Claim for Relief, that judgment be entered for breach of contract, granting it all damages available, including but not limited to actual damages, incidental damages, consequential damages, punitive damages, and any other damages authorized by law, including attorneys' fees and costs.

1    Dated:  April 26, 2017              **AKERMAN LLP**

2

3                                        By:  ___/s/ Michael R. Weiss_____

4                                             Michael R. Weiss

5                                        Attorneys for Plaintiff
                                         CENTRAL FREIGHT LINES, Inc.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **DEMAND FOR JURY TRIAL**

2        Plaintiff Central Freight Lines, Inc. requests a trial on all issues for which it

3   is entitled to a jury.

4

5   Dated:  April 26, 2017                    **AKERMAN LLP**

6

7                                            By:    */s/ Michael R. Weiss*
                                                   Michael R. Weiss

8
                                             Attorneys for Plaintiff
9                                            CENTRAL FREIGHT LINES, INC.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28