UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CENTRAL FREIGHT LINES, INC., | CASE NO. C17-0814JLR |
| Plaintiff, | ORDER |
| v. | **PRELIMINARILY FILED UNDER SEAL** |
| AMAZON FULFILLMENT SERVICES, INC., | |
| Defendant. | |

## I. INTRODUCTION

Before the court is Plaintiff Central Freight Lines, Inc.'s ("Central Freight") motion for a temporary restraining order ("TRO"). (TRO Mot. (Dkt. # 16); TRO Memo (Dkt. # 15-2).) Defendant Amazon Fulfillment Services, Inc. ("Amazon") opposes Central Freight's motion. (TRO Resp. (Dkt. # 19).) The court has considered the parties' briefing, the relevant portions of the record, and the applicable law. Considering itself fully advised, the court DENIES Central Freight's motion.

## II. BACKGROUND

This action arises out of a contract dispute between Central Freight, a freight carrier, and Amazon, a subsidiary of the online retailer Amazon.com. (*See generally* Compl. (Dkt. # 1); *see also* Botsios Decl. (Dkt. # 16-2) ¶ 5, Ex. A ("Agreement").) Pursuant to the parties' contract ("the Agreement"), Central Freight provided "freight transportation services to Amazon, including but not limited to receiving, loading, storing, transporting, [and] unloading." (Botsios Decl. ¶ 7; *see* Agreement at Ex. A-1.) Amazon agreed to pay Central Freight for those services pursuant to a rate chart incorporated into the Agreement "or as mutually agreed to by the parties (which may include email)." (Agreement § 2.1; *see also id.* Ex. B-1, Ex. B-2.) The parties further agreed that the "rate structure will not be modified during the term of th[e] Agreement, except upon mutual agreement of the parties (which may include email)." (Agreement § 2.1.) The agreement also contains an integration clause and a provision precluding modification "unless it is in writing and signed by Amazon and [Central Freight]." (*Id.* § 11.8.)

In mid-2016, Amazon audited Central Freight's services and concluded that it had overpaid Central Freight under the terms of the Agreement. (Botsios Decl. ¶ 27, Ex. D ("Demand Letter").) Amazon concluded that Central Freight had overbilled Amazon in three ways: (1) by failing to apply a 30 percent discount to shipments of eight or more pallets ("8-pallet shipments") (*id.* at 2); (2) by improperly double-counting shipments from the same origin to the same destination on the same day (*id.* at 1-2); and (3) by supplying to Amazon the incorrect Tender ID, which Amazon uses to identify the

shipment for notification and transportation purposes (*id.* at 2). Based on those asserted errors, Amazon demanded that Central Freight pay Amazon $2,856,602.00 no later than September 15, 2016.[1] (*Id.* at 1.)

Central Freight disputes Amazon's contentions. It argues that in early 2012, the parties orally modified the Agreement's pricing for 8-pallet shipments, and that its subsequent billing has been consistent with that oral modification and subsequent dealings with Amazon. (*See* Botsios Decl. ¶ 18-29; *see also id.* ¶ 20, Ex. B.) In June 2016, the parties exchanged a written addendum memorializing those oral modifications, but Amazon never signed that addendum. (Botsios Decl. ¶ 25, Ex. C.) Central Freight disputes Amazon's double-counting and Tender ID allegations, which according to Central Freight are based on Amazon's unenforceable attempt to amend the Agreement unilaterally. (*Id.* ¶¶ 33-55.) Based on these disputes, Central Freight declined to pay any of the money that Amazon demanded. (*Id.* ¶¶ 29, 41, 55.)

In response, an Amazon "affiliate" withheld payment from Central Freight for other services performed. (*Id.* ¶ 66.) The Amazon affiliate indicated that it was "setting off funds owed by Central Freight" and would "start to pay any outstanding funds once the funds owed to Amazon have been recouped as part of this process." (*Id.* ¶ 67, Ex. F.)

Central Freight contends that Amazon is wrongfully withholding $3,362,879.82. (Botsios Decl. ¶ 69.) Of that amount, $3,075,670.00 comes due today, May 26, 2017.

//

---

[1] Amazon subsequently reduced its demand by approximately $1 million. (*See* Botsios Decl. ¶ 28.) According to Central Freight, Amazon reduced the demand in response to the Agreement's 18-month limitations period. (*Id.*)

1  (*Id.* ¶ 70; Agreement § 2.2.) Amazon no longer disputes $530,000.00 of the approximately $3 million owed, and it has advised Central Freight that payment of the $530,000.00 will arrive on or before May 26, 2017. (Doll Decl. (Dkt. # 19-1) ¶ 4.)

[redacted]

Central Freight initially filed this action and its TRO motion in the Central District of California on April 26, 2017. (Compl. at 1; TRO Mot. at 1.) However, Central Freight's chosen venue contravened the Agreement's forum-selection clause. (*See* Agreement § 11.2.) On May 24, 2017, the United States District Court for the Central District of California concluded that the forum-selection clause rendered King County "the exclusive, mandatory venue for the parties' disputes" and transferred the action to the Western District of Washington. (5/24/17 Order (Dkt. # 28) at 4.) Due to jurisdictional and comity concerns, the court in the Central District of California declined to rule on Central Freight's TRO motion. (*Id.*) This court received the case on May 25, 2017 (Transfer Not. (Dkt. # 29)), and the TRO motion is now before the court.

//
//

## III. ANALYSIS

### A. Legal Standard

A plaintiff seeking a TRO in federal court must meet the standards for issuing a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001); Fed. R. Civ. P. 65. Central Freight must establish that (1) it is likely to succeed on the merits of at least one of its claims, (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in its favor, and (4) a TRO is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Preliminary injunctive relief is also "appropriate when a plaintiff demonstrates that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor," provided the plaintiff also demonstrates that irreparable harm is likely and that the injunction is in the public interest. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011).

Mandatory injunctive relief is "'particularly disfavored'" because the relief "'goes well beyond simply maintaining the status quo *pendente lite*.'" *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (quoting *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994)). The court accordingly imposes a heightened burden where, as here, the moving party asks the court to disturb the status quo rather than maintain it.[2] *See id.* The court must "deny such relief 'unless the facts and law clearly favor the

//

---

[2] Central Freight concedes that it seeks mandatory—as opposed to prohibitory—injunctive relief. (TRO Reply (Dkt. # 22) at 15-17.)

moving party.'" *Stanley*, 13 F.3d at 1320 (quoting *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1979)).

**B.     Central Freight's Motion**

Under both the *Winter* and *Cottrell* standards, Central Freight must show that irreparable harm is likely. *Winter*, 555 U.S. at 20; *Cottrell*, 632 F.3d at 1134-35; *see also P.P. v. Compton Unified Sch. Dist.*, 135 F. Supp. 3d 1126, 1149 (C.D. Cal. 2015) (quoting 11A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2948.1 (3d ed. 1998)) ("[S]uffering irreparable harm prior to a determination of the merits is '[p]erhaps the single most important prerequisite for the issuance of [preliminary injunctive relief].'" (second alteration in original)). Because Central Freight has not "clearly" shown, *Stanley*, 13 F.3d at 1320, that irreparable harm is "likely," *Winter*, 555 U.S. at 20, the court denies its TRO motion.

Ordinarily, monetary injury is not irreparable. *See L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980). However, monetary harm that threatens to put a company out of business can constitute irreparable harm. *See id.* at 1203; *Am. Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470, 1474 (9th Cir. 1985); *Fin. & Sec. Prods. Ass'n v. Diebold, Inc.*, No. C 04-04347 WHA, 2005 WL 1629813, at *6 (N.D. Cal. July 8, 2005) ("While the threat of being driven out of business would be sufficient to establish irreparable harm, mere loss of revenue is not; such injury would be compensable in damages."). Conclusory affidavits alone do not demonstrate irreparable harm. *Am. Passage*, 750 F.2d at 1474.

//





These conclusions are not intuitive, and Central Freight points to no evidence explaining Mr. Militzer's rationale or the basis for his conclusions. (*See* TRO Memo at 12-15 (citing generally 1st Militzer Decl.); TRO Reply at 15-17.) Setting aside the conclusory components of Mr. Militzer's declarations, *see Am. Passage*, 750 F.2d at 1473,

---

[3] Although Mr. Militzer indicates that his calculation is based on Amazon's promised $530,000.00, he appears to base his "approximately 6%" calculation on the $344,583.37 that Central Freight has already received from Amazon. (2d Militzer Decl. ¶ 6.)

1 | (*See* Doll Decl. ¶ 3, Ex. A.) ███████████████████████
2 | ████████████████████████████████████████████████
3 | ████████████████████████████████, *see L.A. Mem'l Coliseum*, 634 F.2d at
4 | 1203. Mere loss of revenue, where that loss does not clearly threaten a business's future
5 | viability, is compensable via monetary damages and does not constitute irreparable harm.
6 | *Id.* at 1202; *Diebold*, 2005 WL 1629813, at *6.
7 | ████████████████████████████████████████████
8-11 | ████████████████████████████████████████████
12 | ("Speculative future harm is insufficient."). Moreover, even assuming Central Freight
13 | would suffer such losses in the absence of a TRO, it does not show that those harms
14 | would be irreparable. (TRO Memo at 14-15.) Central Freight cites a series of cases that
15 | it contends support the proposition that these harms are necessarily irreparable, but those
16 | cases show, at most, that those harms can be irreparable in certain circumstances. *See*
17 | *Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603
18 | (9th Cir. 1991) (citing *Regents of Univ. of Cal. v. Am. Broad. Cos.*, 747 F.2d 511, 519-20
19 | (9th Cir. 1984), for the proposition that intangible injuries, such as damage to a university
20 | sports program's ongoing recruitment efforts and goodwill, can qualify as irreparable
21 | ─────────────
22 | ████████████████████████████████████████████

harm); *Regents of Univ. of Cal.*, 747 F.2d at 520 ("We fail to discern an abuse of discretion by the trial court in refusing to say categorically that the injuries non-exposure would inflict [on a college's sports program] are insubstantial, fleeting, or fully compensable in monetary terms."); *Stuhlbarg Int'l*, 240 F.3d at 840-41 (finding no abuse of discretion where the district court found irreparable harm "because the detained goods were earmarked for initial orders from large new customers," and the plaintiff presented evidence that it "stood to lose its newfound customers and accompanying goodwill"); *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 38 (2d Cir. 1995) (holding that the "loss of prospective goodwill can constitute irreparable harm" in the trademark context where the plaintiff makes a "clear showing that a product that a plaintiff has not yet marketed is a truly unique opportunity for a company," and noting that the "clear showing" standard will be "infrequently met"); *Petereit v. S.B. Thomas, Inc.*, 63 F.3d 1169, 1186 (2d Cir. 1995) ("Major disruption of a business can be as harmful as its termination and thereby constitute irreparable injury."). None of the cases stand for the categorical proposition that Central Freight suggests.[5] *See Rent-A-Center*, 944 F.2d at 603; *Regents of Univ. of Cal.*, 747 F.2d at 520; *Stuhlbarg Int'l*, 240 F.3d at 840-41; *Tom Doherty Assocs.*, 60 F.3d at 38; *Petereit*, 63 F.3d at 1186. Rather, consistent with broader binding authority regarding irreparable injury, each case Central Freight cites requires a

//

---

[5] Furthermore, the three Ninth Circuit cases that Central Freight cites, *see Rent-A-Center*, 944 F.2d at 603; *Regents of Univ. of Cal.*, 747 F.2d at 520; *Stuhlbarg Int'l*, 240 F.3d at 840-41, were all decided prior to *Winter*, in which the Supreme Court clarified that showing the "possibility" of irreparable injury is insufficient and held that a plaintiff must demonstrate that irreparable injury is "likely," *Winter*, 555 U.S. at 21-22.

showing that harms ordinarily compensable by money damages are, in the respective case, irreparable. *Compare Rent-A-Center*, 944 F.2d at 603, *Regents of Univ. of Cal.*, 747 F.2d at 520, *Stuhlbarg Int'l*, 240 F.3d at 840-41, *Tom Doherty Assocs.*, 60 F.3d at 38, *and Petereit*, 63 F.3d at 1186, *with L.A. Mem'l Coliseum*, 634 F.2d at 1202 ("Even if some significant threat of injury be hypothesized, it was neither found nor shown to be irreparable. The basis of injunctive relief in the federal courts is irreparable harm and inadequacy of legal remedies."). Central Freight makes no effort at making such a showing here. (*See* TRO Memo at 14-15.)

The court therefore concludes that Central Freight fails to satisfy the heightened burden necessary to warrant mandatory preliminary injunctive relief.[6] *See Stanley*, 13 F.3d at 1320. Accordingly, the court denies Central Freight's motion.[7]

**C. Sealing**

Because this order refers to and quotes from sealed documents and the court has not yet ruled on the related motions to seal (Dkt. ## 14, 20), the court DIRECTS the Clerk to preliminarily file this order under seal. In a subsequent order, the court will rule on the motions to seal and direct the parties to brief what portions of this order should be

//

---

[6] Because Central Freight fails to show likely irreparable harm, the court expresses no opinion regarding the other elements necessary to obtain preliminary injunctive relief. *See Winter*, 555 U.S. at 20; *Cottrell*, 632 F.3d at 1134-35.

[7] After the case was transferred from the Central District of California, Amazon indicated its intent to file an additional opposition to Central Freight's TRO motion. (Not. re Opp. (Dkt. # 37); *see also* Resp. to Not. re Opp. (Dkt. # 38) (opposing Amazon's notice of intent to file additional briefing).) This order moots the need for any additional briefing on the merits of the TRO motion. *See* Local Rules W.D. Wash. LCR 65(b)(5).

1 | redacted. Following that briefing, the court will publicly file this order with the
2 | necessary redactions.

## IV. CONCLUSION

For the foregoing reasons, the court DENIES Central Freight's TRO motion (Dkt. # 16). The court DIRECTS the Clerk to preliminarily file this order under seal. *See supra* § III.C. This case remains assigned to the Honorable James L. Robart for all subsequent proceedings.

Dated this 26th day of May, 2017.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

For:

JAMES L. ROBART,
UNITED STATES DISTRICT JUDGE