The Honorable James L. Robart

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CENTRAL FREIGHT LINES, INC., a Texas Corporation,

Plaintiff,

v.

AMAZON FULFILLMENT SERVICES, a Delaware corporation, and DOES 1 through 25, inclusive,

Defendants.

No. 2:17-cv-0814 JLR

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

NOTED ON THE MOTION CALENDAR: August 11, 2017

DEFENDANT'S OPPOSITION TO MOTION FOR PARTIAL
JUDGMENT ON THE PLEADINGS - i
Case No. 2:17-cv-0814 JLR

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400 FAX (206) 447-9700

51626246.4

TABLE OF CONTENTS

I.   INTRODUCTION & SUMMARY OF ARGUMENT ..................................................1
II.  FACTUAL BACKGROUND ........................................................................................2
     A.   AFS AND CENTRAL FREIGHT ENTERED INTO A
          DETAILED COMMERCIAL CONTRACT FOR
          TRANSPORTATION AND DELIVERY SERVICES. ...................................4
     B.   AFS DID NOT AGREE TO AMEND THE CONTRACT TO
          ELIMINATE THE AGREED-UPON RATE CHART AND
          PERMIT CENTRAL FREIGHT TO CHARGE AFS BASED ON
          SPOT QUOTES. ..............................................................................................5
     C.   THE AUDIT REVEALS CENTRAL FREIGHT'S SYSTEMATIC
          OVERCHARGING THROUGH ITS UNAUTHORIZED USE OF
          "SPOT QUOTES." ...........................................................................................6
     D.   AFTER CENTRAL FREIGHT BREACHED THE CONTRACT
          BY REFUSING TO REPAY OVERCHARGES, AFS OFFSET
          SUMS FROM OTHER OUTSTANDING INVOICES TO
          RECOUP THE OVERCHARGES. .....................................................................7
     E.   THIS COURT HAS ALREADY DENIED CENTRAL
          FREIGHT'S MOTION TO BE PAID AT THE OUTSET OF THIS
          LITIGATION IN ADVANCE OF A DETERMINATION ON
          THE MERITS. ...................................................................................................7
III. ARGUMENT ..............................................................................................................7
     A.   CENTRAL FREIGHT FAILS TO CARRY ITS HEAVY
          BURDEN TO SHOW THAT IT IS ENTITLED TO JUDGMENT
          AS A MATTER OF LAW. ................................................................................8
     B.   CENTRAL FREIGHT FAILS TO ESTABLISH THAT THERE IS
          NO DISPUTE OF MATERIAL FACT. .............................................................9
     C.   WASHINGTON LAW EXPRESSLY RECOGNIZES THE PRE-
          LITIGATION RIGHT OF SETOFF. ..............................................................10
     D.   AFS HAS THE CONTRACTUAL RIGHT TO AUDIT AND
          RECOUP OVERPAYMENTS FOR THE ENTIRE CONTRACT
          TERM. ............................................................................................................13
     E.   COUNTERCLAIMS FOR RECOUPMENT NEED NOT BE
          FILED WITHIN THE APPLICABLE LIMITATIONS PERIOD. .................14
IV.  CONCLUSION ..........................................................................................................15

DEFENDANT'S OPPOSITION TO MOTION FOR PARTIAL
JUDGMENT ON THE PLEADINGS - ii
Case No. 2:17-cv-0814 JLR

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400 FAX (206) 447-9700

51626246.4

## I.   INTRODUCTION & SUMMARY OF ARGUMENT

Defendant Amazon Fulfillment Services ("AFS") respectfully submits its opposition to Plaintiff Central Freight Lines, Inc.'s ("Central Freight") Motion for Partial Judgment on the Pleadings.

This is a breach of contract action.  The Court denied Central Freight's misguided motion for a temporary restraining order requiring immediate payment of the amounts in dispute. Central Freight is now asking again, prior to any discovery, for a ruling that AFS did not properly exercise its right to offset Central Freight's overcharges, and an order requiring AFS to pay some or all of the amounts in dispute at the very outset of the case.  Remarkably, in the alternative Central Freight urges that, even if it *did* overcharge AFS, Central Freight is purportedly entitled to retain most of its overcharges and AFS should recoup only a portion of what it overpaid.  Neither the contract nor the law support Central Freight's positions and this premature motion should be denied.

Central Freight moves for judgment on the pleadings under Fed. R. Civ. P. 12(c).  To prevail, Central Freight must demonstrate the absence of any material contested factual issues and that it is entitled to judgment as a matter of law.  *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012).  In evaluating this motion, the Court is to treat the allegations in AFS's Answer and Counterclaim as true, and should deny the motion if those allegations and reasonable inferences taken from them show that AFS has plausibly alleged a claim for relief. *Doe I v. Nestle USA, Inc.*, 766 F.3d 1013, 1025 (9th Cir. 2014).  Central Freight fails to meet this heavy burden for four key reasons.

First, Central Freight alleges that there was an oral modification to the parties' governing Transportation Agreement.  Compl., Dkt. No. 1, ¶ 26.  AFS flatly denies that allegation.  Def.'s Answer, Dkt. No. 48, ¶ 26.  The purported oral modification is at the heart of Central Freight's contention that it did not overcharge AFS.  Whether there was any oral amendment to the

DEFENDANT'S OPPOSITION TO MOTION FOR PARTIAL
JUDGMENT ON THE PLEADINGS - 1
Case No. 2:17-cv-0814 JLR

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400 FAX (206) 447-9700

51626246.4

1  contract is disputed and will be the subject of conflicting testimony. As such, Central Freight

2  cannot carry its burden as the moving party under Rule 12(c).

3      Second, AFS unquestionably pleads a plausible claim that Central Freight improperly

4  overcharged AFS by some $3 million. *See* Def.'s Countercl., Dkt. No. 48, ¶¶ 9–20, 29

5  ("Countercl."). Whatever amount Central Freight alleges it is owed, courts long have recognized

6  the right of a creditor (here, AFS) to offset and recoup amounts it otherwise owes a debtor. This

7  common-sense practice encourages the resolution of commercial disputes between sophisticated

8  parties without the need to invoke the court system. Central Freight's contention that AFS's only

9  proper course was to file suit or assert counterclaims in a lawsuit stands that sensible policy on

10  its head.

11      Third, the contract expressly allows AFS to audit Central Freight's billing practices for

12  the entire duration of the contract to determine whether overcharges occurred, and obliges

13  Central Freight to repay all overcharges that the audit reveals. For all of its allegations of secret

14  plans and schemes by AFS and its affiliates, Central Freight cannot escape the fact that AFS has

15  followed the process set forth in the contract and has pleaded a viable claim for recovery. That

16  claim must proceed through discovery and be resolved in the ordinary course of litigation.

17      Fourth, Central Freight is simply wrong when it asserts that AFS's claim to recoupment

18  and setoff is time barred by the contract. Whether asserted as a counterclaim for affirmative

19  recovery or as an affirmative defense to Central Freight's claims, AFS has properly pleaded and

20  is entitled to prove the amounts it claims it is owed by Central Freight.

21      For all of these reasons, the Court should again reject Central Freight's efforts to short-

22  circuit the litigation process, deny the motion, and direct the parties to proceed with the case as

23  provided in the recently-issued case scheduling order.

24                          **II. FACTUAL BACKGROUND**

25      Under the parties' governing Transportation Agreement (the "Contract"), AFS has the

26  right to audit Central Freight's invoicing for the entire Contract term. If an audit revealed

DEFENDANT'S OPPOSITION TO MOTION FOR PARTIAL
JUDGMENT ON THE PLEADINGS - 2
Case No. 2:17-cv-0814 JLR

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400 FAX (206) 447-9700

1   Central Freight overcharged AFS, Central Freight unequivocally agreed to repay the overcharged

2   amounts.  If Central Freight refused to pay, AFS had both legal and customary rights to offset the

3   overcharges against sums due to Central Freight under other invoices.

4   　　Central Freight has ignored both the contractually agreed rate chart and its repayment

5   obligations for overcharges.  Over a four-and-a-half-year period, it unilaterally decided to "spot

6   quote" freight charges for certain shipments without AFS's consent, thereby eliminating

7   discounts the parties bargained for and agreed to in the Contract.  While "spot quotes" may be

8   used for shipments outside of contracted rates, they must be approved on a shipment-by-

9   shipment basis.  Central Freight failed to submit these "spot quotes" to AFS for approval prior to

10   shipment, thereby allowing Central Freight to disguise its overcharges as Contract rates, and

11   overcharge AFS by $3 million.  The alleged spot quotes, purportedly based on the number of

12   pallet positions occupied by shipments, were not authorized by the Contract or by AFS.

13   　　AFS audited Central Freight pursuant to the Contract and uncovered Central Freight's

14   repeated pricing improprieties.  When presented with the audit's results, Central Freight refused

15   AFS's request for repayment of the overages.  Central Freight claimed the contract was orally

16   modified, notwithstanding the integration clause and the absence of mutual assent and

17   consideration.  The claimed Contract modification purportedly allowed Central Freight to

18   eliminate substantial Contract discounts.

19   　　When Central Freight declined to reimburse AFS for the overages, AFS exercised its

20   right to offset the overages from sums billed in other pending invoices.  AFS's actions comport

21   with Washington commercial law that favors resolution of commercial debts outside of

22   litigation.

23

24

25

26

DEFENDANT'S OPPOSITION TO MOTION FOR PARTIAL
JUDGMENT ON THE PLEADINGS - 3
Case No. 2:17-cv-0814 JLR

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400 FAX (206) 447-9700

**A.   AFS And Central Freight Entered Into A Detailed Commercial Contract For Transportation And Delivery Services.[1]**

AFS, a subsidiary of Amazon.com, arranges transportation and delivery services for suppliers of products selling through Amazon's website. *See* Contract § 1.1, Dkt. No. 1, Ex. A. AFS and its affiliates entered into the Contract with Central Freight effective July 7, 2011 to procure Central Freight's transportation services. Countercl., ¶¶ 3–4. In the Contract, Central Freight granted AFS substantial pricing discounts for less-than-truckload ("LTL") shipments regardless of the number of pallets. This discount was based on AFS's expected requirement of a substantial volume of transportation services. *See* Countercl., ¶¶ 9–13. The discount was included in the Contract through an incorporated rate chart. Countercl., ¶¶ 6–7. In return, Amazon booked a high volume of shipments with Central Freight. *See* Def.'s Answer, ¶¶ 1; Countercl., ¶¶ 9–13. The parties agreed that the rate chart could "not be modified during the term of this Agreement, except upon mutual agreement of the parties." Countercl., ¶ 6.

Given the scale of its business, AFS does not and reasonably cannot immediately review every invoice it receives to ensure compliance with the agreed-upon rate structure. Countercl., ¶ 11. Accordingly, Central Freight contractually permitted AFS to audit its invoicing, and further agreed to pay any overcharges discovered in any audit. Countercl., ¶ 8; Contract § 1.2. The Contract authorized AFS to audit Central Freight for the entire Contract term and did not provide any time limit for AFS to recoup unapproved overcharges:

> Amazon *may . . . conduct a performance audit to determine if Carrier is meeting its obligations hereunder.* Carrier will provide all relevant reports and related information in a mutually approved format, to allow Amazon to conduct such audit. . . . Carrier will also *reimburse Amazon for the full amount of any overcharge identified in the audit within 10 days from receipt of the audit results.* During the term of this Agreement and for 3 years thereafter, Carrier will keep all books and records relating to the Services in accordance with generally accepted accounting standards.

---

[1] As the non-moving party on a Rule 12(c) motion, AFS is entitled to have the Court treat the allegations in its Answer and Counterclaims as true. *See* Section III.A below.

DEFENDANT'S OPPOSITION TO MOTION FOR PARTIAL
JUDGMENT ON THE PLEADINGS - 4
Case No. 2:17-cv-0814 JLR

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400 Fax (206) 447-9700

51626246.4

Contract § 1.2 (emphasis added).

**B.      AFS Did Not Agree To Amend The Contract To Eliminate The Agreed-Upon Rate Chart And Permit Central Freight To Charge AFS Based on Spot Quotes.**

In January 2014, an AFS employee contacted Central Freight concerning a discrepancy in one of Central Freight's billing invoices. Countercl., ¶ 12. AFS discovered that Central Freight had based charges in that invoice on lineal footage rather than the Contract's rate chart. Countercl., ¶ 16. When contacted, Central Freight admitted it was not charging based on the rate chart. *Id.* AFS approved that specific spot quote. Compl., ¶¶ 30-33; Def.'s Answer ¶¶ 30–33.[2] AFS believed that Central Freight would seek approval for that single invoice based on industry practice. *See* Countercl., ¶¶ 14–17; Email Correspondence, Dkt. No. 1, Ex. B; Piller Decl., ¶ 9.

Because Central Freight wanted to modify the Contract to remove the negotiated discounts on shipments exceeding eight lineal pallets, AFS asked Central Freight to send a proposed addendum to determine whether this rate structure would be in AFS's best interest. Email Correspondence, Dkt. No. 1, Ex. B; Countercl., ¶ 15, 17. AFS informed Central Freight it could not agree to any proposed modification of the Contract unless and until its legal department had approved it. Countercl., ¶ 17; Email Correspondence, Dkt. No. 1, Ex. B. Ultimately, AFS determined that the addendum's proposed pricing would increase the cost of transportation services to AFS by 43% with no benefit to AFS. Countercl., ¶ 13. AFS never agreed to the addendum. Countercl., ¶ 19.

Central Freight continued to ignore the Contract's rate scheme and charged AFS using spot quotes. Countercl., ¶ 18. Central Freight did not submit these alleged spot quotes to AFS for approval prior to invoicing AFS for the charges. *See* Def.'s Answer ¶ 32 (AFS only received invoices from Central Freight). AFS assumed that Central Freight was acting in good faith,

---

[2] The previously submitted Declaration of Christian Piller, Dkt. No. 40, ¶ 7 ("Piller Decl.") demonstrates further support of AFS's position that this single spot quote was approved and that no wholesale amendment to the Contract was adopted. This illustrates the existence of material factual disputes requiring discovery and proceedings beyond the pleadings to resolve this case.

DEFENDANT'S OPPOSITION TO MOTION FOR PARTIAL
JUDGMENT ON THE PLEADINGS - 5
Case No. 2:17-cv-0814 JLR

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400 FAX (206) 447-9700

51626246.4

1   honoring its contractual obligations, and charging per the Contract's rate chart. *See* Countercl.,

2   ¶¶ 18–19; *see also* Piller Decl., ¶ 9.

3        Perhaps realizing the impropriety of charging unauthorized rates, Central Freight inquired

4   as to the status of the proposed addendum in June 2016. *See* Countercl., ¶ 19. AFS responded

5   that it did not, and would not, agree to modify the Contract, as Central Freight's proposed new

6   rate structure would completely eliminate discounts AFS bargained for in the Contract.

7   Countercl., ¶¶ 13, 19. AFS never agreed to modify the Contract, orally or in writing, and Central

8   Freight does not suggest it provided any new or additional consideration for any modification.

9   *See* Compl., Dkt. No. 1; Def.'s Affirmative Defenses ¶ G(1). Furthermore, the alleged

10  modification contravenes both industry practice[3] and Central Freight's own standard practices

11  for LTL shipments.[4] Countercl., ¶¶ 5, 14; Compl., ¶ 19; Def.'s Answer ¶ 19.

**C.    The Audit Reveals Central Freight's Systematic Overcharging Through Its Unauthorized Use of "Spot Quotes."**

12

13       As allowed by the Contract, AFS initiated an audit of Central Freight's invoices in June

14  2016. Countercl., ¶ 20. The audit revealed numerous improprieties by which Central Freight

15  overbilled AFS by nearly $3 million between January 2011 and July 2016. Countercl., ¶¶ 28–35.

16  It also revealed that Central Freight had used purported "spot quotes" for each shipment

17  exceeding eight lineal pallets, which effectively eliminated AFS's Contractual discounts

18  obtained in exchange for cargo volumes AFS shipped with Central Freight. *Id.* Lastly, the audit

19  revealed that Central Freight had billed AFS multiple times for single shipments without

20

21  [3] The industry's use of spot quotes is for single shipments outside contractually-established rates. *See* Piller Decl., ¶ 7. Systematic use of spot quotes throughout a transportation relationship is rare in the industry. Piller Decl., ¶ 8.

22

23  [4] Central Freight's own published tariff rate shows that it defines LTL shipping by *weight* rather than by *lineal foot*. *See* Central Freight, *Central Freight Lines, Inc. Tariff 100*, p. 18 (June 19, 2017), *available at* http://www.centralfreight.com/portal/static/pdf/CENF100RulesTariff.pdf.

24  "[F]or purposes of a 12(b)(6) motion to dismiss, a court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute

25  and 'it is capable of accurate and ready determination.'" *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 167 (S.D.N.Y. 2015) (quotation marks omitted). This is

26  another example of factual issues that need to be developed more fully in discovery.

DEFENDANT'S OPPOSITION TO MOTION FOR PARTIAL
JUDGMENT ON THE PLEADINGS - 6
Case No. 2:17-cv-0814 JLR

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400 FAX (206) 447-9700

providing invoices with a contractually required "Tender ID," which would confirm AFS's approval of individual shipments for transportation. *Id.*

**D.      After Central Freight Breached The Contract By Refusing To Repay Overcharges, AFS Offset Sums From Other Outstanding Invoices To Recoup The Overcharges.**

Pursuant to the audit and Contract terms, AFS demanded that Central Freight reimburse AFS the $3 million Central Freight had overcharged. Countercl., ¶ 33. Central Freight refused to reimburse any of its overcharges. Countercl., ¶ 34. Pursuant to industry custom and practice, and as allowed by law, AFS offset this debt from sums it owed Central Freight from pending invoices. Countercl., ¶ 35. In doing so, AFS offset the difference between rates Central Freight should have charged under the Contract and sums Central Freight actually charged.[5] *Id.* AFS ceased offsetting funds once it had recouped its overpayments. Countercl., ¶ 36. Thus, Central Freight received the full benefit of its bargain, and did not profit from its unauthorized and deceptive billing practices.

**E.      This Court Has Already Denied Central Freight's Motion To Be Paid At the Outset Of This Litigation In Advance Of A Determination On The Merits.**

Central Freight originally brought this action in the Central District of California despite a valid forum selection clause that required that suit be brought in this Court. Compl., Dkt. No. 1; Minute Order, Dkt. No. 28. Central Freight moved for a TRO seeking to force AFS to pay the disputed sums prior to a determination of the merits of Central Freight's position. Pl.'s Mot. TRO, Dkt. No. 16. This Court denied the TRO, finding that monetary loss was not an irreparable injury. Order, Dkt. No. 47.

### III. ARGUMENT

By this motion, Central Freight again seeks to have the Court predetermine that it is entitled to the relief it requests prior to any discovery. Central Freight asks the Court to rule that AFS has no right to offset overpayments without first obtaining a judgment; or, if such a right exists, that AFS can dispute only overpayments incurred since February 2015. Taking all the

---

[5] AFS paid Central Freight all amounts it withheld over the amount in dispute. Piller Decl., ¶ 14.

DEFENDANT'S OPPOSITION TO MOTION FOR PARTIAL
JUDGMENT ON THE PLEADINGS - 7
Case No. 2:17-cv-0814 JLR

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400 FAX (206) 447-9700

51626246.4

1    allegations in support of AFS's counterclaim as true, and viewing the allegations in the light

2    most favorable to AFS, Central Freight fails to carry its burden to show that it is entitled to

3    judgment as a matter of law.  Accordingly, the motion should be denied and this litigation should

4    proceed in the ordinary course.

5    **A.    Central Freight Fails To Carry Its Heavy Burden To Show That It Is Entitled To Judgment As A Matter Of Law.**

6            A Fed. R. Civ. P. 12(c) motion challenges the legal sufficiency of a party's pleadings.

7    *Chavez*, 683 F.3d at 1108.  Courts evaluate a Fed. R. Civ. P 12(c) motion under the same legal

8    standards as a Fed. R. Civ. P. 12(b)(6) motion.  *Id.*

9            In this case, the pertinent pleading is the counterclaim that AFS has asserted against

10   Central Freight.  The allegations in the counterclaim and AFS's Answer to Central Freight's

11   Complaint must be accepted as true and should be viewed "in a light most favorable to the [non-

12   moving party]."[6] *LeGras v. AETNA Life Ins. Co.*, 786 F.3d 1233, 1236 (9th Cir. 2015), *cert.*

13   *denied*, 136 S. Ct. 1448 (2016); *Beal v. Missouri Pac. R. R. Corp.*, 312 U.S. 45, 51 (1941)

14   ("Upon such a motion [for judgment on the pleadings] denials and allegations of the answer

15   which are well pleaded must be taken as true.").   A court should deny a motion for a judgment

16   on the pleadings if the challenged claims' "non-conclusory 'factual content,' and reasonable

17   inferences from that content . . . plausibly suggest[]" that the claimant is entitled to relief.  *Doe I*,

18   766 F.3d at 1025 (quoting *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009)).

19           Courts grant 12(c) motions sparingly and with caution.  As leading commentators have

20   explained, "hasty or imprudent use of this summary procedure by the courts violates the policy in

21   favor of ensuring to each litigant a full and fair hearing on the merits of his or her claim or

22   defense.  The importance of this policy has made federal judges unwilling to grant a motion

23

---

24   [6] Plaintiff erroneously implies that the Court must only "take as true all *undenied* facts alleged in the complaint." Motion at 2–3.  This is not the standard.  "In reviewing a motion under Rule
25   12(c), all allegations of fact of the opposing party are accepted as true and are construed in the light most favorable to that party." *Daniel v. Maxsson*, No. 08-1451, 2009 WL 3320596, at *1
26   (W.D. Wash. Oct. 13, 2009).  The previously submitted Declaration of Christian Piller (Dkt. No. 40) further confirms that AFS disputes virtually every key factual allegation in the Complaint.

DEFENDANT'S OPPOSITION TO MOTION FOR PARTIAL
JUDGMENT ON THE PLEADINGS - 8
Case No. 2:17-cv-0814 JLR

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400 FAX (206) 447-9700

51626246.4

1  under Rule 12(c) unless the movant clearly establishes that no material issue of fact remains to

2  be resolved and that he is entitled to judgment as a matter of law." Wright & Miller, 5C Fed.

3  Prac. & Proc. Civ. § 1368 (internal footnote omitted); *see also Chavez*, 683 F.3d at 1108 (Rule

4  12(c) motions denied unless movant establishes the absence of material fact issues and

5  entitlement to judgment as a matter of law).

6         Central Freight fails to meet its burden for four key reasons. First, material factual

7  disputes are evident on the face of the pleadings and from competing version of the facts

8  submitted by the parties in connection with prior motion practice and in this motion. Second,

9  AFS was well within its legal rights as a creditor to offset amounts it allegedly owes Central

10 Freight in order to recoup debts AFS is owed under the Contract. Third, the Contract allows

11 AFS to audit Central Freight's billing practices for the entire Contract term, and obliges Central

12 Freight to repay all sums it overcharged. Fourth, AFS's claim to recoupment and setoff is not

13 time barred when asserted as a defense regardless of time limitations in the contract.

14 **B.     Central Freight Fails To Establish That There Is No Dispute Of Material Fact.**

15        Central Freight seeks to have the Court enter a judgment on the pleadings regarding

16 whether AFS breached the Contract, *i.e.*, whether AFS had the right to withhold the amounts it

17 overpaid Central Freight. Motion at 2. This issue turns on the disputed facts regarding the

18 purported oral contract amendment and whether Central Freight overcharged AFS for the

19 services, as Central Freight has no legitimate claim to the withheld amounts if it did not have

20 authority to charge AFS rates above those provided for in the contract. *See Barry v. United*

21 *States*, 229 U.S. 47, 53 (1913) ("It would be folly to require the [creditor] to pay under the one

22 contract what it must eventually recover for a breach of the other."). This issue, among others,

23 remains heavily disputed and cannot be decided at this stage of the litigation. *See Chavez*, 683

24 F.3d at 1108 (judgment on the pleadings proper only if there are no material facts in dispute).

25        Central Freight does not dispute that it did not follow the Contract's rate chart. *See* Pl.'s

26 Answer, Dkt. No. 50, ¶ 13 (admitting it started applying spot quotes rather than the contractual

DEFENDANT'S OPPOSITION TO MOTION FOR PARTIAL
JUDGMENT ON THE PLEADINGS - 9
Case No. 2:17-cv-0814 JLR

51626246.4

1   rate).  To justify its breach, Central Freight alleges the parties orally modified the Contract to

2   allow Central Freight to negate the bargained-for discount.  *Id.*  AFS denies the parties modified

3   the Contract.  *See, e.g.*, Countercl., ¶ 16 ("Central Freight falsely claimed the parties had orally

4   modified the Contract to allow Central Freight to issue spot quotes for 8+ Pallet Shipments.");

5   Def.'s Answer, ¶ 27 ("[T]here was no oral modification.").

6          Whether the parties modified the Contract goes to the heart of whether Central Freight is

7   entitled to the withheld payments.  Because Central Freight fails to show the absence of a

8   material dispute of fact on this issue, its Motion must be denied.  *Chavez*, 683 F.3d at 1108.

9   C.     **Washington Law Expressly Recognizes The Pre-Litigation Right Of Setoff.**

10         Central Freight's Motion relies on the assumption that "[a]bsent a contractual setoff

11  provision, Washington law does not permit the withholding of payment as set-off against a

12  disputed services contract as an extra-judicial, self-help remedy."  Motion at 5.  The Motion

13  presents no authority for that false proposition, nor any authority that would otherwise prohibit

14  AFS from offsetting a debt against amounts owed.

15         To the contrary, the law, as well as industry standard and custom, allow large commercial

16  entities to offset debts from liabilities without judicial intervention so as to avoid burdening

17  courts with every claim of over- or underpayment.  "The common law right of offset, or set-off,

18  permits a person 'to apply the unappropriated moneys of his debtor, in his hands, in

19  extinguishment of the debts due him.'"  *Indus. Bank, N.A. v. United States*, 583 F. Supp. 2d 44,

20  49–50 (D.D.C. 2008).

21         The U.S. Supreme Court has recognized this right since at least 1841, ruling that the right

22  to offset liabilities from debts "belong[ed] to every creditor," even the United States

23  Government.[7]  *Gratiot v. United States*, 40 U.S. (15 Pet.) 336, 370 (1841) ("[Setoff] is but the

24

25  _____

[7] Although this case involves a services contract, the U.C.C. recognizes the right to setoff in sales
contracts.  RCW 62A.2-717 ("The buyer . . . may deduct all or any part of the damages resulting
26  from any breach of the contract from any part of the price still due under the same contract.").
Washington does not require setoffs to derive from the same contract.  *Shelton v. Conant*,

DEFENDANT'S OPPOSITION TO MOTION FOR PARTIAL
JUDGMENT ON THE PLEADINGS - 10
Case No. 2:17-cv-0814 JLR

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400 FAX (206) 447-9700

51626246.4

exercise of the common right, which belongs to every creditor, to apply the unappropriated moneys of his debtor, in his hands, in extinguishment of the debts due to him."); *Ikelionwu v. United States*, 150 F.3d 233, 239 (2d Cir. 1998) ("[T]he United States as creditor has at least as much right to a set-off as an ordinary person."). The setoff right exists independent of statutory or contractual authority to every creditor. *See United States v. Munsey Tr. Co. of Washington, D.C.*, 332 U.S. 234, 239 (1947); *Marre v. United States*, 117 F.3d 297, 302 (5th Cir. 1997); *Murphy v. F.D.I.C.*, 38 F.3d 1490, 1504 (9th Cir. 1994) ("The right to set-off may arise, however, independently of contract.").

Contrary to Central Freight's core argument, the right to setoff does not require a creditor to first file suit to recover the debt owed, although it has the option to do so.

> The liability might have been asserted by the [creditor] in an action; but it might, as it did, charge it up as a setoff against its own liability. It would be folly to require the [creditor] to pay under the one contract what it must eventually recover for a breach of the other.

*Barry*, 229 U.S. at 53 (setting off against "money due under a later contract"). A creditor may also offset an unliquidated, contingent debt owed it under a separate contract. *Warren, Little & Lund, Inc. v. Max J. Kuney Co.*, 115 Wn.2d 211, 213, 216, 796 P.2d 1263 (1990).

In a similar situation, the U.S. Supreme Court, in *Munsey Trust*, again recognized the right to offset sums owed from a debt because this right "belongs to *every creditor*." *Munsey Tr. Co.*, 332 U.S. at 239 (emphasis added). After the government exercised setoff, the contractor's surety sued to recover the withheld amounts. *Id.* at 238–39 The court noted that if this matter concerned only the Government's right to offset claims of the contractor, "this case would present no difficulty" because this right is inherent to every creditor. *Id.* at 239. The

---

10 Wash. 193, 194–95, 38 P. 1013 (1894); *see also* 17A C.J.S. *Contracts* § 519 ("Either the builder or owner, whichever party is liable to a subcontractor for the subcontractor's compensation, may be entitled to a deduction or set-off against such compensation for expenses incurred or damages sustained by reason of the subcontractor's failure to comply with his or her contract.").

DEFENDANT'S OPPOSITION TO MOTION FOR PARTIAL
JUDGMENT ON THE PLEADINGS - 11
Case No. 2:17-cv-0814 JLR

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400 FAX (206) 447-9700

51626246.4

1    complicating factor, however, was that the action involved the subrogated rights of laborers and

2    materialmen whom the surety had paid. *Id.* at 239–40. Ultimately, the court held that "the

3    government *properly* used its right to setoff its independent claim" even though the debt arose

4    from a separate contract. *Id.* at 236–37, 239, 244 (emphasis added).

5         Washington recognizes a party's right to offset debts from liabilities. In *Warren, Little &*

6    *Lund*, the general contractor withheld funds owed under one contract to offset an unliquidated

7    contingent debt owed to it on a separate contract. *Warren*, 115 Wn.2d at 212–13.[8] After the

8    subcontractor sued to recover the offset funds, the general contractor pleaded setoff as an

9    affirmative counterclaim. *Id.* at 212. The Washington Supreme Court reversed the trial court's

10   dismissal of the general contractor's counterclaim because Washington law allows a creditor to

11   offset a contingent unliquidated amount from a liquidated amount. *Id.* at 216. Contrary to

12   Central Freight's assertion, the Supreme Court did not condemn the general contractor's use of

13   setoff without first filing suit. Setoff can be asserted as a counterclaim, although it is not the

14   exclusive remedy. *See Barry*, 229 U.S. at 53.

15        No case Central Freight cites supports its position that AFS cannot exercise setoff

16   without first filing suit. For example, *Archway Cookies* stands only for the proposition that a

17   party cannot offset amounts *after* the parties initiated litigation on that very contract. *Archway*

18   *Cookies v. Smith Cookie Co.*, CV 03-895-HA, 2004 WL 1586890, at *1, *4 (D. Or. July 15,

19   2004) (court issued injunction in May 2003. Plaintiff began withholding payments in June 2003

20   on the contract in dispute). It does not condemn *pre-litigation* setoff rights at issue here.

21        Such an approach would be unworkable and would serve only to clog the judiciary with

22   numerous minor claims of over- or underpayment between commercial entities. Industry

23   ─────────────────────────

24   [8] The difficulty with Central Freight's position is that courts do not decide setoff rights until
     someone files a lawsuit. As such, the contracting party that exercised pre-litigation setoff later
     asserts its setoff right as a counterclaim and affirmative defense. This was the case in *Warren*.

25   None of the cases Central Freight cites holds that pre-litigation setoffs are improper. Rather, the
     facts and procedural history of Central Freight's cases demonstrate that pre-litigation setoff is a
     common commercial practice that long has enjoyed judicial approval.

26

DEFENDANT'S OPPOSITION TO MOTION FOR PARTIAL
JUDGMENT ON THE PLEADINGS - 12
Case No. 2:17-cv-0814 JLR

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400 FAX (206) 447-9700

51626246.4

1    standard and custom, and the applicable law allow AFS to offset its liabilities from Central

2    Freight's overpayments.  Central Freight's Motion therefore fails.

3    **D.     AFS Has The Contractual Right To Audit And Recoup Overpayments For The
             Entire Contract Term.**

4           Central Freight asks the Court to disregard Central Freight's contractual obligation to

5    "reimburse [AFS] for the full amount of any overcharge identified in the audit within 10 days

6    from receipt of the audit results."  Contract § 1.2.  Central Freight granted AFS a contractual

7    right to conduct audits during the entire Contract term.  *Id.*  Now, it asks the Court to disregard

8    this section of the Contract to find that AFS had no right to reimbursement, and even if did, that

9    such right was limited to 18 months.  Motion at 4, 7–8.  There is no basis to rewrite the Contract

10   in that way.

11          Under Washington law, a court must read a contract as a whole and cannot apply an

12   interpretation that "renders some of the language meaningless or ineffective."  *Eagle W. Ins. Co.*

13   *v. SAT, 2400, LLC*, 187 F. Supp. 3d 1231, 1239 (W.D. Wash. 2016).  The Court must give effect

14   to the parties' intent when entering into the contract.  *Id.*  "The contracting parties' intent is

15   determined by construing the terms of the contract as a whole, in light of the circumstances

16   under which it is made."  *Tacoma Auto Mall, Inc. v. Nissan N. Am., Inc.*, 169 Wn. App. 111, 131,

17   279 P.3d 487 (2012) (internal quotation marks omitted).  Determining the parties' intent often is

18   a mixed question of law and fact that often requires consideration of extrinsic evidence.  *Wm.*

19   *Dickson Co. v. Pierce Cty.*, 128 Wn. App. 488, 493–95, 116 P.3d 409 (2005); *Chavez*, 683 F.3d

20   at 1108.

21          Central Freight's interpretation of the Contract implies there is ambiguity.  Central

22   Freight focuses on the time limitation in a provision to dispute *specific invoices*: "Invoices. . . .

23   All claims filed by Amazon for overcharge and all claims filed by Carrier for undercharge must

24   be filed within 18 months of the original invoice."  Contract § 2.2.  But it is impracticable for a

25   large volume shipper, such as AFS, to immediately scrutinize every invoice it receives.

26

DEFENDANT'S OPPOSITION TO MOTION FOR PARTIAL
JUDGMENT ON THE PLEADINGS - 13
Case No. 2:17-cv-0814 JLR

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400 FAX (206) 447-9700

51626246.4

1   Countercl., ¶ 11.  To protect itself from overcharges, AFS reserved the right to audit Central

2   Freight's invoicing at any time during the Contract term.  Contract § 1.2.  Central Freight

3   disregards this right, instead focusing on the individual invoice dispute mechanisms as AFS's

4   sole remedy.  *See* Motion at 7–8.

5           At best, Central Freight's interpretation conflicts with this audit provision, thereby

6   creating ambiguity that cannot be decided on a motion for judgment on the pleadings.  *See*

7   *Consul, Ltd. v. Solide Enter's, Inc.*, 802 F.2d 1143, 1149 (9th Cir. 1986) (a motion to dismiss

8   cannot be granted to enforce an ambiguous contract).  Accepting all facts in the counterclaim as

9   true, and resolving all reasonable inferences in favor of AFS, Central Freight's attempt to time

10  limit AFS's right to setoff also fails.

11  **E.      Counterclaims for Recoupment Need Not Be Filed Within the Applicable**
            **Limitations Period.**

12          Even if the Contract somehow limits the ability of AFS to pursue overcharge claims AFS

13  has properly and timely asserted its setoff entitlement as a counterclaim.  "[O]ffset is one of the

14  defenses that is not barred by the statutes of limitations 'so long as the main action itself is

15  timely.'"  *Olsen v. Pesarik*, 118 Wn. App. 688, 692, 77 P.3d 385 (2003).  Courts allow a

16  defendant to counterclaim on any debt, even if the debt is stale, because it "goes to the justice of

17  the plaintiff's claim."  *Seattle First Nat. Bank, N.A. v. Siebol*, 64 Wn. App. 401, 407, 824 P.2d

18  1252 (1992); *Blodgett v. Orton*, 14 Wn.2d 270, 274, 127 P.2d 671 (1942) (allowed to setoff debt

19  because it continues to exist even if remedy is otherwise barred).  Washington courts desire to

20  see an equitable resolution between the parties so that one party cannot use a technical defense to

21  work an injustice and obtain a windfall.

22          Central Freight alleges that AFS failed to pay certain invoices.  Compl., Dkt. No. 1.  AFS

23  asserts in its counterclaim that Central Freight is not entitled to this money on the ground of

24  setoff.  Countercl., ¶ 35.  AFS does not allege that Central Freight's action is untimely.  Thus,

25

26

DEFENDANT'S OPPOSITION TO MOTION FOR PARTIAL
JUDGMENT ON THE PLEADINGS - 14
Case No. 2:17-cv-0814 JLR

51626246.4

1 AFS may assert as a counterclaim its claims for setoff against any sums owed Central Freight,

2 even if such claim would otherwise be time barred.  *Olsen*, 118 Wn. App. at 692.

3   Equity demands this result.  Central Freight claims that AFS cannot assert its setoff rights

4 for overcharges occurring more than 18 months prior to the start of litigation.  Motion at 7–8.

5 Such an interpretation would grant Central Freight a windfall of some $1.6 million because it

6 successfully hid its violations of the Contract and the overcharges from AFS over an 18-month

7 period.  This result would reward improper behavior by Central Freight.

8   Central Freight's position is supported by neither the Contract nor the law.  The Contract

9 empowers AFS to audit Central Freight and demand repayment for the entire Contract term.

10 Even if the Contract did not provide AFS such a right, AFS could assert any claim it may have

11 against Central Freight as a counterclaim, even if it might otherwise be time barred as an

12 independent action.  *Olsen*, 118 Wn. App. at 692.  AFS may assert its entire setoff rights against

13 Central Freight as a counterclaim even if it did not offset the debts prior to the litigation.

14   More to the point, none of these issues can be decided without discovery and a full airing

15 on the merits.  Central Freight is attempting (again) an end-run on the litigation process and

16 seeks summary judgment in the guise of a Rule 12(c) motion.

### IV. CONCLUSION

18   For the foregoing reasons, the Court should deny Central Freight's Motion for Partial

19 Judgment on the Pleadings.  A proposed order denying the motion is attached as Exhibit A.

DEFENDANT'S OPPOSITION TO MOTION FOR PARTIAL
JUDGMENT ON THE PLEADINGS - 15
Case No. 2:17-cv-0814 JLR

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400 FAX (206) 447-9700

51626246.4

1    DATED this 7th day of August, 2017.

2                                    /s Tim J. Filer
                                     Tim J. Filer, WSBA No. 16285
3                                    Steven W. Block, WSBA No. 24299
                                     FOSTER PEPPER PLLC
4                                    1111 Third Avenue, Suite 3000
                                     Seattle, Washington 98101-3292
5                                    Telephone: (206) 447-4400
                                     Facsimile: (206) 447-9700
6                                    Email: tim.filer@foster.com
                                             steve.block@foster.com
7                                    *Attorneys for Defendant,*
8                                    *Amazon Fulfillment Services, Inc.*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANT'S OPPOSITION TO MOTION FOR PARTIAL                 FOSTER PEPPER PLLC
JUDGMENT ON THE PLEADINGS - 16                            1111 THIRD AVENUE, SUITE 3000
Case No. 2:17-cv-0814 JLR                                SEATTLE, WASHINGTON 98101-3292
                                                      PHONE (206) 447-4400 FAX (206) 447-9700

51626246.4

1

**DECLARATION OF SERVICE**

2       I hereby certify that on August 7, 2017 I served via email the foregoing document to the

3   following counsel of record:

4

5   Jacob M Downs     jdowns@corrdowns.com, adixon@corrdowns.com, jcorr@corrdowns.com

6   Marc H Kallish     mkallish@ralaw.com, cgarcia@ralaw.com

7   Garry L Wills     gwills@ralaw.com

8

9       DATED this 7th day of August, 2017.

10                                                  /s Tim J. Filer
                                                    Tim J. Filer, WSBA No. 16285
11                                                  Steven W. Block, WSBA No. 24299
                                                    FOSTER PEPPER PLLC
12                                                  1111 Third Avenue, Suite 3000
                                                    Seattle, Washington 98101-3292
13                                                  Telephone: (206) 447-4400
                                                    Facsimile: (206) 447-9700
14                                                  Email: tim.filer@foster.com
15                                                      steve.block@foster.com
                                                    *Attorneys for Defendant,*
16                                                  *Amazon Fulfillment Services, Inc.*

17

18

19

20

21

22

23

24

25

26

DEFENDANT'S OPPOSITION TO MOTION FOR PARTIAL            FOSTER PEPPER PLLC
JUDGMENT ON THE PLEADINGS - 17                        1111 THIRD AVENUE, SUITE 3000
Case No. 2:17-cv-0814 JLR                             SEATTLE, WASHINGTON 98101-3292
                                                    PHONE (206) 447-4400 FAX (206) 447-9700

51626246.4

EXHIBIT A

The Honorable James L. Robart

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CENTRAL FREIGHT LINES, INC., a Texas
Corporation,

                            Plaintiff,

        v.

AMAZON FULFILLMENT SERVICES, a
Delaware corporation, and DOES 1 through 25,
inclusive,

                            Defendants.

No. 2:17-cv-0814 JLR

[PROPOSED] ORDER DENYING
PLAINTIFF'S MOTION FOR PARTIAL
JUDGMENT ON THE PLEADINGS

NOTED ON THE MOTION
CALENDAR: August 11, 2017

        Before the Court is Plaintiff Central Freight Lines, Inc.'s Motion for Partial Judgment on

the Pleadings.  The Court reviewed Plaintiff's Motion, Defendant Amazon Fulfillment Services'

Opposition to the Motion, any Reply by the Plaintiff, and the pleadings on file with the Court.

        Deeming itself fully advised, IT IS HEREBY ORDERED that Plaintiff's Motion for

Partial Judgment on the Pleadings is DENIED.

        (1)     Plaintiff failed to meet its burden to show that there is no material dispute of fact

regarding whether Defendant overpaid Plaintiff for services provided under the Contract.

Plaintiff alleges it charged Defendant pursuant to an oral modification of the contract. Pl.'s

Answer, Dkt. No. 50, ¶ 13.  Defendant denies that the parties modified the contract.  Def.'s

Answer, Dkt. No. 48, ¶ 27.  As the Court finds a material dispute of fact, Plaintiff's Motion must

be denied. *See Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012).

[PROPOSED] ORDER DENYING PLAINTIFF'S MOTION FOR
PARTIAL JUDGMENT ON THE PLEADINGS - 1
Case No. 2:17-cv-0814 JLR

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400 FAX (206) 447-9700

51626626.1

1    (2)    Plaintiff failed to meet its burden to show as a matter of law that Washington

2  prohibits a pre-litigation right to setoff debts from liabilities.  The Court finds that a creditor may

3  offset debts from its liabilities without first initiating litigation.  *See Barry v. United States*, 229

4  U.S. 47, 53 (1913); *Warren, Little & Lund, Inc. v. Max J. Kuney Co.*, 115 Wn.2d 211, 212–16,

5  796 P.2d 1263 (1990).

6    (3)    Plaintiff failed to meet its burden to show the absence of a material dispute of fact

7  regarding whether Defendant had the contractual right to recoup all of its alleged overpayments

8  since 2012.  Plaintiff and Defendant cite conflicting contractual provisions that either allow

9  Defendant to recoup overpayments made during the entire contractual term, or bar recoupment of

10  overpayments made prior to February 2015.  The Court will not resolve this contested contract

11  interpretation issue on a motion for judgment on the pleadings.  *See Consul, Ltd. v. Solide*

12  *Enter's, Inc.*, 802 F.2d 1143, 1149 (9th Cir. 1986).

13    (4)    Plaintiff failed to meet its burden to show that Defendant's setoff counterclaim is

14  untimely.  Under Washington law, setoff and recoupment claims may be brought as defenses

15  regardless of whether they can serve as the basis for affirmative recovery.  *Olsen v. Pesarik*, 118

16  Wn. App. 688, 692, 77 P.3d 385 (2003).  Accordingly, Defendant may pursue its setoff defense

17  and counterclaim for the entire contractual period.

18              DATED this ____ day of _____, 2017.

19

20                                        _____

21                                        Honorable James L. Robart
                                         United States District Judge

22

23

24

25

26

[PROPOSED] ORDER DENYING PLAINTIFF'S MOTION FOR
PARTIAL JUDGMENT ON THE PLEADINGS - 2
Case No. 2:17-cv-0814 JLR

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400 FAX (206) 447-9700

51626626.1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

*Presented by:*

FOSTER PEPPER PLLC

s/ Tim J. Filer
Tim J. Filer, WSBA No. 16285
Steven W. Block, WSBA No. 24299
FOSTER PEPPER PLLC
1111 Third Avenue, Suite 3000
Seattle, Washington 98101-3292
Telephone: (206) 447-4400
Facsimile: (206) 447-9700
Email: tim.filer@foster.com
          steve.block@foster.com
*Attorneys for Defendant,*
*Amazon Fulfillment Services, Inc.*

[PROPOSED] ORDER DENYING PLAINTIFF'S MOTION FOR
PARTIAL JUDGMENT ON THE PLEADINGS - 3
Case No. 2:17-cv-0814 JLR

51626626.1

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400 FAX (206) 447-9700