The Honorable James L. Robart

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CENTRAL FREIGHT LINES, INC., a Texas Corporation,<br><br>Plaintiff,<br><br>v.<br><br>AMAZON FULFILLMENT SERVICES, a Delaware corporation, and DOES 1 through 25, inclusive,<br><br>Defendants. | Case No. C17-0814JLR<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**<br><br>NOTED ON MOTION CALENDAR: AUGUST 11, 2017 |

## INTRODUCTION

The issue this Court must decide on Central Freight's motion is straightforward and much more discrete than Amazon would have the Court believe. Central Freight asks this Court to review the Transportation Agreement ("Transportation Agreement") and determine whether either the Transportation Agreement or Washington common law gives Amazon the unilateral right to offset, prior to litigation: (i) disputed amounts it claims Central Freight overcharged it for freight services provided to Amazon's LTL division from January 2012 to July 2016 against (ii) undisputed amounts earned by Central Freight when it provided services to Amazon from fall of 2016 to March of 2017. If the Court finds that the Transportation Agreement does not allow for setoff, and that there is no common law right to set off, then Central Freight is entitled to partial judgment on the pleadings on its breach of contract and declaratory judgment claims with regard to the funds that have been improperly setoff.

PLAINTIFF'S REPLY IN SUPPORT OF MOTION
FOR PARTIAL JUDGMENT ON THE PLEADINGS
NO. C17-0814JLR

11801391 _3

**ROETZEL & ANDRESS**
20 S. CLARK STREET
SUITE 300
CHICAGO, IL 60603
312.580.1200

Amazon tries to muddy the waters by asserting that "disputed facts," which preclude judgment, exist as to the "purported oral contract amendment and whether Central Freight overcharged AFS for the services." (Resp., at 9.) Central Freight agrees that there are questions of fact regarding whether Central Freight properly billed Amazon, or whether it overcharged Amazon. That is precisely why Central Freight's motion does not seek judgment on the merits of the billing dispute. However, the billing dispute has nothing to do with the actual issue that Central Freight raises in its motion, which is whether Amazon had to the right to offset funds it claims it overpaid on bills years ago against money earned by Central Freight for work done in late 2016 and early 2017. Simply put, the right to pre-litigation set off is an issue entirely independent from the merits of the billing dispute.

Contrary to what Amazon asserts, Amazon had no right under Washington law to set off the disputed amounts. Controlling Washington Supreme Court law holds that if Amazon believed that Central Freight materially breached the Transportation Agreement by purported overcharges, Amazon had only two options: (i) either declare a default, terminate the contract, and sue for damages incurred to date; or (ii) continue the contract in effect and sue for damages incurred when performance was finished. Amazon took neither of the two options available to it under the law, but instead resorted to self-help and vigilante justice, in breach of the Transportation Agreement.

In a failed attempt to justify its self-help, Amazon claims it actions were made pursuant to a "common law right of set off." None of the cases Amazon cites supports its right to self-help. Its cases are from other jurisdictions, primarily involve federal common law (which is entirely irrelevant here), or involve creditor / debtor relationships and mutual debts, which therefore could be offset against each other. Here, Amazon is not a creditor of Central Freight. Furthermore, Amazon has no more right to declare itself a "creditor" and act as if that were actually the case then Central Freight does to declare itself a creditor of Amazon and engage in extrajudicial self-help against Amazon.

Amazon materially breached the Transportation Agreement by withholding the payment of millions of dollars and judgment should thus be entered in Central Freight's favor on this part of

PLAINTIFF'S REPLY IN SUPPORT OF MOTION
FOR PARTIAL JUDGMENT ON THE PLEADINGS
No. C17-0814JLR

**ROETZEL & ANDRESS**
20 S. CLARK STREET
SUITE 300
CHICAGO, IL 60603
312.580.1200

2

11801391_3

its breach of contract claim and declaratory judgment claim. Alternatively, if the Court finds that Amazon is entitled to a set off (which it is not) then, under the explicit terms of the Transportation Agreement, the look back period for audit is only 18-months. Therefore, Amazon is prohibited from going beyond this time period for recoupment of funds, and therefore judgment should entered for Central Freight for all invoices older than the 18-month contractual lookback period.

## ARGUMENT

### I. Amazon Did Not Have A Right To Set Off.

#### A. There is No Contractual Right to Set Off.

As Central Freight established in its opening brief, the Transportation Agreement contains no express provision that would permit Amazon to set off funds that Amazon owed to Central Freight for completely separate and different services Central Freight rendered to Amazon.

In or around June/July of 2016, Amazon conducted an Audit of Central Freight's services. (Countercl., ¶ 28.) The Audit led to a billing dispute between Amazon and Central Freight regarding services that Central Freight performed for Amazon's LTL Division from January 2012 to July 2016. Subsequently, Amazon sent a letter dated August 10, 2016 that put Central Freight on notice of the billing dispute regarding work Central Freight performed for the LTL Division the January 2012 to July 2016. (Compl., Ex. D.) In its letter, Amazon claimed that Central Freight had overbilled it $2,856,602 for the freight services from January 2012 to July 2016.

Subsequent to the August 10, 2016 letter, Central Freight provided millions of dollars of freight services for Amazon's Truckload Division, as well as some additional work for the LTL division. This "new work" was performed after the Audit dispute had already commenced. In order to avoid further dispute with Amazon, Central Freight complied with all of Amazon's provisions and demands asserted during the Audit process regarding how the freight services should be billed. For all of the work that Central Freight did for Amazon from fall of 2016 to March of 2017, there was no dispute regarding the quality of the services or the amounts billed. Amazon does not claim there any improper billing occurred for the services provided from fall of 2016 to March of 2017. Instead, Amazon only claims Central Freight owes it for the $2,856,602

PLAINTIFF'S REPLY IN SUPPORT OF MOTION
FOR PARTIAL JUDGMENT ON THE PLEADINGS
No. C17-0814JLR

3

**ROETZEL & ANDRESS**
20 S. CLARK STREET
SUITE 300
CHICAGO, IL 60603
312.580.1200

11801391_3

for the freight services from January 2012 to July 2016. (Countercl., ¶ 47.)

Faced with the billing dispute, Amazon engaged in improper self-help, without justification and contrary to representations it made to Central Freight. Amazon offset the amounts due under for the new work it performed from late 2016 to March of 2017 to compensate it for the disputed amounts under the audited for work performed from January 2012 to July 2016. There is nothing in the Agreement that would allow Amazon to this.

In its response brief, Amazon suggests that the Transportation Agreement contains a provision whereby Amazon is permitted to audit its carriers and demand repayment of any overcharges it finds during the audit, and that this somehow implies the right to set off any funds owed by Amazon to the carrier. (Resp., at 2.) This strained interpretation is simply wrong. If Amazon issues its audit report and the carrier refuses to pay the amounts due within 10 days, then the carrier has breached the contract and Amazon should declare a breach and file suit against the carrier. If Amazon's interpretation is followed – i.e., that the carrier must pay the full amount immediately within 10 days or it can offset any money owed to the carrier – the carrier is deprived of any ability to contest the veracity of the audit. This would allow Amazon to recover audit amounts in whatsoever amounts it asserts without any recourse for the carrier to dispute the audit. This interpretation of the Agreement defies common sense and no carrier would agree to unrestricted unchallengeable audit procedures.

## II.    Washington Common Law Does Not Permit Pre-Litigation Set Off.

### A.    Amazon Breached The Contract By Withholding Payment.

Amazon claims that it was excused from performing under the Transportation Agreement (*i.e.*, paying the amounts due pursuant to the contract) by Central Freight's material breach in purportedly overcharging Amazon. Amazon is incorrect under Washington law, as well as the law of jurisdictions across the country. In its opening brief, Central Freight cited Washington law holding that when a party, such as Amazon, is faced with what it believes to be a material breach, the party has only two options: "to declare a default, terminate the contract, and sue for damages (if any) incurred to date; or, alternatively, to continue the contract in effect and sue for damages

PLAINTIFF'S REPLY IN SUPPORT OF MOTION
FOR PARTIAL JUDGMENT ON THE PLEADINGS
No. C17-0814JLR

**ROETZEL & ANDRESS**
20 S. CLARK STREET
SUITE 300
CHICAGO, IL 60603
312.580.1200

4

11801391_3

incurred when performance is finished." *Colorado Structures, Inc. v. Ins. Co. of the West*, 161 Wash. 2d 577, 591–92, 167 P.3d 1125, 1133 (2007). Amazon asserts that Central Freight breached the contract by failing to pay pursuant to the audit procedures, yet Amazon elected neither of these options. Instead, Amazon decided to permit Central Freight to continue its performance under the contract, while Amazon breached the contract by stopping its own performance by refusing to pay Central Freight. Amazon's withholding of payments was not a "set off," as Amazon innocuously terms it. Rather, it was a breach of contract, pure and simple. *Id.*; *see also Campbell v. Hauser Lumber Co.*, 147 Wash. 140, 265 P. 468 (1928) (breach of a substantial part of an entire contract gives the injured party an election to abandon the contract, or to perform and recover damages).

The legal principles cited above are hornbook law. As Williston on Contracts states:

> When one party commits a material breach of contract, the other party has a choice between two inconsistent rights—it can either elect to allege a total breach, terminate the contract and bring an action or, instead, elect to keep the contract in force, declare the default only a partial breach, and recover those damages caused by that partial breach—but the nonbreaching party, by electing to continue receiving benefits under the agreement, cannot then refuse to perform its part of the bargain.

13 Williston on Contracts § 39:32 (4th ed.); *see also McDonald's Corp. v. Robert A. Makin, Inc.*, 653 F. Supp. 401, 405 (W.D.N.Y. 1986) ("It is hornbook law that when a breach of contract occurs, the injured party may either retain the benefits and obligations of the contract and sue for damages or declare the contract terminated and perform no further."). In its response, Amazon fails to address, much less refute, this black-letter law.

In *McDonalds*, before the suit was filed, a licensee refused to pay over a four-month period the monthly franchise fees due under its franchise agreement with McDonalds. *Id.* at 403. The licensee claimed that it did not owe the money because of alleged breaches of contract by McDonald's, which the licensee then asserted in the litigation as counterclaims. *Id.* The court granted summary judgment to McDonalds on its counts for breach of contract and recovery of the amounts owed under the franchise agreement. *Id.* at 404. The court rejected the licensee's

PLAINTIFF'S REPLY IN SUPPORT OF MOTION
FOR PARTIAL JUDGMENT ON THE PLEADINGS
No. C17-0814JLR

5

**ROETZEL & ANDRESS**
20 S. CLARK STREET
SUITE 300
CHICAGO, IL 60603
312.580.1200

11801391_3

argument that McDonald's alleged breaches permitted the licensee to unilaterally withhold payments pre-litigation:

> Defendants' counterclaims will, of course, be adjudicated in their own right; however, the alleged wrongs of plaintiff do not constitute affirmative defenses to defendants' non-payment of franchise fees. The defendants may not use their counterclaims to avoid judgment for the amounts already due under the franchise agreement.

*Id.* at 404. *McDonald's* is directly on point. Just as the franchisee could not withhold payment under a contract because it believed it was justified by the other party's prior breach, Amazon was not justified in withholding payment because it claims it "pleads a plausible claim that Central Freight improperly overcharged Amazon." (Resp., at 2.) Importantly, the court in McDonald's entered judgment and ordered the franchisee to pay the withheld money even though the franchisee had pending counterclaims that could have been used to offset the amount owed. Here, too, this Court should hold that Amazon breached the contract by withholding payment and order Amazon to pay the amounts owed. Amazon's affirmative defenses and counterclaims regarding purported overbilling can then be adjudicated in the ordinary course of litigation.

Under basic contract law, Amazon could not accept the benefits of the contract, while refusing to perform its own contractual obligations. *Colorado Structures,* 161 Wash. 2d 577, 591–92; *McDonald's,* 653 F. Supp. at 404-05; *ARP Films, Inc. v. Marvel Entm't Grp., Inc.,* 952 F.2d 643, 649 (2d Cir. 1991) (having affirmed the contract through performance of certain contractual duties and benefits, plaintiffs breached the contract when they failed to pay defendants the distribution proceeds owed under the contract). Amazon breached the Transportation Agreement by withholding the payment of millions of dollars, and judgment should thus be entered in Central Freight's favor on this part of its breach of contract and declaratory judgment claims.

### B. The Set Off Case Law Cited By Amazon Is Distinguishable.

In its response brief, Amazon ignores the case law and legal principles cited above that establish as a matter of law that Amazon had no right to withhold payments. Instead, Amazon cherry picks language, divorced from context, from distinguishable cases that implicate legal principles entirely different from those at issue in this motion.

PLAINTIFF'S REPLY IN SUPPORT OF MOTION
FOR PARTIAL JUDGMENT ON THE PLEADINGS
No. C17-0814JLR

6

**ROETZEL & ANDRESS**
20 S. CLARK STREET
SUITE 300
CHICAGO, IL 60603
312.580.1200

11801391_3

Amazon wrongly asserts that under Washington law "large commercial entities" can withhold payments of disputed amounts under a continuing contract as set off, while still permitting the other party to perform its contractual obligations. (Resp., at 10.) Amazon's argument seems to advocate for a type of "vigilante justice," where large commercial entities can engage in self-help when it suits their interests. Notably, Amazon does not cite <u>any</u> Washington case that stands for this proposition. The sole Washington case that Amazon discusses did not address the propriety of one party to an executory contract setting off disputed amounts. Instead, in *Warren, Little & Lund*, 115 Wn.2d 211 (1990), the <u>only</u> issue before the Court was whether a party could plead <u>in a lawsuit</u> a contingent unliquidated claim as set off. *Warren* is entirely inapposite.

Amazon incorrectly claims *Warren* supports its arguments by pointing to the case's background facts, which involved the defendant (a general contractor) withholding payment of retainage for a public works project, pre-litigation, from the plaintiff (a subcontractor). Amazon's argument fails for two reasons. First, *Warren* did not discuss, much less bless, the propriety of pre-litigation set-off of a disputed amount under a contract. Amazon thus cites no Washington case that support its erroneous argument that set-offs of disputed amounts is "expressly" recognized under Washington law.[1]

Second, the holding back of "retainage" is customary, statutory, and usually contractual in the construction industry. The practice of retainage has no application to, and does not provide support for the existence of, a common law right of set off here. Statutes[2] and construction contracts often allow owners and contractors to withhold a certain amount of payment (called "retainage") from contractors and subcontractors, respectively, until performance is completed or the project is finished. *See, e.g., Yassin v. Solis,* 184 Cal. App. 4th 524, 534, 108 Cal. Rptr. 3d

---

[1] Amazon cites, in footnote 7, one other Washington state case, *Shelton v. Conant*, 10 Wash. 193 (1894). This case did not involve pre-litigation setoff, but rather whether an unliquidated amount could be pled in a lawsuit as a counterclaim. *Shelton* is thus irrelevant here.

[2] *See, e.g.,* RCW 60.28.011 ("The contractor or subcontractor may withhold payment of not more than five percent from the moneys earned by any subcontractor or sub-subcontractor or supplier contracted with by the contractor to provide labor, materials, or equipment to the public project.")

PLAINTIFF'S REPLY IN SUPPORT OF MOTION
FOR PARTIAL JUDGMENT ON THE PLEADINGS
No. C17-0814JLR

7

**ROETZEL & ANDRESS**
20 S. CLARK STREET
SUITE 300
CHICAGO, IL 60603
312.580.1200

11801391_3

854, 861 (2010) ("A common contract approach to reducing a contractee's risk that its contractor will fail to fully perform its contractual obligations is to withhold a percentage of the sums due until the work is substantially complete. This percentage is known as 'retainage.' . . . The common contracting scheme is to pass down through the contracting tiers the owner's right to withhold retainage.") The fact that the contractor in *Warren* withheld retainage from a subcontractor is unremarkable under construction law, and nothing in the court's decision indicates that the withholding was anything other than statutory or contractual. *Warren*, therefore, does not in any way support the existence of broad common law right that permits a party to a commercial contract to withhold payment of a disputed amount as offset, while requiring the other party to continue its contractual performance.

Because no Washington state case law supports Amazon's argument, Amazon relies on a hodgepodge of federal cases that are not instructive here. These federal cases either do not involve pre-litigation set off, implicate the federal government's right to set off under federal common law, or permit set off where there were mutual matured debts, which is not the situation here. For example, Amazon cites to *Ikelionwu v. United States*, 150 F.3d 233 (2d Cir. 1998), which did not involve unilateral, pre-litigation set off of a disputed amount. In *Ikelionwu*, <u>during the litigation</u>, the Court assessed whether, if the plaintiff recovered currency that had been seized by the government as permitted by statute, the Court could offset a fine the plaintiff owed to the United States against the recovered money. *Id*. at 239. *Ikelionwu* therefore provides no support for Amazon's arguments.[3]

Moreover, most of the cases that Amazon relies on are federal cases involving federal contracts and implicating federal common law. These cases are entirely distinguishable for at least three reasons. First, and most obviously, these cases involve the federal government's rights

---

[3] Three other cases cited by Amazon involved court rulings on the propriety of granting a set off as part of litigation, and therefore are irrelevant to the issue of unilateral pre-litigation set off. *See Marre v. United States,* 117 F.3d 297, 302 (5th Cir. 1997); *Murphy v. Federal Deposit Insurance Corporation,* 38 F. 3d 1490 (Ninth Circuit 1994); *Industrial Bank, N.A. v. United States*, 583 F. Supp. 2d 44 (D.D.C. 2008).

PLAINTIFF'S REPLY IN SUPPORT OF MOTION
FOR PARTIAL JUDGMENT ON THE PLEADINGS
No. C17-0814JLR

8

**ROETZEL & ANDRESS**
20 S. CLARK STREET
SUITE 300
CHICAGO, IL 60603
312.580.1200

11801391_3

under federal common law, and thus have no applicability to private entities' rights under Washington state law. In *Ensley, Inc. v. United States*, 114 Fed. Cl. 704, 714 (2014), the Court noted that the "seminal case regarding the government's right of setoff is *United States v. Munsey Trust Co. of Washington, D.C.,* 332 U.S. 234 (1947). The Court in *Ensley* discussed *Munsey* and its progeny (the very line of cases that Amazon misguidedly relies on) and explained that courts "have repeatedly recognized the government's right of set-off as a matter of federal common law." *Id*. (quotation omitted). This line of cases provides no support for Amazon's argument that Washington state law provides a private entity pre-litigation set off rights.

Second, these cases involve creditor / debtor relationships and mutual debts, which could be easily offset against each other. Here, Amazon seeks to place itself within the ambit of this case law by claiming that it is a "creditor" of Central Freight. (Resp., at 2.) That is not the case. Amazon is not a creditor, but rather one of two parties that dispute their respective rights and obligations under a contract.

Third, none of these federal cases involves the type of facts here where: (i) Amazon and Central Freight were parties to a continuing and executory contract; (ii) Amazon allowed Central Freight to keep performing without notifying it its intend to withhold payments; and (iii) Central Freight only learned about Amazon's withholding 60 days later when the invoices because due. For this additional reason, the federal cases Amazon cites do not support its argument.

Amazon had no unilateral pre-litigation right of set off, and Central Freight should therefore be granted partial judgment on the pleadings.

C.   **There Are No Facts in the Record to Show That Any "Industry Custom and Practice" Allowed Amazon to Refuse to Make Contractual Payments.**

Amazon makes passing reference to "industry custom and practice" that purportedly permits it to set off disputed amounts from amounts owed pursuant to pending Central Freight invoices. (*See* Resp. at 7.)   Amazon points to no facts in the pleadings to support this entirely conclusory statement. Amazon also fails to point to any facts to show that prior dealing between Central Freight and Amazon allowed or contemplated pre-litigation set off of disputed amounts.

PLAINTIFF'S REPLY IN SUPPORT OF MOTION
FOR PARTIAL JUDGMENT ON THE PLEADINGS
No. C17-0814JLR

9

**ROETZEL & ANDRESS**
20 S. CLARK STREET
SUITE 300
CHICAGO, IL 60603
312.580.1200

11801391_3

The reason why Amazon fails to make this showing is self-evident.  If a large commercial entity such as Amazon had *carte blanch* to withhold the payment of millions of dollars anytime there was a billing dispute (actual or feigned), it would allow that large entity to avoid its contractual obligations and force a smaller vendor – which needed the funds for cash flow – to accept modified and less beneficial terms than those in the contract.  In other words, it would permit the type of inequitable behavior that Amazon engaged in  here.  There is no such industry custom and practice, and this assertion by Amazon should be ignored.

### III. In the Alternative, Judgment Should Be Granted to Central Freight for Any Purported Overcharges Prior to the 18 Month Contractual Look Back Period.

#### A. Amazon Had No Right to Recoup Payments for the Entire Contract Term.

The Transportation Agreement is unambiguous.  It expressly provides that "[a]ll claims filed by Amazon for overcharge must be filed within 18 months of the original invoice." (Compl, at Exhibit A, Section 2.2.)  In its brief, Amazon essentially asks this Court to put a thumb over this express contractual provision and pretend it does not exist.  Amazon's argument has no basis in contract law.

Amazon's spurious argument is based on Section 1.2 of the Transportation Agreement, which provides that Amazon had a general right to conduct a performance audit Central Freight's books and records, and, if the audit identified any "overcharges," Central Freight was to reimburse Amazon for the full amount of the "overcharges" identified within 10 days.  It is black letter contract law that a court must read a contract as a whole and cannot apply an interpretation that renders some of the language meaningless or ineffective.  Here, the only interpretation that gives meaning to the terms of the contract as a whole is that Amazon's right to seek reimbursement of "overcharges" after an audit is limited by an 18-month look back period for filing all "claims" for "overcharge."  Any other construction of the contract would render the 18-month lookback provision meaningless.

Amazon tries (and fails) to avoid this inescapable conclusion by claiming that the 18-month provision is only "an individual invoice dispute mechanism," and does not apply to an audit

PLAINTIFF'S REPLY IN SUPPORT OF MOTION
FOR PARTIAL JUDGMENT ON THE PLEADINGS
No. C17-0814JLR

10

**ROETZEL & ANDRESS**
20 S. CLARK STREET
SUITE 300
CHICAGO, IL 60603
312.580.1200

11801391 _3

of multiple invoices. (Resp., at 14.) The problem with Amazon's fanciful argument is, of course, the contract does not state this. Nothing in the 18-month lookback provision states or implies in the least that its terms are limited to overcharges identified in individual invoices. Moreover, Amazon's audit was simply an audit of multiple individual invoices, and Amazon makes no cogent argument as to why the 18-month lookback provision also would not apply to the multiple "individual invoices." Again, Amazon's interpretation renders the 18-month lookback provision meaningless. By its argument, all Amazon would have to do is claim that it identified purported overcharges on two invoices, and therefore the lookback provision did not apply. Amazon's argument should be rejected.

### B. Amazon's Counterclaims Do Not Affect the Contractual Limitation Period.

Amazon argues that because it asserts its purported right to set off as a counterclaim, it is not limited by the 18 month lookback period. (Resp., at 14-15.) In support, Amazon cites case law holding that an affirmative defense arising out of the transactions sued upon is not untimely if the main action is timely. (Resp., at 14-15.) Amazon's citations to this case law are accurate but irrelevant. Amazon's argument misses the mark for two reasons. First, Amazon misstates Central Freight's position. Second, to the extent Amazon is entitled to any recoupment, it is limited to the contractual look back period.

As an initial matter, Central Freight is not claiming that the general statute of limitations has run on a counterclaim for breach of contract, or for any other counterclaim. Rather, Central Freight asserts that the *contractual* 18-month limitation bars Amazon from seeking reimbursement for any disputed payments older than the 18-month lookback. Under Washington law, "[p]arties to a contract can agree to a shorter limitations period than that called for in a general statute." *Yakima Asphalt Paving Co. v. Washington State Dep't of Transp.,* 45 Wash. App. 663, 665, 726 P.2d 1021, 1023 (1986). A "contract limitation period prevails over the general statute of limitations unless prohibited by statute or public policy, or unless the provision is unreasonable." *Id*. (upholding a contractual provision stating that all claims would be barred unless brought within the 180–day contractual period); *see also Taliesen Corp. v. Razore Land Co.,* 135 Wn. App. 106,

PLAINTIFF'S REPLY IN SUPPORT OF MOTION
FOR PARTIAL JUDGMENT ON THE PLEADINGS
No. C17-0814JLR

11

**ROETZEL & ANDRESS**
20 S. CLARK STREET
SUITE 300
CHICAGO, IL 60603
312.580.1200

11801391 _3

129-30, 144 P.3d 1185 (Div. 1, 2006) (upholding summary judgment on claims that were untimely because of a one year contractual suit limitation).  No statute prohibits the 18-month lookback limitation in the Agreement, and Amazon does not claim that the provision is unenforceable.  Amazon cites no case law to show that the doctrine it relies on applies when the limitation is contractual, as opposed to due to a statute of limitations.

Second, Amazon is claiming that it can assert counterclaims of set off/recoupment that will give it <u>greater</u> rights than the contract provides.  According to Amazon's tortured logic, if Amazon breaches the 18-month lookback provision, forcing Central Freight to file suit, Amazon can counterclaim without being limited by the 18-month provision.  In other words, under Amazon's theory, if Central Freight has to sue to enforce a contractual provision, Central Freight will lose its contractual right by the very act of filing suit and opening itself up to a counterclaim for recoupment.  Amazon's argument is nonsensical.  In the alternative, therefore, this Court should grant Central Freight's motion for sums that pre-date the 18-month lookback period.

## CONCLUSION

For the reasons stated herein, Central Freight respectfully requests the Court grant Central Freight's motion, and grant such further relief as is just and equitable.

Respectfully submitted,

Central Freight Lines, Inc., a Texas corporation

s/ Garry L. Wills

Marc H. Kallish (*Pro Hac Vice*)
Garry L. Wills (*Pro Hac Vice*)
ROETZEL & ANDRESS LPA
20 S. Clark St., Suite 300
Chicago, IL 60603
Telephone: 312.580.1200
E-mail: mkallish@ralaw.com
           gwills@ralaw.com
*Attorneys for Plaintiff*

Dated: August 11, 2017

Jacob M. Downs
CORR DOWNS PLLC
100 W. Harrison St., N440
Seattle, WA 98119
Telephone: 206.962.5041
E-mail: jdowns@corrdowns.com
*Attorneys for Plaintiff*

PLAINTIFF'S REPLY IN SUPPORT OF MOTION
FOR PARTIAL JUDGMENT ON THE PLEADINGS
No. C17-0814JLR

12

**ROETZEL & ANDRESS**
20 S. CLARK STREET
SUITE 300
CHICAGO, IL 60603
312.580.1200

11801391_3

# **CERTIFICATE OF SERVICE**

I, Garry L. Wills, an attorney of record, do hereby certify that on August 11, 2017, a copy of this document was served via the Court's ECF system on the following:

| | |
|---|---|
| Jeremy Robert Larson<br>Tim J. Filer<br>Foster Pepper PLLC<br>1111 Third Ave.<br>Suite 3000<br>Seattle, WA 98101-3299<br>206-447-4400<br>Fax: 206-447-4400<br>Email: jake.larson@Foster.com<br>       tim.filer@Foster.com | Gregory L Doll<br>Jamie Olivia Kendall<br>L. Katie Machado<br>Doll Amir and Eley LLP<br>1888 Century Park East Suite 1850<br>Los Angeles, CA 90067<br>310-557-9100<br>Fax: 310-557-9103<br>Email: gdoll@dollamir.com<br>       jkendall@dollamir.com<br>       kmachado@dollamir.com |

Jacob M Downs
Corr Downs PLLC
100 West Harrison St., Suite N440
Seattle, WA 98119
Phone: 206-962-5041
Email: jdowns@corrdowns.com

By: /s/ Garry L. Wills

Marc H. Kallish
Garry L. Wills
ROETZEL & ANDRESS LPA
20 South Clark Street, Suite 300
Chicago, Illinois 60603
Phone: 312-582-1604
Fax: 312-580-1201

PLAINTIFF'S REPLY IN SUPPORT OF MOTION
FOR PARTIAL JUDGMENT ON THE PLEADINGS
No. C17-0814JLR

13

**ROETZEL & ANDRESS**
20 S. CLARK STREET
SUITE 300
CHICAGO, IL 60603
312.580.1200

11801391_3