UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CENTRAL FREIGHT LINES, INC., <br><br> Plaintiff, <br><br> v. <br><br> AMAZON FULFILLMENT SERVICES, INC., et al., <br><br> Defendants. | CASE NO. C17-0814JLR <br><br> ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS |

## I. INTRODUCTION

Before the court is Plaintiff Central Freight Lines, Inc.'s ("Central Freight") motion for partial judgment on the pleadings. (MJOP (Dkt. # 51).) Defendant Amazon Fulfillment Services, Inc., opposes the motion. (MJOP Resp. (Dkt. # 54).) The court has considered the motion, the parties' submissions in support of and in opposition to the

//

//

motion, the relevant portions of the record, and the applicable law. Being fully advised,[1] the court DENIES the motion for the reasons set forth below.

## II. BACKGROUND

This case arises from a contract dispute between Central Freight, a freight carrier, and Amazon Fulfillment Services, Inc. ("Amazon"), a subsidiary of the online retailer Amazon.com. (*See generally* Compl. (Dkt. # 1).) Central Freight is a "less-than-truckload ('LTL') freight carrier" that provided shipping services to Amazon pursuant to a Transportation Agreement ("the Agreement") executed on July 7, 2011. (*Id.* ¶¶ 2, 10-11, Ex. A ("Agreement").) The Agreement details the services Central Freight provided to Amazon, including "receiving, loading, storing, transporting, [and] unloading" freight. (*Id.* ¶¶ 13-14.) Amazon agreed to pay Central Freight for those services pursuant to a rate chart incorporated into the Agreement "or as mutually agreed to by the parties (which may include email)." (Agreement § 2.1; *see also id.* Ex. B-1, Ex. B-2.) The parties further agreed that the "rate structure will not be modified during the term of th[e] Agreement, except upon mutual agreement of the parties (which may include email)." (Agreement § 2.1.) The Agreement also contains an integration clause and a provision precluding modification "unless it is in writing and signed by Amazon and [Central Freight]." (*Id.* § 11.8.)

The Agreement further provides that Amazon may "conduct a performance audit" to determine whether Central Freight is meeting its obligations under the Agreement. (*Id.*

---
[1] Neither party requests oral argument, and the court concludes that oral argument would not be helpful to its disposition of the motion. Local Rules W.D. Wash. LCR 7(b)(4).

§ 1.2.)  The provision also allows Amazon to seek reimbursement "for the full amount of any overcharge identified in the audit." (*Id.*)  The Agreement also includes an "Invoices" section that states that "[a]ll claims filed by Amazon for overcharge . . . must be filed within 18 month[s] of the original invoice" (*id.* ¶ 2.2), which Central Freight characterizes as a "look-back" period (MJOP at 7).

In mid-2016, Amazon audited Central Freight's services and concluded that it had overpaid Central Freight under the Agreement.  (Compl. ¶ 35; *see id.*, Ex. D ("Demand Letter").)  Amazon concluded that Central Freight had overcharged in three ways:  (1) by failing to apply a 30 percent discount to shipments of eight or more pallets ("8-pallet shipments") (Demand Letter at 3); (2) by improperly double-counting shipments from the same origin to the same destination on the same day (*id.* at 2-3); and (3) by supplying Amazon the incorrect Tender ID, which Amazon uses to identify the shipment for notification and transportation purposes (*id.* at 3).  Based on those asserted errors, Amazon demanded that Central Freight reimburse Amazon $2,856,602.00 no later than September 15, 2016.[2]  (*Id.* at 2.)

Central Freight disputes Amazon's contentions.  It alleges that in early 2012, the parties orally modified the Agreement's pricing for 8-pallet shipments, and that its subsequent billing had been consistent with that oral modification and subsequent dealings with Amazon.  (*See* Compl. ¶¶ 26-27.)  In 2014, Central Freight prepared a

---

[2] Amazon subsequently reduced its demand to $1,302,440.00.  (*See* Compl. ¶ 36.)  According to Central Freight, Amazon reduced the demand in response to the Agreement's 18-month limitations period.  (*Id.*)

written addendum memorializing those oral modifications, but Amazon never signed the addendum. (*Id.* ¶¶ 31-32.) Central Freight disputes Amazon's double-counting and Tender ID allegations, which according to Central Freight are based on Amazon's unenforceable attempt to unilaterally amend the Agreement. (*Id.* ¶¶ 37-63.) Based on these disputes, Central Freight declined to reimburse any of the money that Amazon demanded. (*Id.* ¶¶ 37, 49, 63, 68.)

In response, an Amazon "affiliate"—Amazon Truckload Services—withheld payment from Central Freight for other services performed.[3] (*Id.* ¶ 76.) The Amazon affiliate indicated that it was "setting off funds owed by Central Freight" and would "start to pay any outstanding funds once the funds owed to Amazon have been recouped as part of this process." (*Id.* ¶ 87, Ex. F.)

Central Freight contends that Amazon wrongfully withheld the alleged overcharges. (*Id.* ¶ 16.) Central Freight asserts the following claims: declaratory judgment (1) that Amazon breached the Agreement by (a) "back-charging Central Freight a 30 percent discount for shipments of 8 pallets or more," (b) "back-charging Central Freight for separately invoicing Amazon for shipments from the same origin to the same destination on the same day," and (c) "back-charging Central Freight for the Tender ID [i]ssue," and (2) that Amazon "wrongfully withheld payments as purported set-off to the

---

[3] Central Freight alleges that "Amazon, through its affiliate, Amazon Truckload Services, represented to Central Freight that it would pay to Central Freight a specified bid price for performing freight services for Amazon Truckload Services." (*Id.* ¶ 77.) Central Freight further asserts that "Amazon does not have a right to set[]off funds owed for different services provided to a different Amazon entity." (*Id.* ¶ 88.)

amounts it wrongfully claimed it overpaid" (*id.* ¶¶ 90-92); breach of contract (*id.* ¶¶ 93-98); violation of the Washington Consumer Protection Act ("CPA"), RCW 19.86, *et seq.*; and the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* (*id.* ¶¶ 99-110); and fraud (*id.* ¶¶ 111-19).

Amazon brings a number of counterclaims against Central Freight: (1) declaratory judgment that (a) Amazon did not breach the Agreement, (b) the parties did not orally modify the Agreement, (c) Central Freight materially breached the Agreement by failing to charge the contractual rate, failing to include the Tender IDs, and invoicing Amazon multiple times for the same shipment, and (d) Amazon had a right to set off the alleged overcharges (Countercl. (Dkt. # 48) ¶¶ 37-39)[4]; (2) breach of contract (*id.* ¶¶ 40-45); (3) recoupment and setoff (*id.* ¶¶ 46-49); (4) violation of the CPA (*id.* ¶¶ 50-55); and (5) unjust enrichment (*id.* ¶¶ 56-59). Amazon alleges that the parties never modified the rate structure for the 8-pallet shipments. (*Id.* ¶ 10.) Instead, Amazon contends that beginning in or about January 2012, Central Freight stopped charging Amazon pursuant to the rate structure in the Agreement and instead started issuing "spot quotes" based on the size and locations of shipments. (*Id.* ¶ 11.) Amazon further alleges that "[p]ursuant to ordinary and expected commercial practice between sophisticated contracting parties, and as allowed by Washington law, [Amazon] set off the amount it overpaid Central Freight

---

[4] Amazon's counterclaims are alleged in the same document that answers Central Freight's complaint. (*See generally id.*) After answering Central Freight's complaint, Amazon's counterclaims begin anew with Paragraph 1. (*See id.*) Accordingly, the court cites the counterclaims and answer separately even though they are contained within the same document. (*Compare* Countercl., *with* Answer (Dkt. # 48).)

from sums it otherwise owed Central Freight." (*Id.* ¶ 35.) Once it had "recouped" the overcharges, Amazon asserts that it "ceased setting off funds." (*Id.* ¶ 36.)

On July 20, 2017, Central Freight moved for partial judgment on the pleadings for its declaratory judgment and breach of contract claims.[5] (*See* MJOP at 1.) Amazon opposes the motion. (*See* MJOP Resp.) The court now addresses the motion.

### III. ANALYSIS

**A.   Legal Standard**

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The same legal standard applies to a motion for judgment on the pleadings as to a motion to dismiss for failure to state a claim. *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 n.4 (9th Cir. 2011). The court must accept as true all material facts alleged in the pleadings and draw all reasonable inferences in favor of the nonmoving party. *See Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1990). The court may consider

---

[5] After this case was transferred from the Central District of California to the Western District of Washington, the court denied Central Freight's motion for a temporary restraining order. (*See* Transfer Order (Dkt. # 28); Redacted TRO Order (Dkt. # 47).) The court concluded that Central Freight failed to demonstrate irreparable harm from Amazon's alleged wrongful withholding of funds. (Redacted TRO Order at 6.)

materials attached to or incorporated by reference in the pleadings.[6] *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *World Trading 23, Inc. v. Edo Trading, Inc.*, No. 2:12-cv-10886-ODW(PJWx), 2013 WL 1210147, at *1 (C.D. Cal. Apr. 11, 2013).

**B.     Central Freight's Motion**

Central Freight argues that partial judgment on the pleadings for its declaratory judgment and breach of contract claims is warranted because Amazon has no contractual right to setoff, and no legal authority justifies Amazon to withhold payment before a court determination on the issue. (MJOP at 4-7.) At this time, Central Freight seeks a declaratory judgment that "Amazon wrongfully withheld payments as purported set-off to the amounts it wrongfully claimed it overpaid" (Compl. ¶ 92) and a judgment that Amazon breached the Agreement by doing the same (*id.* ¶ 97). In the alternative, Central Freight requests judgment in the amount Amazon withheld for invoices predating the 18-month contractual "look-back" period. (*Id.* at 7.)

Amazon opposes judgment on the pleadings because (1) the parties dispute whether there was an oral modification to the Agreement; (2) Amazon has pleaded a plausible counterclaim that Central Freight overcharged it by approximately $3 million; (3) the Agreement allows Amazon to audit Central Freight's billing practices to determine whether overcharges occurred and if Amazon identified overcharges, to

//

---

[6] If a party moves for judgment on the pleadings and presents "matters outside the pleadings," "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). For this reason, the court does not consider any material outside of the pleadings or not incorporated therein.

require Central Freight to repay them; and (4) Amazon's right to reimbursement and setoff claim are not untimely under the 18-month contractual period. (MJOP Resp. at 3-4.)

1. Pre-litigation Setoff

Central Freight first argues that the Agreement itself does not provide for any setoff outside of a judicial proceeding.[7] (MJOP at 4.) Amazon does not dispute that the contract is silent as to setoff specifically. (*See generally* MJOP Resp.) Instead, Amazon argues that its right to reimbursement under the Agreement makes judgment on the pleadings inappropriate.[8] (*Id.* at 15-16.)

The court agrees that the Agreement does not expressly reference setoff. (*See generally* Agreement.) Rather, the Agreement states that Central Freight will "reimburse Amazon for the full amount of any overcharge identified in the audit within 10 days from receipt of the audit results." (*Id.* § 1.2.) The only other reference to overcharges provides that "[a]ll claims filed by Amazon for overcharge . . . must be filed within 18 month[s] of the original invoice." (*Id.* § 2.2.) Thus, the contract does not expressly establish a right

---

[7] The court notes that Central Freight's briefing and legal arguments implicate "setoff" as a term of art defined in case law. (*See* MJOP at 3-7.) The term of art appears to be distinct from Amazon's invocation of the phrase when Amazon informed Central Freight that one of its affiliates would withhold allegedly overcharged funds until Amazon had recouped the overcharges. (*See* Compl. ¶ 87, Ex. F (stating that Amazon was "setting off funds owed by Central Freight" and would "start to pay any outstanding funds once the funds owed to Amazon have been recouped as part of this process").) The court thus analyzes the motion based on Central Freight's utilization of "setoff" as a term of art.

[8] Amazon also argues that the alleged oral modification to the Agreement precludes judgment on the pleadings. (MJOP Resp. at 11-12.) However, that question does not bear directly on the legal issue Central Freight raises—entitlement to pre-litigation setoff.

to pre-litigation setoff as Central Freight uses that phrase in its briefing or as case law defines setoff. (*See* MJOP at 1-2 ("[T]here is no provision in any contract between Amazon and Central Freight that gives Amazon a right to set off or attach funds generated for freight services to satisfy previously paid amounts that Amazon now disputes . . . .")); *In re Harmon*, 188 B.R. 421, 424 (B.A.P. 9th Cir. 1995) (describing setoff as a mechanism that "allow[s] creditors to offset mutual and reciprocal debts with the debtor").

However, in the light most favorable to Amazon and construing all well-pleaded facts in its favor, there are disputes regarding whether Central Freight overcharged Amazon, whether Amazon is entitled under the Agreement to reimbursement for those overcharges, and what the parties intended reimbursement to entail.[9] (*Compare* Compl. ¶¶ 49, 63, 68, *with* Countercl. ¶¶ 29-35.) The Agreement expressly provides for reimbursement of overcharges, and the court must therefore interpret the contract to ascertain the parties' intent regarding reimbursement, which "involves a question of fact." *Burgeson v. Columbia Producers, Inc.*, 803 P.2d 838, 840 (Wash. Ct. App. 1991); *see also In re Marriage of Schweitzer*, 937 P.2d 1062, 1066 (Wash. 1997) (stating that Washington applies the context rule, which authorizes the use of extrinsic evidence to "elucidate the meaning of the words of a contract, and not for the purpose of showing intention independent of the instrument") (internal quotation marks omitted); 25 Wash.

---

[9] In this regard, the court disagrees that "the right to pre-litigation setoff is an issue entirely independent from the merits of the billing dispute." (MJOP Reply (Dkt. # 55) at 2.) Indeed, Central Freight's reply brief arguments demonstrate a fact-bound dispute. (*See id.* at 4-6.)

Prac., Contract Law & Practice § 5:7 (3d ed. 2014) ("[T]he courts which are asked to interpret or construe a written agreement must consider not only the writing itself but also the context in which it was executed."). For example, Amazon asserts that "industry and custom . . . allow large commercial entities to offset debts from liabilities," which may explain what the parties intended reimbursement to mean under the contract.[10] (MJOP Resp. at 12); *see Stender v. Twin City Foods, Inc.*, 510 P.2d 221, 225 (Wash. 1973) ("Once a contract is established, usage and custom are admissible into evidence to explain the terms of a contract."); *but see S.L. Rowland Constr. Co. v. Beall Pipe & Tank Corp.*, 540 P.2d 912, 920 (Wash. Ct. App. 1975) ("Evidence of custom or usage is not admissible where its purpose or effect is to contradict, vary, or qualify the plain unambiguous terms of a contract . . . [or] to add new conditions or elements to a plain and unambiguous agreement which on its face is complete."). Moreover, Amazon has pleaded counterclaims for breach of contract and setoff and recoupment, involving the same issues. (Countercl. ¶¶ 40-49.) The court cannot decide these disputed issues in the context of a motion for judgment on the pleadings. *See Fleming*, 581 F.3d at 925; *Hal Roach Studios*, 896 F.2d at 1550.

Furthermore, even if the court determined that Amazon improperly withheld the funds, the court cannot conclude on this record that the improper action constituted a breach of the Agreement. As an initial matter, Central Freight cites no specific

---

[10] Central Freight takes issue with the fact that Amazon makes only a "passing reference" to industry and custom. (MJOP Reply at 9.) However, Central Freight has not met its burden in the first instance of demonstrating that judgment on the pleadings is appropriate.

contractual provision that Amazon allegedly violated by withholding the funds. (*See generally* Compl.; MJOP.) More importantly, because Amazon apparently withheld funds from another Amazon affiliate pursuant to another agreement, the court cannot determine that Amazon's action constituted a breach without referring to that agreement. (*See* Compl. ¶¶ 77 (stating that "after Amazon terminated Central Freight's LTL business, Amazon, through its affiliate, Amazon Truckload Services, represented to Central Freight that it would pay to Central Freight a specified bid price for performing freight services for Amazon Truckload Services"), 80-84 (alleging that Amazon representatives made certain representations about freight services for Amazon Truckload Services); MJOP Reply at 3-4 (describing other services provided to Amazon Truckload Services).) Accordingly, Central Freight has not met its burden of showing that no issues remain for resolution.

The parties also dispute whether Amazon had a legal right to set off—before litigation and of its own accord—the amount it alleges Central Freight overcharged. Central Freight contends that setoff can be invoked only pursuant to a contract or in a judicial proceeding. (MJOP at 5.) Amazon, on the other hand, argues that "the law, as well as industry standard and custom, allow large commercial entities to offset debts from liabilities without judicial intervention so as to avoid burdening courts with every claim of over- or underpayment." (MJOP Resp. at 12.) Neither party provides definitive

//

//

//

authority on the question (*see* MJOP; MJOP Resp.), so the court begins its analysis of the issue by discussing the general treatment of setoff.[11]

"Setoff and recoupment originated as equitable rules of joinder to expand the strict rules of pleading under the common law, allowing creditors to offset mutual and reciprocal debts with the debtor." *In re Harmon*, 188 B.R. at 424; *see also Green v. Wachovia Mortg. FSB*, No. C11-3047RMP, 2012 WL 993586, at *8 (E.D. Wash. Mar. 22, 2012) ("Generally, 'recoupment' refers to an equitable affirmative defense or counterclaim." (citing *Newbery Corp. v. Fireman's Fund Ins. Co.*, 95 F.3d 1392, 1399 (9th Cir. 1996)); *Crowley Marine Servs., Inc. v. Vigor Marine LLC*, 17 F. Supp. 3d 1091, 1098 (W.D. Wash. 2014) (stating that setoff "require[s] mutuality: debts in the same right and between the same parties, standing in the same capacity"); 20 Am. Jur. 2d Counterclaim, Recoupment § 7 (2d ed. 1965) ("The remedy of setoff is similar to a counterclaim in having the nature and effect of an independent action by the defendant against the plaintiff."). Whether "mutual judgments may be satisfied by being set off against each other rests largely within the court's discretion." *Rapid Settlements, Ltd's App. for Approval of Transfer of Structured Settlement Payment Rights*, 271 P.3d 925, 931 (Wash. Ct. App. 2012) (quoting *Reichlin v. First Nat'l Bank*, 51 P.2d 380, 384 (Wash. 1935)). Because setoff and recoupment invoke principles of equity, the remedies may not be "necessary or appropriate" when "contract remedies address the concerns of

---

[11] Amazon has alleged setoff and recoupment as a counterclaim (*see* Countercl. ¶¶ 46-49), so the court cites case law involving both doctrines even though the doctrines are analytically distinct.

the [p]arties." *Crowley Marine*, 17 F. Supp. at 1098. "The right of setoff . . . allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.'" *Citizens Bank of Md. v. Strumpf*, 516 U.S. 16, 18 (1995). Thus, the case law supports Central Freight's position that setoff is generally treated as a judicial doctrine pursuant to which the court may grant a remedy—not a pre-litigation mechanism parties may invoke on their own outside of a contractual provision.

However, as the court discussed above, the Agreement provides a right of reimbursement in Amazon's favor for overcharges, leaving open questions of fact and making judgment on the pleadings inappropriate at this time. In addition, the relief Central Freight seeks—judgment in its favor, a ruling that "Amazon must pay Central Freight the monies that it is wrongfully withholding," and then "a determination on the merits as to whether Central Freight properly billed Amazon for its services" (MJOP at 7)—could lead to the kind of absurd result the setoff doctrine guards against if Amazon ultimately prevails on its setoff counterclaim, *Strumpf*, 516 U.S. at 18; (*see also* Countercl. ¶¶ 46-49 (asserting setoff and recoupment)). Therefore, the court denies Central Freight's motion for partial judgment on the pleadings.

    2. <u>18-Month Contractual Period</u>

Central Freight contends that the court should conclude in the alternative that Amazon has no right to reimbursement for the entire contractual period because of the Agreement's 18-month "look back" provision. (MJOP at 7; *see also* MJOP Reply at 10.) Central Freight argues that the provision is "unambiguous" because it states that "'[a]ll

claims filed by Amazon for [over]charge . . . must be filed within 18 month[s] of the original invoice.'" (MJOP at 7 (first alteration in motion) (quoting Agreement § 2.2).) Amazon argues that the provision applies only to the payment of individual invoices—not to the auditing and reimbursement process. (MJOP Resp. at 15-16.)

As with Central Freight's setoff argument, the 18-month period referenced in the Agreement provides an insufficient basis for granting judgment on the pleadings. Viewing the Agreement in the light most favorable to Amazon and construing all well-pleaded facts in its favor, the court can reasonably view the 18-month period as not applying to the auditing and reimbursement provision of the Agreement. *See Burgeson*, 803 P.2d at 840; *Sales Creators, Inc. v. Little Loan Shoppe, LLC*, 208 P.3d 1133, 1135 (Wash. Ct. App. 2009) ("A reviewing court ascertains the parties' intent from reading the contract as a whole . . . ."). As discussed above, the Agreement allows Amazon to conduct a performance audit and requires Central Freight to "reimburse Amazon for the full amount of any overcharge identified in the audit." (Agreement § 1.2.) Although the section of the Agreement detailing this process does not state for what period of time Amazon may audit Central Freight's performance and seek reimbursement, the section provides that Central Freight must "keep all books and records relating to the Services" for the period of the Agreement and for three years after. (*Id.*) Thus, that provision suggests that the right to audit and seek reimbursement covers a period longer than 18 months.

In contrast, the 18-month "look back" period is contained in the "Invoices" section of the Agreement. (*See id.* § 2.2.) That section requires Central Freight to "provide

weekly electronic invoices that include fees for the prior week" and Amazon "to pay undisputed portions of [Central Freight's] properly submitted invoices within 60 days of receipt." (*Id.*) Given the structure of the contract and the section's reference to weekly invoicing, the 18-month period could be read to apply only to claims for overcharge as to individual invoices, rather than to overcharges identified as part of the auditing process. (*Compare id.*, *with* § 1.2.) Thus, Central Freight has not shown that "the only interpretation that gives meaning to the terms of the contract as a whole is that Amazon's right to reimbursement of 'overcharges' after an audit is limited by an 18-month look back period for filing all 'claims' for 'overcharges.'" (MJOP Reply at 10.) The court therefore also denies Central Freight's motion for judgment on the pleadings on this alternative basis.[12]

## IV. CONCLUSION

For the foregoing reasons, the court DENIES Central Freight's motion for partial judgment on the pleadings (Dkt. # 51).

Dated this 7th day of November, 2017.

JAMES L. ROBART
United States District Judge

---

[12] The court emphasizes that it only denies Central Freight's motion for partial judgment on the pleadings and makes no rulings on the merits of any of the parties' claims. Such rulings are properly reserved for later stages of litigation.