HONORABLE JAMES L. ROBART

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CENTRAL FREIGHT LINES, INC., a Texas Corporation,<br><br>Plaintiff,<br><br>v.<br><br>AMAZON FULFILLMENT SERVICES, a Delaware corporation, and DOES 1 through 25, inclusive,<br><br>Defendants. | NO. 2:17-CV-00814-JLR<br><br>**PLAINTIFF'S MOTION TO EXCLUDE CERTAIN EXPERT ANALYSIS AND TESTIMONY OF WILLIAM E. PARTIN**<br><br>**NOTE ON MOTION CALENDAR: JULY 12, 2019** |

PLAINTIFF'S MOTION TO EXCLUDE CERTAIN
EXPERT TESTIMONY OF WILLIAM PARTIN
NO. 2:18-cv-00814-JLR

ROETZEL & ANDRESS LPA
30 N. LASALLE STREET SUITE 2800
CHICAGO, IL 60602
312.580.1200

# TABLE OF CONTENTS

**Page No.**

I.   INTRODUCTION AND RELIEF REQUESTED ...............................................................1

II.  LEGAL STANDARD ......................................................................................................1

III. ARGUMENT ....................................................................................................................2

    A.   Partin Incorrectly Conducted the Analysis of the Timeliness of Invoices CFL Sent to Amazon and Disregarded the Correct Data. ..........................................2

        1.   Partin relies on a false premise that invalidates his conclusions..................3
        2.   Partin disregards materials containing the original invoice date..................5

    B.   Partin's Analysis of Shipments Containing Between 1 and 7 Pallets Is Not Relevant to the Dispute Between the Parties and Is Misleading. .............................6

        1.   Amazon conducted a zero percent discount audit, not an 8+ pallet audit........................................................................................................8
        2.   Partin's inclusion of shipments containing 1-7 pallets is irrelevant and misleading. ...........................................................................................10

    C.   Partin's Analysis of Tender IDs is Not Relevant......................................................11

IV.  CONCLUSION ...............................................................................................................12

PLAINTIFF'S MOTION TO EXCLUDE CERTAIN
EXPERT TESTIMONY OF WILLIAM PARTIN
NO. 2:18-cv-00814-JLR - i

ROETZEL & ANDRESS LPA
30 N. LASALLE STREET SUITE 2800
CHICAGO, IL 60602
312.580.1200

## I. INTRODUCTION AND RELIEF REQUESTED

Defendant Amazon Fulfillment Services ("Amazon") offers the expert testimony of William E. Partin, of Mueller & Partin, PS, Inc. ("Partin") regarding the analysis of freight overcharges Amazon withheld from Plaintiff Central Freight Lines, Inc. ("CFL"). CFL seeks to bar certain analysis and conclusions set forth in Partin's May 2, 2019 report ("Report"), as well as any testimony he may offer related to that analysis.[1]

Certain of Partin's methods and analysis do not comport with the legal requirements of an expert witness and some of his conclusions are misleading. Specifically, CFL seeks to exclude Partin's analysis and testimony on the following three matters: (i) invoices sent 180 days after the shipment date; (ii) audited shipments containing between 1 and 7 pallets; and (iii) invoices containing an invalid Tender ID.

Mr. Partin misapprehends the data he relied upon in conducting his analysis and failed to review and analyze data in Amazon's possession that is relevant to his analysis. These methods and analysis render certain of his testimony inadmissible under Rule 702 of the Federal Rules of Evidence. Moreover, many of his conclusions are irrelevant to the issues in this case and could mislead the fact finder, in contravention of Rules 402 and 403 of the Federal Rules of Evidence.

Pursuant to Rules 402, 403 and 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S.Ct. 2786 (1993), CFL moves this Court to exclude certain testimony of Amazon's expert, William E. Partin at trial and on consideration of Amazon's Motion for Partial Summary Judgment.

## II. LEGAL STANDARD

Expert testimony is admissible pursuant to Rule 702 if it is both **relevant and reliable**. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993) (emphasis added). When

---

[1] Partin's Report was originally filed by Amazon as Dkt. # 158-2 at pp. 66-109, with portions redacted. The unredacted Report was then provided to the Court under seal on or about May 6, 2019. CFL refers to and relies on that unredacted version of the Report herein..

PLAINTIFF'S MOTION TO EXCLUDE CERTAIN EXPERT TESTIMONY OF WILLIAM PARTIN
NO. 2:18-cv-00814-JLR - 1

ROETZEL & ANDRESS LPA
30 N. LASALLE STREET SUITE 2800
CHICAGO, IL 60602
312.580.1200

considering expert testimony offered pursuant to Federal Rule of Evidence 702, the trial court acts as a "gatekeeper" by "making a preliminary determination that the expert's testimony is reliable." *Elsayed Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1063 (9th Cir. 2002); *see Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147–48 (1999); *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 142 (1997); *Daubert*, 509 U.S. at 589–90. "To fulfill its gate-keeping role, the court must strike the appropriate balance between admitting reliable, helpful expert testimony and excluding misleading or confusing testimony." *United States v. Rincon*, 28 F.3d 921, 926 (9th Cir. 1994).

An expert witness may provide opinion testimony if: (1) the testimony is based upon sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702; *United States v. W.R. Grace*, 504 F.3d 745, 765 (9th Cir. 2007). Nevertheless, depending on the type of expert testimony offered, these factors may not be appropriate to assess reliability. *Kumho Tire*, 526 U.S. at 150, 119 S.Ct. 1167. Other factors that might be considered include whether an expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion, *see General Elec. Co. v. Joiner*, 522 U.S. 136, 146, 118 S.Ct. 512 (1997); or whether an expert has adequately accounted for obvious alternative explanations, *see Claar v. Burlington Northern R. Co.*, 29 F.3d 499, 502 (9th Cir. 1994).

### III.  ARGUMENT

#### A. Partin Incorrectly Conducted the Analysis of the Timeliness of Invoices CFL Sent to Amazon and Disregarded the Correct Data.

Partin's analysis and testimony regarding the timeliness of the invoices CFL sent to Amazon should be barred for two reasons. First, Partin made an erroneous assumption about the underlying data used in his analysis that invalidates his conclusions. Second, Partin disregards materials in Amazon's possession that contains the correct data.

As has been set forth in previous filings, after CFL refused to pay Amazon the sums set forth Amazon's August 10, 2016 Demand Letter, Amazon implemented a scheme to "set off" the money CFL refused to pay. Pursuant to this scheme, Amazon purposefully built up a significant balance of money owed to CFL for services provided, and then willfully refused to pay invoices totaling over $2.8 million. In his Report, Partin offers an analysis that purports to show that some CFL's outstanding invoices that were part of the setoff were sent to Amazon more than 180 days after the date of the shipment. (Report at Page 4, Attachment 2 and *M&P Setoff Analysis*.xlsx.)

Section 2.2 of the Transportation Agreement between Amazon and CFL provides, "Amazon has no obligation to pay any fees or expenses invoiced more than 6 months after they accrue ("Stale Fees")." (Dkt. # 139-1 at 3.) CFL anticipates that Amazon will attempt to use Partin's analysis of the timeliness of invoices sent to Amazon at trial to bar a portion of CFL's claims on outstanding invoices, arguing that some were sent more than 6 months – 180 days – after the shipment date and are thus ineligible for payment.

Partin's Report shows that CFL sent 295 invoices to Amazon more than 180 days after the shipment date (*See* Report at Attachment 2 (266 + 29 = 295).) However, had Partin reviewed and analyzed the proper data, his analysis would have shown that the vast majority of these 295 invoices were sent to Amazon within 180 days of the shipment date.

### 1. Partin relies on a false premise that invalidates his conclusions.

Partin's analysis of this issue – summarized on page 4 of his Report and Attachment 2 thereto – is set forth in a spreadsheet titled *M&P Setoff Analysis*.xlsx. That spreadsheet states that Partin's data source for his analysis is the spreadsheet *CFL_052072-Confidential*.xlsx, which includes the "Ship Date" in Column F and the "Invoice Date" in Column G. (An excerpt of the *M&P Setoff Analysis*.xlsx, highlighted for ease of review and with some material redacted, is attached hereto as Exhibit 1.) Partin analyzed the time between the "Ship Dates" and "Invoice Dates" set forth in Columns F and G and determined whether each "Invoice Date" was more than 180 days after the "Ship Date." (*M&P Setoff Analysis*.xlsx, *Open AR Final* tab, Column Y.)

PLAINTIFF'S MOTION TO EXCLUDE CERTAIN
EXPERT TESTIMONY OF WILLIAM PARTIN
NO. 2:18-cv-00814-JLR - 3

ROETZEL & ANDRESS LPA
30 N. LASALLE STREET SUITE 2800
CHICAGO, IL 60602
312.580.1200

Partin's methodology is fatally flawed because he assumes that the "Invoice Date" in Column G of *CFL_052072-Confidential*.xlsx indicates the date of the *first* invoice sent to Amazon. Partin's assumption is wrong. The data in Column G sets forth the date of the *last* invoice sent to Amazon. (Declaration of David E. Wade at ¶¶ 4-7, attached hereto as <u>Exhibit 2</u>.)[2] Had Partin used the date the *original* invoice was issued to Amazon to calculate whether the invoices were timely, the analysis would have shown that the vast majority – nearly 90% – of the 295 invoices CFL sent to Amazon were sent within 180 days of the shipment date. (*Id.* at ¶ 9.)

*Daubert* does not permit an expert to present testimony or conclusions based upon such unreliable speculation as evidence at trial. For instance, in *Gen. Elec. Co. v. Joiner*, the Court held it was not an abuse of discretion for the trial court to exclude expert opinion testimony that was premised on studies that the court found "were not a sufficient basis for the experts' opinions." *Gen. Elec.*, 522 U.S. 136, 146 (1997). The Court held that trial courts may properly examine how trained experts extrapolate from existing data and noted that "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Id.*

Here, Partin simply guessed that the "Invoice Date" referred to the original invoice date. This renders his testimony on this issue inadmissible because it is not based upon sufficient facts or data and because his guess, which was wrong, establishes that his testimony on this issue would be unreliable, as an analysis of the correct data would have would have shown that the

---

[2] The spreadsheet *CFL_052072-Confidential*.xlsx provides details about the invoices CFL sent to Amazon that remain unpaid. The date of each invoice was never at issue or discussed during discovery. There has been no testimony to date about the data contained in the "Invoice Date" column of *CFL_052072-Confidential*.xlsx. No representation was ever made that the data contained in the "Invoice Date" column was the date the first invoice was sent to Amazon. Partin had no reasonable basis on which to assume or conclude that the "Invoice Date" represented the date the first invoice was sent.

vast majority of CFL invoices were sent within 180 days of the shipment date. Fed. R. Evid. 702(b), (c) and (d).

### 2. Partin disregards materials containing the original invoice date.

Not only did Partin incorrectly assume basic facts about the underlying data he relied upon, Partin also failed to consider data that would have allowed for a proper analysis. Amazon has invoice data in its possession that sets forth the first date it received invoices for shipments, including those 295 invoices Partin identifies as untimely. Amazon produced in discovery the electronic invoices it received from CFL via EDI, each of which includes the date of the invoice. (Examples of 5 EDI invoices that Amazon produced, highlighted, show dates different from the dates Partin relies on and are attached hereto as Exhibit 3.) Further, Amazon produced a spreadsheet named *Unpaid Invoices - Data Pull*.xlsx (Bates labeled AFS_CFL_00107729), which provides the *original* invoice date. (Excerpts from AFS_CFL_00107729, highlighted, are attached hereto as Exhibit 4.) The dates from the EDI invoices match those on Amazon's *Unpaid Invoices - Data Pull*.xlsx spreadsheet:

| PRO number | Location on AFS_CFL_00107729 | Date on Amazon Data | Date on M&P Setoff Analysis |
|---|---|---|---|
| 719647166 | Line 18822 | 3/16/2018 | 9/12/2018 |
| 747770113 | Line 18305 | 5/12/2017 | 6/5/2018 |
| 768061202 | Line 8285 | 6/1/2018 | 7/6/2018 |
| 768189664 | Line 13318 | 3/3/2018 | 8/30/2018 |
| 780787354 | Line 13017 | 11/18/2017 | 5/17/2018 |

Partin had access to Amazon's data. One of the tabs on Partin's M&P Setoff Analysis spreadsheet, "File1," contains the data from Amazon's *Unpaid Invoices – Data Pull*.xlsx (AFS_CFL_00107729). (*See* Exhibit 1.) Thus, not only did Partin simply choose to assume that the "Invoice Date" on CFL's spreadsheet refers to the date the first invoice was sent, without confirming whether that assumption was correct, Partin chose to disregard data that clearly provided the original invoice date.

PLAINTIFF'S MOTION TO EXCLUDE CERTAIN
EXPERT TESTIMONY OF WILLIAM PARTIN
NO. 2:18-cv-00814-JLR - 5

ROETZEL & ANDRESS LPA
30 N. LASALLE STREET SUITE 2800
CHICAGO, IL 60602
312.580.1200

Partin's choice to disregard valid data that would have altered his analysis is not permitted by *Daubert*. *See Claar v. Burlington Northern R. Co.*, 29 F.3d 499, 502 (9th Cir. 1994) (holding that the experts' failure to make any effort to rule out other possible causes of plaintiffs' injuries is contrary to rigor required by *Daubert*); *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 268 (2d Cir. 2002) (holding court properly excluded expert opinions where the expert "inexplicably 'did not find it necessary' to include [available data] in his calculation"). In *Carnegie Mellon University v. Hoffmann-LaRoche, Inc.*, 55 F. Supp. 2d 1024, 1034-1035 (N.D. Ca. 1999), the Court held that an expert does not follow a proper scientific methodology where, *inter alia*, he ignores alternative explanations, selectively examines only a portion of the data, and ignores relevant data which is likely to disprove his theory.

Partin relied upon demonstrably incorrect data when he analyzed the time between the shipment date and the date CFL invoiced Amazon, rendering his conclusions wholly unreliable. The Court should bar his conclusions and testimony about the timeliness of CFL's invoices.

### B.  Partin's Analysis of Shipments Containing Between 1 and 7 Pallets Is Not Relevant to the Dispute Between the Parties and Is Misleading.

At Amazon's direction, Partin segregated the shipments that Amazon audited based upon the size of each shipment. (Report at p. 3, Attachment 1 and *M&P 8 Pallet Analysis*.xlsx.) As this Court knows, at issue is whether CFL and Amazon came to an agreement regarding how CFL could charge Amazon for shipments that occupied 8 or more pallet spaces in an LTL trailer. (A secondary issue, raised only recently during litigation, is whether that agreement was for shipments of *eight or more* pallets or shipments of *more than eight* pallets.) Partin's analysis and conclusions regarding shipments that contained between 1 and 7 pallets is irrelevant, at best, and misleading at worst.

Although Amazon purported to audit all shipments CFL moved that occupied 8 or more pallet spaces on a trailer, it actually audited all shipments CFL moved that did not have a

PLAINTIFF'S MOTION TO EXCLUDE CERTAIN
EXPERT TESTIMONY OF WILLIAM PARTIN
NO. 2:18-cv-00814-JLR-6

ROETZEL & ANDRESS LPA
30 N. LASALLE STREET SUITE 2800
CHICAGO, IL 60602
312.580.1200

discount applied to the rate. This includes minimum charge shipments, which are not priced using the contractual discount but are instead priced at the minimum rate set forth in the contract. (*See* Transportation Agreement at Exhibit B-1.)[3] The vast majority of the shipments Partin identified as containing 1 to 7 pallets were minimum charge shipments. CFL did not use its spot quote system to rate these shipments, but instead properly applied the contractual minimum charge to them, which appears on the invoice as having no discount applied.[4] These shipments are irrelevant to the 8+ Pallet Shipment Issue because they (i) did not occupy 8 or more pallet spaces on a trailer and (ii) were not rated using the spot quote program. Thus, Partin's analysis of these shipments and any testimony he may offer about them is irrelevant to the issues in this case.

Moreover, Partin's analysis and testimony about shipments occupying between 1 and 7 pallet spaces will only serve to mislead the fact-finder into believing that CFL improperly applied the 8+ Pallet Shipment Agreement to shipments that occupied less than 8 pallet spaces on a trailer, when CFL did no such thing. Partin's analysis and testimony about shipments occupying between 1 and 7 pallet spaces should be excluded because it is irrelevant, at best, and misleading, at worst.

---

[3] *See also* Deposition of Christian Piller at 35:12-14 ("The CzarLite tariff has a minimum charge, say $50, in which the carrier will not pick up freight for anything less than $50.")

[4] Carriers include in their contracts a minimum price for moving shipments. When the application of a discount would cause a shipment price to fall below that minimum threshold, the minimum charge applies. *See* Deposition of Doug Culbertson at 241:13-14 ("... minimum charges are not discounted. Minimum charge is a flat rate, and it's defined in the contract. That's going to show up as a zero discount.").

PLAINTIFF'S MOTION TO EXCLUDE CERTAIN EXPERT TESTIMONY OF WILLIAM PARTIN
NO. 2:18-cv-00814-JLR - 7

ROETZEL & ANDRESS LPA
30 N. LA SALLE STREET SUITE 2800
CHICAGO, IL 60602
312.580.1200

### 1. Amazon conducted a zero percent discount audit, not an 8+ pallet audit.

Amazon sought to assess whether CFL had applied its spot quote rate to 8+ Pallet Shipments or rated them under the Transportation Agreement, which would have included a contractual discount. Because CFL did not apply a discount to those shipments to which it applied the spot quote rate, Amazon searched for and audited shipments that were not discounted. Amazon conducted a "0% Discount" audit and *not* an 8+ Pallet audit. (Deposition of Ankush Khandelwal at 117:15-18[5] ("**Q.** Okay. Now, he told you to audit CENF invoices over eight pallets. But you audited all zero percent discount invoices; is that correct? **A.** Correct."); *see also 0% Discount Audit*.xlsx (bates numbered AFS_CFL_00001597); Dkt. # 105 at p. 6 ("0% Discount Audit")).[6]

The problem with Amazon's zero percent discount audit is that it contains shipments that properly do not show a discount, pursuant to contract, such as minimum charge shipments. (*See, e.g.*, Deposition of Christian Piller at 243:11-24 ("Q. Are there other services -- are there other services that LTL carriers perform that don't have a contractual discount applied? **A.** Yes. ... **Q.** How about minimum charges? **A.** Minimum charges would be contractual rates."); *see also* Deposition of Doug Culbertson at 173:10-18 ("**Q.** Okay. Are you aware of whether Amazon did an eight-plus pallet invoice audit? **A.** I believe that they attempted one in some fashion. **Q.** Did you review it? **A.** I did. And I found that there were – they did about what I suggested, was they

---

[5] Excerpts of the deposition testimony cited herein are attached as Exhibits A, B and C to the Declaration of Marc H. Kallish, attached hereto as Exhibit 7.

[6] *See also* Deposition of Ankush Khandelwal at 118:10-14 ("Q. Why did you do a zero percent discount audit, as opposed to an eight-pallets-or-more audit? **A. So this was – the analysis was done extensively at the first call, when we didn't know eight pallets and all those criteria.**").

PLAINTIFF'S MOTION TO EXCLUDE CERTAIN
EXPERT TESTIMONY OF WILLIAM PARTIN
NO. 2:18-cv-00814-JLR - 8

ROETZEL & ANDRESS LPA
30 N. LASALLE STREET SUITE 2800
CHICAGO, IL 60602
312.580.1200

took a look at zero discounts. But there were a lot of extraneous values in there, like minimum charges don't have discounts.")). These shipments should not be included in any 8+ Pallet Shipment audit or analysis. (Deposition of Christian Piller at 244:14-21.)

Partin does not account for minimum charge shipments in his analysis but instead assumes that CFL applied its spot quote rate to each of the shipments he analyzed. Partin states that his source data is from a spreadsheet CFL created called *Analysis of AFS_CFL_00001597*.xlsx, bates labeled CFL_005615. (Report at p. 3, fn. 5.) Partin asserts that CFL, in this spreadsheet, "recalculated the alleged overcharges utilizing the standard contractual pricing methodology in place of the amounts it originally spot-quoted." (*Id.* at p. 3.) This is an incorrect characterization of CFL's spreadsheet. CFL's *Analysis of AFS_CFL_00001597*.xlsx spreadsheet was based the 0% Discount Audit spreadsheet Amazon produced, bates labeled AFS_CFL_00001597. (Declaration of Doug Culbertson, ¶¶ 3-6, attached hereto as <u>Exhibit 5.</u>)[7] CFL's spreadsheet does not purport to show the shipments to which it applied the spot quote rate. CFL only undertook to apply the CzarLite rate to each of the shipments on Amazon's own 0% Discount Audit, at AFS_CFL_00001597. (*Id.* at ¶ 6.)

Partin's analysis of shipments occupying between 1 and 7 pallets is based upon a false premises – that they were improperly spot quoted – and ignores alternative explanations for the results – these shipments were minimum charge shipments. Partin did not undertake any rigorous

---

[7] *See also* Deposition of Doug Culbertson at 178:21-23 ("So essentially what this is saying is that in most cases on this sheet, we were matching what Amazon had on their sheet."); 179:5-6 ("Well, yeah, but I believe that this was produced from a spreadsheet that Amazon sent to us.").

PLAINTIFF'S MOTION TO EXCLUDE CERTAIN
EXPERT TESTIMONY OF WILLIAM PARTIN
NO. 2:18-cv-00814-JLR - 9

ROETZEL & ANDRESS LPA
30 N. LASALLE STREET SUITE 2800
CHICAGO, IL 60602
312.580.1200

analysis of these shipments. Instead, he merely segregated the data into various categories, as requested by Amazon.[8]

### 2. Partin's inclusion of shipments containing 1-7 pallets is irrelevant and misleading.

The vast majority of the shipments Partin identified as containing between 1 and 7 pallets are minimum charge shipments. (Declaration of Doug Culbertson at ¶¶ 7-8.) These shipments properly do not have a discount applied to them and were instead billed at the minimum rate set forth in the Transportation Agreement. (*Id.* at ¶ 8.) They were included in Amazon's 0% Discount Audit but would not have been included in an audit of 8+ Pallet shipments had Amazon attempted to conduct such an audit.

"Under Federal Rule of Evidence 702, evidence or testimony from an expert must be relevant." *Microsoft Corp. v. Motorola, Inc.*, No. C10-1823JLR, 2013 WL 4008822, at *8 (W.D. Wash. Aug. 5, 2013), citing *Daubert*, 509 U.S. at 591 ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, not helpful."). To be relevant, the evidence must assist the trier of fact to understand or determine a fact in issue. *Daubert*, 509 U.S. at 592. Partin's identification of shipments that contain between 1 and 7 pallets is not relevant to issues in this dispute. It does not bear on on the 8+ Pallet Shipment Issue and, because minimum charges are properly undiscounted, it does not bear on CFL's use of its spot quote program to rate shipments.

---

[8] Amazon knows that it included minimum charge shipments in its 0% Discount audit. (An excerpt of AFS_CFL_00001597, is attached hereto as <u>Exhibit 6</u>.) In the audit, Amazon analyzed what each of the shipments having no discount should have been rated under the Transportation Agreement. Where the discount as applied to the base rate (Column L) would cause the shipment price to fall below the contract minimum rate (Column K), Amazon applied the minimum charge (Column M), pursuant to the contract. Thus, where the value in Column K ("Contracted Min Rate") equals the value in Column M ("Corrected amount'), one can determine that the shipment was a minimum charge shipment.

PLAINTIFF'S MOTION TO EXCLUDE CERTAIN
EXPERT TESTIMONY OF WILLIAM PARTIN
NO. 2:18-cv-00814-JLR - 10

ROETZEL & ANDRESS LPA
30 N. LASALLE STREET SUITE 2800
CHICAGO, IL 60602
312.580.1200

Despite the fact that Amazon's own audit clearly establishes that many of the shipments on its 0% Discount Audit are minimum charge shipments, Amazon asked Partin to segregate the shipments it audited based on the number of pallets in each shipment and has used that analysis to argue that CFL "improperly spot quoted shipments" that did not occupy 8 or more pallet spaces on a trailer. (*See* Amazon's Motion for Partial Summary Judgment at p. 10.) This is an egregious misstatement of the data and establishes that Partin's analysis, which does not include any mention of minimum charge shipments or the zero percent discount audit methodology, is misleading. *United States v. Rincon*, 28 F.3d at 926; *Jinro Am., Inc. v. Secure Invs., Inc.*, 266 F.3d 993, 1004 (9th Cir. 2001). For these reasons, CFL urges the Court to bar the conclusions and testimony of Partin as it pertains to shipments occupying 1 to 7 pallets on a trailer.

### C.   Partin's Analysis of Tender IDs is Not Relevant.

At Amazon's direction, Partin segregated the invoices CFL has asserted remain unpaid into those that Amazon has determined have a "valid" Tender ID on them and those that Amazon determined have an "invalid" Tender ID. (Report at p. 4, Attachment 2 and *M&P Setoff Analysis*.xlsx.) Partin's analysis on this point, and any testimony he may offer about it, should be excluded pursuant to Federal Rules of Evidence 402 and 403 because it is irrelevant and misleading.

First, Partin did not independently analyze whether CFL's unpaid invoices contain valid or invalid Tender IDs. Instead, Partin simply relied upon Amazon's own determination of whether the Tender IDs are valid or invalid and put that determination into a new spreadsheet. Indeed, Partin's Report is devoid of any description of how he determined whether a Tender ID was valid or invalid. In his *M&P Setoff Analysis* spreadsheet, Partin admits that he relies upon Amazon data as his source data. It is improper for Amazon to offer its own analysis through the mouth of an expert in this manner.

PLAINTIFF'S MOTION TO EXCLUDE CERTAIN
EXPERT TESTIMONY OF WILLIAM PARTIN
NO. 2:18-cv-00814-JLR -11

ROETZEL & ANDRESS LPA
30 N. LASALLE STREET SUITE 2800
CHICAGO, IL 60602
312.580.1200

Second, Partin's Tender ID analysis is irrelevant because any claim that CFL's unpaid invoices are insufficient or invalid is barred by both the contractual limitations period (Transportation Agreement at § 2.2) and statute of limitations (49 U.S.C. § 14705(b)), which both provide for an 18-month lookback period. Amazon cannot now claim that CFL's outstanding invoices are improper. Partin's analysis and testimony regarding the propriety of those invoices is not relevant to the issues in the case and is misleading.

## IV.  CONCLUSION

For the foregoing reasons, CFL respectfully requests this Court enter an order excluding William E. Partin's conclusions and testimony relating to (a) the timeliness of CFL's invoices to Amazon, (b) shipments that occupied between 1 and 7 pallet spaces on a trailer and (c) the invoices containing valid or invalid Tender IDs, as well as granting such further relief as is just and equitable.

Dated:  June 25, 2019            **CENTRAL FREIGHT LINES, INC.**

                          By:   *s/ Marc H. Kallish*

                             Marc H. Kallish
                             **ROETZEL & ANDRESS, LPA**
                             *Attorneys for Plaintiff Central Freight Lines, Inc.*

PLAINTIFF'S MOTION TO EXCLUDE CERTAIN
EXPERT TESTIMONY OF WILLIAM PARTIN
NO. 2:18-cv-00814-JLR - 12

ROETZEL & ANDRESS LPA
30 N. LASALLE STREET SUITE 2800
CHICAGO, IL 60602
312.580.1200

**CERTIFICATE OF SERVICE**

I certify that on June 25, 2019, I caused the foregoing document to be filed electronically with the Clerk of the Court via CM/ECF, which will notify all parties in this matter who are registered with the Court's CM/ECF filing system of such filing.

Executed in Chicago, Illinois this 25th day of June, 2019

*s/ Marc H. Kallish*
Marc H. Kallish