The Honorable James L. Robart

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CENTRAL FREIGHT LINES, INC., a Texas corporation,<br><br>                              Plaintiff,<br><br>   v.<br><br>AMAZON FULFILLMENT SERVICES, a Delaware corporation, and DOES 1 through 25, inclusive,<br><br>                              Defendant. | No. 2:17-cv-00814-JLR<br><br>DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE CERTAIN EXPERT ANALYSIS AND TESTIMONY OF WILLIAM E. PARTIN<br><br>**NOTE ON MOTION CALENDAR:**<br>**July 12, 2019** |

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE CERTAIN TESTIMONY OF WILLIAM PARTIN
Case No. 2:17-cv-00814-JLR

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

53430696.2

## I. INTRODUCTION

Defendant Amazon Fulfillment Services ("AFS") responds to Plaintiff Central Freight Lines, Inc.'s ("CFL") Motion to Exclude Certain Expert Analysis and Testimony of William E. Partin ("Motion") (Dkt. No. 184). CFL does not dispute that Partin is qualified to give the opinions he rendered. Instead, it avers that (1) his "methods and analysis do not comport with the legal requires of an expert witness and some of his conclusions are misleading"; and (2) he "misapprehends the data he relied upon in conducting his analysis and failed to review and analyze data in Amazon's possession that is relevant to his analysis." Motion at 1.

As the bases of CFL's motion to exclude Partin are legally insufficient under standards set forth in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), the Court should deny this motion. CFL's concerns do not concern his credentials or methodology, but instead speak to challenges they might have to his opinion. These challenges, at most, might impact the weight and/or credibility of his analysis as revealed in cross examination, which are issues to be decided by the jury. Significantly, CFL faults Partin for relying on the accuracy of data CFL itself produced to AFS during discovery.

## II. LEGAL ARGUMENT

### A. Applicable Legal Standard

Under *Daubert*, the Court's gatekeeping obligation is to ensure that the proffered expert testimony is relevant and based on reliable methods. *See Daubert*, 509 U.S. at 589. Courts should not weigh evidence or draw conclusions about the strength of any particular piece of evidence; in the Ninth Circuit, the Court's focus "'must be solely on principles and methodology, not on the conclusions that they generate.'" *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1232 (9th Cir. 2017) (emphasis added) (quoting *Daubert*, 509 U.S. at 595). In other words, although the mere unproven statement of an expert is inadmissible, it is not the Court's task to decide whether an expert's conclusions are correct. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1318 (9th Cir. 1995) (the

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE CERTAIN TESTIMONY OF WILLIAM PARTIN - 1
Case No. 2:17-cv-00814-JLR

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400   FAX (206) 447-9700

53430696.2

*Daubert* test "is not the correctness of the expert's conclusions but the soundness of his methodology."). Instead, a party offering expert testimony must demonstrate that "the expert's conclusion has been arrived at in a scientifically sound and methodologically reliable fashion." *Milward v. Acuity Specialty Products Group, Inc.*, 639 F.3d 11, 15 (1st Cir. 2011). However, disputes regarding the validity of the underlying facts are not valid bases to exclude expert testimony. *ActiveVideo Networks, Inc. v. Verizon Communs., Inc.*, 694 F.3d 1312, 1333 (Fed. Cir. 2012) ("At their core, however, Verizon's disagreements are with the conclusions reached by ActiveVideo's expert and the factual assumptions and considerations underlying those conclusions, not his methodology. These disagreements go to the weight to be afforded the testimony and not its admissibility."); *Smith v. Ford Motor Co.,* 215 F.3d 713, 718 (7th Cir. 2000) ("The soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact, or, where appropriate, on summary judgment.").

The Court's *Daubert* inquiry is "flexible" and "Rule 702 should be applied with a 'liberal thrust' favoring admission." *Wendell*, 858 F.3d at 1232. Exclusion of expert testimony is appropriate only when such testimony is irrelevant or unreliable "junk science." *Id.* at 1237. Otherwise, a court should cede complex issues to the jury and rely on the traditional safeguards of the adversary system— cross-examination, presentation of contrary evidence, and instruction on the burden of proof—to test and evaluate weak but otherwise admissible evidence. *Daubert*, 509 U.S. at 596; *Wendell*, 858 F.3d at 1232; *see also Milward*, 639 F.3d at 13 ("So long as an expert's scientific testimony rests upon 'good grounds, based on what is known,' it should be tested by the adversarial process, rather than excluded for fear that jurors will not be able to handle the scientific complexities." (quoting *Daubert*, 509 U.S. at 590, 596)). "[T]he interests of justice favor leaving difficult issues in the hands of the jury and relying on the safeguards of the adversary system." *Wendell*, 858 F.3d at 1237 (internal citations omitted).

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE CERTAIN TESTIMONY OF WILLIAM PARTIN - 2
Case No. 2:17-cv-00814-JLR

53430696.2

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

### B. Whether Partin Properly Relied on CFL's Data is a Jury Question

CFL avers that the Court should exclude portions of Partin's testimony on the ground he relied on CFL's factually inaccurate data, i.e., because the "Invoice Dates" indicated on CFL's account receivables spreadsheet are not the actual invoice dates. *See* Motion at 3-5.

At issue is whether CFL submitted to AFS certain invoices within the contractually agreed 180-day time limit. Motion at 2. Partin's methodology in analyzing the number of days stated in shipment data and invoice dates via Excel calculations is sound, and CFL raises no objection to his actual methodology. Thus, there is no basis to exclude his testimony.

Instead, CFL asserts Partin relied on inaccurate data because "he assumes that the 'Invoice Date' in Column G of *CFL_052072-Confidential.*xlsx indicates the date of the *first* invoice sent to Amazon." Motion at 4. Whether the data Partin relied on are accurate is a factual question for the jury. "Challenges that go to the weight of the evidence are within the province of a fact finder, not a trial court judge." *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1044 (9th Cir. 2014). Any issues regarding the reliability of the underlying facts on which Partin relied upon are subjects for cross-examination, and potential recalculation on the stand. *ActiveVideo.*, 694 F.3d at 1333; *Smith,* 215 F.3d at 718; *United States ex rel. Poong Lim/Pert Joint Venture v. Dick Pac./Ghemm Joint Venture*, Nos. 3:03-cv-00290-JWS, 2006 U.S. Dist. LEXIS 19281, at *8-9 (D. Alaska Mar. 2, 2006) ("Indeed, it would be error for the court to exclude the testimony of an expert on the grounds that it is based upon one version of disputed facts. That an expert relied upon a particular source for his opinion is not evidence of the truth of that source."); FRE 702, Adv. Comm. Notes (2000) (explaining that "[w]hen facts are in dispute, experts sometimes reach different conclusions" and a trial court is not "authorize[d] . . . to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other"); *see also Gatti v. Cmty. Action Agency of Greene Cty., Inc.*, 263 F. Supp. 2d 496, 509 n.8 (N.D.N.Y. 2003) ("Significant reductions to this initial amount, *inter alia,* were due to the economist's erroneous assumptions, which the Defendants, during cross examination, made

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO
EXCLUDE CERTAIN TESTIMONY OF WILLIAM PARTIN - 3
Case No. 2:17-cv-00814-JLR

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

53430696.2

the expert painfully aware of those mistakes.  Defendants' counsel had Blanchfield re-calculate the amount of damages during the course of cross examination thus arriving at a lower amount for damages which was presented to the jury."). CFL's reliance on *General Electric v. Joiner*, 522 U.S. 136 (1997) is misplaced, as the exclusion was based on the reliability of scientific studies—a true *Daubert* issue—and not the reliability of the facts produced by the opposing party. *Id.* at 146-47.

CFL's contention Partin had no basis to conclude that the "Invoice Dates" represented on CFL's accounts receivables spreadsheet is that the actual invoice date is incorrect.  However, an invoice date on aging statements, absent a date to the contrary, means the first invoice date as understood in the field.  *See* Dkt. No. 193, ("Partin Decl."), ¶ 8.  Additionally, CFL's FRCP 30(b)(6) designee, CFO Allen Parrott, testified that Column G on its aging spreadsheet was the invoice date.  Declaration of Steven Block ("Block Decl."), Ex. A, 51:21-52:14.  When asked how he determined whether an invoice was past due, Parrot testified that the basis for CFL's representations to the Court regarding the age of the unpaid invoices was the dates stated on the accounts receivable spreadsheet, i.e., dates CFL now claims are inaccurate.  *Id.*, 27:24-29:17.  In other words, Partin used the same data CFL used to make certain representations about the age of the invoices, data which it now claims is inaccurate.

Finally, it is common practice for auditors to assume "invoice dates" to be the dates when they were first issued unless other dates are provided.  Partin Decl., ¶ 8.  Absent such information, the accuracy of an aging invoice is questionable.  *Id.*  CFL claims Partin ignored contrary data.  *See* Motion at 5-6.  While this might be a point for cross examination, Partin did, in fact, conduct an identical analysis using AFS's data, as indicated in spreadsheet columns CFL hid in the version it filed in support of this motion.  Block Decl., Ex. B.  However, AFS's data also show that AFS paid some of these invoices in full.  *See, e.g.*, Block Decl., Exs. B-C (showing that CFL initially invoiced AFS $107.25 for shipment No. 770635688, which it paid, yet CFL is asking for the Court to award an additional $13.63 for that shipment).  Because the

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE CERTAIN TESTIMONY OF WILLIAM PARTIN - 4
Case No. 2:17-cv-00814-JLR

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400   FAX (206) 447-9700

53430696.2

first invoice date often includes an invoice AFS paid in full, the actual date CFL submitted invoices for payment is disputed and not appropriate to decide on a *Daubert* motion.

Finally, AFS requested in discovery that CFL produce the invoices it submitted to AFS. Block Decl., Ex. D (Request for Production No. 17). CFL agreed to produce all invoices related to "Amazon's purported set off of funds." *Id.* The invoices CFL produced related to "Amazon's purported set off of funds" were generated in 2019. *See, e.g.*, Block Decl., Ex. C. Thus, it appears CFL has failed to comply with its FRCP 26 discovery obligations and is trying to leverage that failure to its own benefit by asking the Court to exclude expert testimony based on the information CFL did provide.

Whether specific invoices were properly submitted within the appropriate timeline is an issue for the trier of fact. It is relevant to the damages analysis, as AFS's documentation shows it withheld significantly less than CFL claims. Dkt. No. 158, Ex. 60, at 4 n.7.

CFL's argument is based entirely on a factual dispute involving the reliability and accuracy of data it produced itself. As these factual issues derive from the accuracy and reliability of CFL's own data, expert testimony exclusion would be improper.

**C.   Whether CFL Spot Quoted Shipments of One to Seven Pallets is Relevant to this Dispute**

This case primarily concerns whether CFL overcharged AFS on certain shipments that CFL always claimed were subject to the oral modification for 8+ Pallets. CFL avers that Partin's analysis of shipments containing between one and seven pallets is irrelevant. Motion at 6. In arguing this, CFL claims for the first time that these invoices are all for "minimum charge" shipments, and thus concedes they are not subject to the alleged spot quote agreement. *Id.* at 7. However, CFL provides no explanation why all of these shipments were actually charged at neither minimum charge rates nor contractual discount rates. Partin Decl., ¶ 7. Instead, it merely points to a portion of AFS's analysis wherein AFS determined CFL should receive a credit

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO
EXCLUDE CERTAIN TESTIMONY OF WILLIAM PARTIN - 5
Case No. 2:17-cv-00814-JLR

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400   FAX (206) 447-9700

53430696.2

because CFL undercharged AFS. *See* Partin Decl., ¶ 4 (credit indicated by a parenthesis around the number).

Partin's calculation of overcharges for these shipments, using CFL's own data, is relevant and reliable, as CFL overcharged AFS for them, regardless of whether they were minimum charge shipments. *See* Partin Decl., ¶¶ 5-6. His calculation is based on CFL's determination of Contract CzarLite rates, according to CFL's data. *Id.* ¶ 4; *see also* Motion at 9. He then subtracted contractual discounts from the CzarLite rate. Partin Decl., ¶ 4. If that discounted rate was less than the contractual minimum charge, he used the minimum charge rather than the discounted rate. *Id.* He subtracted contractual discount/minimum charge rates from what CFL charged to determine the amount of overcharges. *Id.* This is the process CFL claims AFS should have undertaken. Dkt. No. 101. If rates CFL charged were less than contractual minimum charges, credits were applied to the overcharged amounts. Partin Decl., ¶ 4. Regardless of whether these shipments were spot quoted, CFL still overcharged AFS by at least $75,000 (excluding the 19 shipments it now claims were 8 pallets or more). *Id.* ¶ 5.

CFL claims that AFS erroneously conducted its 8+ pallet audit because it audited all shipments that did not indicate a contractual discount. Motion at 6. AFS did conduct a 0% discount audit because all shipments (even minimum charge shipments) were required to state the contractual discount. AFS's demand letter for repayment of this amount stated that a 0% discount audit was performed. Dkt. No. 139-1, Ex. B ("Demand Letter) ("The table below summarizes the Funds demand and the reasons for overpayment ... 0% discount applied on shipments[:] $2,389,538."). Confusion arose because, to justify charging non-contractual rates, CFL always claimed these shipments were volume quoted. *See* Dkt. No. 158, Ex. 19 (Request for Admission No. 3) (admitting during this discovery that "each invoice identified in AFS_CFL_00001597, AFS had approved the process of applying a volume rate to large volume shipments...."); Block Decl., Ex. E (CFL justified the lack of a contractual discount because the shipments were subject to Addendum 4). AFS accepted CFL's rationale, because CFL did not

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE CERTAIN TESTIMONY OF WILLIAM PARTIN - 6
Case No. 2:17-cv-00814-JLR

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

53430696.2

submit pallet counts on its in invoices, such that AFS could not verify the number of pallets each shipment contained until well into this litigation.  *See, e.g.*, Block Decl., Ex. C.

Additionally, attempting to show AFS should have known these shipments were spot quoted, CFL claims these shipments did not have a contractual discount applied to it.[1]  Dkt. No. 145 at 10, 21 (asserting in its motion for summary judgment that "CFL's invoicing of the 8+ Pallet Shipments was obvious to Amazon because for these shipments, unlike a typical LTL shipment where the contractual discount was displayed, there was no contractual discount entered."); *see also* Dkt. No. 139, (First Amended Complaint), ¶ 88 ("Moreover, Central Freight's Volume Billing of 8+ Pallet Shipments was obvious.  Central Freight submitted invoices to Amazon electronically, pursuant to Amazon's billing instructions.  Whereas the invoice for a typical LTL shipment for Amazon specifically enumerated the contractual discount, 8+ Pallet Shipments (and some other types of movements) indicated that no discount applied.").

None of the shipments were billed at contractual minimum charge rates.  Partin Decl., ¶ 7.  Moreover, contrary to CFL's position, CzarLite and discounted rates are required on all invoices, even minimum charge shipments, with the minimum charge identified by an accessorial code.  Block Decl., Exs. F-G (minimum charge indicated by an accessorial designation of "AMC"), H ("Beavers 30(b)(6) Dep."), 67:18-68:18 ("[T]he minimum charge was transmitted as a separate field within the EDI template, and so you would see a base rate, a discount and a minimum charge, and then a total computed price.").

This issues concerns whether AFS overpaid CFL more than 6,000 shipments.  For these 2,901 shipments, CFL did not bill them at either the contractual discounted rate or the minimum

---

[1] If nearly 50% of undiscounted invoices were not spot quoted shipments, CFL's claims that AFS should have known CFL applied spot quotes to certain shipments must fail.

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE CERTAIN TESTIMONY OF WILLIAM PARTIN - 7
Case No. 2:17-cv-00814-JLR

53430696.2

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400   FAX (206) 447-9700

charge rate. CFL now concedes, they were not subject to the "spot quote addendum." Thus, Partin's analysis is relevant to determine the correct sums CFL undisputedly overcharged AFS.[2]

### D. Partin's Tender ID Analysis is Relevant

Partin's tender ID analysis provides his overcharge calculations based on when Tender ID spaces are blank or contain the reference "LN 999999999." Partin Decl., ¶ 9. He does not opine that shipments actually contained incorrect tender IDs. Contrary to CFL's assertion that Partin relied on AFS's data, this information was analyzed based on CFL's aging statement, produced as CFL_052072. As noted in previous filings, AFS required a valid Tender ID in order to process shipments for payment. Thus, a calculation of these amounts is relevant. *See* Dkt. No. 156, at 13-14; Block Decl., Ex. J. CFL asserts AFS cannot claim it was invoiced improperly based on expiration of the 18-month period has expired. However, AFS had already informed CFL that many of these shipments were improperly billed, and requested that they be re-invoiced with correct information. *See, e.g.*, Block Decl., Ex. I. CFL seeks compensation for improperly issued invoices. Per the Contract, AFS is not required to pay them.

This analysis is entirely relevant to CFL's alleged damages. Absent a valid tender ID, AFS cannot link an invoice with a shipment for which AFS agreed to pay. Dkt. No. 158., Ex. 39, 211:8-14; Block Decl., Ex. J, 217:5-18. The inquiry of whether these invoices were in fact properly invoiced is for the trier of fact.

### E. The Court Should Bar Any Testimony From David Wade

Lastly, CFL's Motion relies on the Declaration of David Wade. Wade was not disclosed as a fact witness during discovery. Block Decl., Exs. K-L. Thus, any testimony from him should be barred. FRCP 37.

---

[2] Upon exclusion of the 19 shipments potentially occupying at least 8 pallet spaces, CFL still overcharged AFS by over $75,000. This amount also includes credits to CFL when CFL charges less than the minimum charge amount. Partin Decl., ¶¶ 4-7.

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE CERTAIN TESTIMONY OF WILLIAM PARTIN - 8
Case No. 2:17-cv-00814-JLR

53430696.2

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400   FAX (206) 447-9700

## III. CONCLUSION

As CFL raises issues that relate only to the credibility and/or weight of Partin's testimony, the Court should deny CFL's motion.

DATED this 8th day of July, 2019.

        FOSTER PEPPER PLLC

        */s/ Steven W. Block*
        Steven W. Block, WSBA No. 24299
        Christopher A. Rogers, WSBA No. 49634
        1111 Third Avenue, Suite 3000
        Seattle, Washington 98101-3299
        Telephone: (206) 447-4400
        Facsimile: (206) 447-9700
        Email: steve.block@foster.com
        Email: christopher.rogers@foster.com

        Attorneys for Defendant Amazon Fulfillment Services

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE CERTAIN TESTIMONY OF WILLIAM PARTIN - 9
Case No. 2:17-cv-00814-JLR

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400   FAX (206) 447-9700

53430696.2

## CERTIFICATE OF SERVICE

I certify that on July 8, 2019, I electronically filed the foregoing document with the Clerk of the Court via CM/ECF which will notify all parties in this matter who are registered with the Court's CM/ECF filing system of such filing.

Executed in Seattle, Washington this 8th day of July, 2019.

*s/Michelle Stark*
Michelle Stark, Legal Assistant

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE CERTAIN TESTIMONY OF WILLIAM PARTIN - 10
Case No. 2:17-cv-00814-JLR

53430696.2

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400   FAX (206) 447-9700