The Honorable James L. Robart

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CENTRAL FREIGHT LINES, INC., a Texas
corporation,

                              Plaintiff,

     v.

AMAZON FULFILLMENT SERVICES, a
Delaware corporation, and DOES 1 through 25,
inclusive,

                            Defendant.

No. 2:17-cv-00814-JLR

DEFENDANT'S OPPOSITION TO
PLAINTIFF'S RULE 702 MOTION TO
PRECLUDE TESTIMONY OF
AMAZON'S EXPERT NICOLE
BOLTON

**NOTE ON MOTION CALENDAR:
July 12, 2019**

**Oral Argument Requested**

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO
EXCLUDE TESTIMONY OF NICOLE BOLTON
Case No. 2:17-cv-00814-JLR

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

53431230.3

## I.   INTRODUCTION

Defendant Amazon Fulfillment Services ("AFS") responds to Plaintiff Central Freight Lines, Inc.'s ("CFL") Rule 702 Motion to Preclude Testimony of Amazon's Expert Nicole Bolton ("Motion") (Dkt. No. 185).

CFL presents a variety of explanations to exclude her testimony, all of which stem from its disagreement with conclusions she reaches and the facts and assumptions she relied on.  Such disagreements are not bases for seeking to exclude her testimony, and should go to the weight and credibility of her testimony.  Bolton is qualified to offer her expert opinions and her methodology is sound, despite CFL's contention that she should have used a different process.  Her analysis is not the type of "junk science" motions pursuant to *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), are designed to exclude.  Her testimony meets the low threshold of admissibility.  CFL does not have a sound basis to exclude her testimony.

## II.   LEGAL ARGUMENT

### A.   Applicable Legal Standard.

Under *Daubert*, the Court's gatekeeping obligation is to ensure proffered expert testimony is relevant and based on reliable methods.  *See Daubert*, 509 U.S. at 589.  Courts should not weigh evidence or draw conclusions about the strength of any particular piece of evidence; in the Ninth Circuit, the Court's focus "'must be solely on principles and methodology, not on the conclusions that they generate.'" *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1232 (9th Cir. 2017) (emphasis added) (quoting *Daubert*, 509 U.S. at 595).  In other words, although the mere unproven statement of an expert is inadmissible, *see Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997), it is not the Court's task to decide whether an expert's conclusions are correct.  *See Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1318 (9th Cir. 1995) (the *Daubert* test "is not the correctness of the expert's conclusions but the soundness of his methodology.").  Instead, a party offering expert testimony must demonstrate that "the expert's conclusion has been arrived at in a scientifically sound and methodologically reliable fashion."

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO
EXCLUDE CERTAIN TESTIMONY OF NICOLE BOLTON - 1
Case No. 2:17-cv-00814-JLR

53431230.3

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

*Milward v. Acuity Specialty Products Group, Inc.*, 639 F.3d 11, 15 (1st Cir. 2011). "Disputes as to the strength of [an expert's] credentials, faults in his use of [a particular] methodology, or lack of textual authority for his opinion, go to the weight, not the admissibility, of his testimony." *Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1231 (9th Cir. 1998) (quoting *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1044 (2d Cir. 1995)). Additionally, disputes regarding the validity of the underlying facts are not valid bases to exclude expert testimony. *ActiveVideo Networks, Inc. v. Verizon Communs., Inc.*, 694 F.3d 1312, 1333 (Fed. Cir. 2012) ("At their core, however, Verizon's disagreements are with the conclusions reached by ActiveVideo's expert and the factual assumptions and considerations underlying those conclusions, not his methodology. These disagreements go to the weight to be afforded the testimony and not its admissibility."); *Smith v. Ford Motor Co.,* 215 F.3d 713, 718 (7th Cir. 2000) ("The soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact, or, where appropriate, on summary judgment.").

The Court's inquiry is "flexible" and "Rule 702 should be applied with a 'liberal thrust' favoring admission." *Wendell*, 858 F.3d at 1232. Exclusion of expert testimony is appropriate only when such testimony qualifies as irrelevant or unreliable "junk science." *Id.* at 1237. Otherwise, a court should cede complex issues to the jury and rely on the traditional safeguards of the adversary system— cross-examination, presentation of contrary evidence, and instruction on the burden of proof—to test and evaluate weak but otherwise admissible evidence. *Daubert*, 509 U.S. at 596; *Wendell*, 858 F.3d at 1232; *see also Milward*, 639 F.3d at 13 ("So long as an expert's scientific testimony rests upon 'good grounds, based on what is known,' it should be tested by the adversarial process, rather than excluded for fear that jurors will not be able to handle the scientific complexities." (quoting *Daubert*, 509 U.S. at 590, 596)). "[T]he interests of justice favor leaving difficult issues in the hands of the jury and relying on the safeguards of the adversary system." *Wendell*, 858 F.3d at 1237 (internal citations omitted).

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO
EXCLUDE CERTAIN TESTIMONY OF NICOLE BOLTON - 2
Case No. 2:17-cv-00814-JLR

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400   FAX (206) 447-9700

53431230.3

1

2    **B.     Expert Nicole Bolton is Qualified as an Expert to Opine on LTL Shipment Rating**

3                    To qualify as an expert, a witness must have knowledge, skill, experience, training, or

4    education that will assist the trier of fact in understanding the evidence or determining a fact in

5    issue.  FRE 702.  Federal courts have held that this is a broad standard, and that a witness may be

6    qualified as an expert by any one of the five listed qualifications.  *See e.g.*, *Salas v. PPG*

7    *Architectural Finishes, Inc.*, No. C17-1787 RSM, 2019 U.S. Dist. LEXIS 15752, at *3-4 (W.D.

8    Wash. Jan. 31, 2019) (citing cases) ("Because Rule 702 'contemplates a *broad conception* of

9    expert qualifications,' only a '*minimal foundation* of knowledge, skill, and experience' is

10   required.").  The "lack of particularized expertise goes to the weight of [the] testimony, not its

11   admissibility." *Id.*; *see also United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000) ("[I]n

12   considering the admissibility of testimony based on some 'other specialized knowledge,' Rule

13   702 generally is construed liberally"); *Thomas v. Newton Int'l. Enters.*, 42 F.3d 1266, 1269 (9th

14   Cir. 1994) (FRE 702 contemplates a broad conception of expert qualifications; it is "broadly

15   phrased and intended to embrace more than a narrow definition of qualified expert."); *Kitzmiller*

16   *v. Jefferson Supply Co.*, No. 2:05-CV-22, 2006 U.S. Dist. LEXIS 61109, at *13 (N.D.W. Va.

17   Aug. 25, 2006) ("In light of the liberal rule 702 expert qualification standard, we hold that the

18   district court abused its discretion in excluding portions of [the experts'] testimony simply

19   because the experts did not have the degree or training which the district court apparently

20   thought would be most appropriate." (quoting *In re Paoili R.R. Yard PCB Litig.*, 916 F.2d 829,

21   855-56 (3d Cir. 1990)).

22                   As a Senior Truck Auditor & Executive Projects Officer at American Truck & Rail

23   Audits, Inc., Bolton is amply qualified under FRE 702, with over ten years of experience

24   conducting freight audits on millions of freight invoices.  Dkt. No. 158-2, Ex. 56 ("Report"), at

25   1.  CFL challenges her credentials by relying on the type of audit she performed for a single

26

---

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO
EXCLUDE CERTAIN TESTIMONY OF NICOLE BOLTON - 3
Case No. 2:17-cv-00814-JLR

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

53431230.3

client.  *See* Motion at 4 (citing Dkt. No. 185-1, Ex. B ("Bolton Dep."), 32:9-33:7; 34:6-16).  She

describes her relevant experience as follows:

> I have been trained as a certified freight cost auditor with a focus on the fine
> balance between a carrier being paid for the services they have rendered and
> shippers being billed correctly for the services they have received, in accordance
> with applicable governing rules. My professional experience includes a review of
> over a million freight invoices spanning more than 100 different carriers across
> the motor carrier industry. My in-depth audits of motor carrier ("truck") freight
> includes reviews of amounts invoiced by carriers to customers and determination
> of the correct charges using historical and current industry knowledge, contracts,
> tariffs, rating software and supporting documentation research.

Report at 1; *see also* Bolton Dep., 34:8-37:3 (testifying that she primarily performs "post-audits"

which occurs after payment and if a shipment "is billed incorrectly, and there are overcharges to

be claimed, we file that on behalf of our client").  Despite CFL's assertions to the contrary, she

has conducted audits to determine "the correct charges using historical and current industry

knowledge, contracts, tariffs, rating software and supporting documentation research" on "over a

million freight invoices spanning more than 100 different carriers."  Report at 1.  This is the

analysis that AFS asked her to conduct on CFL's spot quoted shipments.  *See* Bolton Dep., 37:8-

11 (testifying that she re-rates shipments to determine the correct shipment price); 39:18-20

(process here was similar to the audits she typically performs).  Thus, Bolton is qualified to opine

about the reasonableness of CFL's spot quoted shipments and industry standards based on her

extensive experience and training in the industry.

## C.    Bolton's Methodology and Opinions Are Reliable

Attacking the methodology of Bolton's analysis of the reasonableness of CFL's charged

rates, CFL's attorney characterizes her methodology as being "made up," and then attempts to

credit to her.  Bolton Dep., 42:7.  CFL provides no evidence or argument suggesting her

methodology is "junk science" of the type to allow the exclusion of her testimony.  As the Ninth

Circuit has determined, the "lack of textual authority for [an expert's] opinion, go to the weight,

not the admissibility, of his testimony."  *Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1231 (9th

Cir. 1998) (quoting *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1044 (2d Cir. 1995)).  Bolton's

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO
EXCLUDE CERTAIN TESTIMONY OF NICOLE BOLTON - 4
Case No. 2:17-cv-00814-JLR

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

53431230.3

1   inability to identify a specific methodology from a textbook does not render her testimony

2   inadmissible.

3   Bolton's methodology in determining industry averages for specific shipments is sound.

4   She compared industry and CFL's charged rates, which CFL concedes were designed to be

5   "astronomical," to reach her conclusions.  Bolton Dep., 43:11-12, 44:21-45:3; *see also* Block

6   Decl., Ex. M ("Culbertson Dep."), 85:5-21.  As part of her analysis, Bolton looked at published

7   rates of leading LTL carriers, including two carriers that operate in markets similar to those at

8   issue.  Bolton Dep., 40:15-41:16.  Using data CFL submitted on its invoices to AFS, Bolton

9   compared weight rates to determine the average "carat weight" in the LTL industry, which she

10  then used to calculate reasonable industry rates.  *Id.*  Courts frequently use averages to determine

11  reasonableness in other cases.  *See Miller v. Blatstein (In re Main, Inc.)*, No. 00-CV-35, 2000

12  U.S. Dist. LEXIS 17652, at *26 (E.D. Pa. Nov. 27, 2000) ("in determining the reasonableness of

13  compensation, it is not unusual for a court to examine the average compensation received during

14  the relevant period."); *Sw. Bell Tel. Co. v. FCC*, 168 F.3d 1344, 1353 (D.C. Cir. 1999) ("[T]he

15  use of industry-wide averages is one commonly-employed technique in evaluating the

16  reasonableness of rates charged by regulated entities.").  Thus, Bolton's use of a mean is

17  reasonable.  CFL's contention she should have used the "median," at most, goes to the weight

18  and credibility of her opinion, but is not a basis to exclude her.  CFL can challenge this on cross-

19  examination.[1]

20  CFL's primary concerns with her methodology are that (1) she did not consider the pallet

21  count in her analysis; and (2) she failed to consult a statistician "to determine whether her

22  sampling had a valid scientific bases [sic]."  Motion at 4.  Neither is a proper basis to exclude her

23  testimony.

---

[1] Although Bolton could not specifically define the "median" during her first deposition, she
explained that she had used it before and understood what it was.  Bolton Dep., 74:15-75:13 ("I
have used a median.").  Again, this goes to the weight of her testimony, not its admissibility.

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO
EXCLUDE CERTAIN TESTIMONY OF NICOLE BOLTON - 5
Case No. 2:17-cv-00814-JLR

**FOSTER PEPPER PLLC**
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

53431230.3

Whether LTL shipments should be rated based on pallet count is a contested factual fact. Under CFL's own tariff, pallet count is not a consideration for determining whether a shipment is an LTL shipment—only the shipment's weight matters.  Block Decl., Ex. N.  Nor is it generally a relevant factor for determining pricing.  Distance, freight classification, density, and weight are the primary considerations.[2]  Bolton's expert testimony (as supported by CFL's own tariff), is that pallet count is not considered when rating LTL shipments.  Thus, Bolton reasonably did not consider pallet count.  Regardless, this again goes to the weight of her testimony at most.  *See Consol. Insured Benefits, Inc. v. Conseco Med. Ins. Co.*, No. 6:03-cv-03211-RBH, 2006 U.S. Dist. LEXIS 85755, at *51 (D.S.C. Nov. 27, 2006) ("Thus, '[w]hen facts are in dispute, experts sometimes reach different conclusions based on competing versions of the facts. The emphasis in the amendment [to Rule 702] on 'sufficient facts or data' is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts or the other.'" (quoting FRE 702 advisory committee notes to 2000 amendments).

Additionally, Bolton's means to gain her sample set is reasonable, and not grounds for exclusion.  CFL claims Bolton had no basis to cull her data set the way she did because she did not use a specific statistical model to cull her results, rather than culling results through randomization.  Motion at 2-5.  It claims she culled her data set from 6,298 to 3,327 by eliminating all shipments that had fewer than eight transports.  Motion at 5.  CFL confusingly asserts the Court should exclude Bolton's testimony because she excluded minimum charge shipments from her analysis.  Motion at 9.  However, it also argues that these minimum charge shipments were not subject to the spot quote.  *Compare* Motion at 9 (improper to exclude the minimum charge shipments), *with* Dkt. No. 184, at 7 (minimum charge shipments were not spot quoted).  Thus, her exclusion of these shipments was entirely appropriate to determine the

---

[2] *How LTL Freight Rates Are Calculated—And How to Get the Best LTL Freight Rates*, COMPASS LOGISTICS, http://www.compass-logistics.com/ltl-freight-rates (last accessed July 8, 2019).

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE CERTAIN TESTIMONY OF NICOLE BOLTON - 6
Case No. 2:17-cv-00814-JLR

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

53431230.3

reasonableness of CFL's spot quoted shipments.  Regardless, whether Bolton improperly culled her dataset goes at most to the weight and credibility of her analysis, and not to its admissibility.

The crux of CFL's position is that Bolton failed to use an appropriate statistical analysis: Bolton "did not rely any statistics, books or guidelines to ensure that there was a statistical basis for this sample."  Motion at 5.  Although CLF claims Bolton should have used another method, "'[t]he test of admissibility is not whether a particular scientific opinion has the best foundation, or even whether the opinion is supported by the best methodology or unassailable research.' Instead, the court looks to whether the expert's testimony is supported by 'good grounds.'  The standard for reliability is 'not that high.'" *Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 81 (3d Cir. 2017) (internal citations omitted).  In *Karlo*, the Third Circuit reversed a district court's exclusion of expert testimony on the basis that the expert did not utilize the appropriate statistical model because the district court's standard was too rigorous.  *Id.* at 82.  "The question of whether a study's results were properly calculated or interpreted ordinarily goes to the weight of the evidence, not to its admissibility." *Id.* at 83.  "So long as the expert's testimony rests upon 'good grounds,' it should be tested by the adversary process . . . rather than excluded from jurors['] scrutiny for fear that they will not grasp its complexities or satisfactory [sic] weigh its inadequacies." *Id.* (quoting *In re TMI Litig.*, 193 F.3d 613, 692 (3d Cir. 1999)); *see also Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1231 (9th Cir. 1998) ("Disputes as to the strength of [an expert's] credentials, faults in his use of [a particular] methodology, or lack of textual authority for his opinion, go to the weight, not the admissibility, of his testimony." (citation omitted) (alterations in original)). Even the misuse of statistical analysis goes to the weight of the evidence, not its admissibility. *United States v. McCluskey*, 954 F. Supp. 2d 1224, 1267 (D.N.M. 2013); *Baldwin v. Bader*, 539 F. Supp. 2d 443, 446 (D. Me. 2008) ("Disputes about specific techniques used or the accuracy of the results generated go to the weight, not the admissibility[,] of the scientific evidence." (quoting *United States v. Bonds*, 12 F.3d 540, 561 (6th Cir. 1993)).

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO
EXCLUDE CERTAIN TESTIMONY OF NICOLE BOLTON - 7
Case No. 2:17-cv-00814-JLR

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

53431230.3

Here, Bolton excluded lanes (i.e. origin to destination combinations) with fewer than eight movements because analysis is more reliable with more data points.  Report at 7.  She excluded shipments under $150, which CFL now claims were minimum charge shipments and thus not subject to the spot quote program.  She then compared each of the remaining 1,739 shipments to the industry average rates.[3]  *Id.*  She concluded that the sample shipments averaged 37% above the average industry standard rate determined.  *Id.* at 10.  This is a valid methodology to conduct a comparison.[4]  Thus, CFL's assertion that Bolton's testimony should be excluded because she purportedly did not use a proper statistical analysis is legally insufficient for exclusion.

In any event, CFL's argument that Bolton's failure to use a specific statistical model improperly assumes a statistical model is required for her analysis.  Bolton was asked to determine whether spot quote rates CFL charged were reasonable.  This calls for a simple comparison, not a complex statistical analysis with probability values.

CFL also claims Bolton erred by not considering contractual rates other motor carriers charge AFS.  Motion at 9.  Bolton's methodology was appropriate, as she was considering only the extra-contractual rates other motor carriers would have charged with those under CFL's extra-contractual spot quote program.  However, comparing CFL's extra-contractual rates (i.e., spot quote rates) with other motor carriers' contractual rates is improper because AFS's contracts with its motor carrier contain significant discounts.

Any perceived issues CFL has with Bolton's approach, at most, might go to the weight and credibility of her analysis and are not grounds to exclude her testimony.

---

[3] At a minimum, Ms. Bolton should be allowed to testify on these 1,739 shipments.
[4] Balducci, Patrick, et al., *Costs of Alternative Revenue-Generation Systems* 62-64, 88-92 (2011), *available at* https://www.nap.edu/read/14532/chapter/1 (selecting sample states based on desired characteristics rather than randomized sample, and then apply the average to specific data points).

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE CERTAIN TESTIMONY OF NICOLE BOLTON - 8
Case No. 2:17-cv-00814-JLR

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

**D.      Bolton's Testimony is Relevant and Will Assist the Trier of Fact**

CFL seeks to exclude Bolton's analysis of the reasonableness of CFL's spot quoted rates by asserting that the reasonableness of the rates is irrelevant.  Motion at 2-3. CFL avers that if it were allowed to spot quote shipments, the rates it charged should be applied.  Motion at 3.  To accept this position, the Court must conclude that (1) AFS did not have the right to approve specific rates before CFL transported shipments; and (2) AFS does not have the right to challenge rates after the transport.  The Court would have to rule that AFS cannot challenge the appropriateness of CFL's charged rates, accepting as a matter of law that CFL's argument that it could charge whatever it wanted without pre-approval or oversight.  Botsios Dep., 139:17-20 ("Q: So you basically could have charged Amazon anything you wanted, right, for these spot-quoted shipments? A: Correct.");  Culbertson Dep. 85:5-21.  Under the duty of good faith and fair dealing, reasonableness is implied in every contract.  *Microsoft Corp. v. Motorola, Inc.*, 963 F. Supp. 2d 1176, 1184 (W.D. Wash. 2013).  Additionally, AFS asserted a claim against CFL for unjust enrichment, alleging that "Central Freight overcharged AFS by way of Central Freight's improper billing methodology."  Dkt. No. 48, Claim V.  In Washington, unjust enrichment claims include a determination of the "market value" of services rendered.  *Fidelitad, Inc. v. Insitu, Inc.*, No. 13-CV-3128-TOR, 2016 U.S. Dist. LEXIS 183009, at *12 (E.D. Wash. July 8, 2016) (citing Restatement (Third) of Restitution and Unjust Enrichment §§ 1, 49(3)(c)).  Thus, AFS's claim requires a determination of reasonableness of CFL's rates.

Additionally, Bolton's testimony rebuts CFL's contention that AFS suffered no damages by its inability to select different carriers when CFL failed to seek AFS's prior approval of rates.  Dkt. No. 145, at 24.  Thus, Bolton's testimony regarding the reasonableness of CFL's rates is relevant and helpful to the trier of fact.

Additionally, Bolton's analysis of CFL's spot quote program is essential to the reasonableness of rates that program charged.  CFL no longer has the data to support how its spot quote program determined specific rates.  *See* Motion at 11; Dkt. No. 131-3.  It also failed to

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO
EXCLUDE CERTAIN TESTIMONY OF NICOLE BOLTON - 9
Case No. 2:17-cv-00814-JLR

**FOSTER PEPPER PLLC**
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

53431230.3

produce the calculations underlying each of the alleged spot quotes, even though the spot quote program's creator testified that all spot quotes were saved to the mainframe.  Block Decl., Ex. O ("Christie Dep."), 31:14-21, 37:10-38:23; Block Decl., Ex. P (Request for Production No. 32) (requesting all documents or information used to calculate the spot quote shipments); Block Decl., Ex. Q (example of spot quote calculation); Block Decl., ¶ 18 (AFS has been unable to locate the spot quote calculations for the majority of the shipments in dispute).  Thus, as it does not appear CFL produced the underlying calculations, an analysis of the actual spot quote program is required to determine how it calculated rates, including whether it universally and arbitrarily increases the rate by 30%.  *Compare* Block Decl., Ex. Q (noting a 30% upcharge on that particular quote), *with* Report, at 10 (spot quoted shipments averaged 37% above the average industry standard rates on the sample invoices).[5]

Finally, Bolton's testimony as to whether it is common in the LTL industry to combine multiple bills of lading on a single invoice is relevant and helpful to the trier of fact.  That is a central issue in this litigation, given that CFL contends it is nearly impossible for an LTL carrier to combine bills of lading on a single invoice.  CFL's only concern is that the disputed fact whether line item in CFL's (and other motor carriers' tariffs) that CFL will combine same day/same origin/same destination shipments on a single invoice represents industry custom and practice. Again, CFL's concerns at most go to the weight of Bolton's analysis.  It is also in direct rebuttal to CFL's proffered expert's conclusion to the contrary, including allegations that such combining is not done in the LTL industry. Dkt. No. 167-1, Ex. P ("Regan Report"), at 14-16; *see also* Dkt. No. 139, ¶ 23. Merely because CFL disagrees with her conclusions is not grounds for the exclusion of her testimony. At most, it goes to the weight and/or credibility of her testimony.

---

[5] This merely highlights the reliability of Bolton's methodology.

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE CERTAIN TESTIMONY OF NICOLE BOLTON - 10
Case No. 2:17-cv-00814-JLR

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

53431230.3

1

**E.      Bolton Will Not Testify as to Legal Conclusions**

2

Bolton will not opine about legal conclusions such as whether the transportation

3

agreement was validly modified by agreement or the parties' course of conduct.  She will be

4

asked to opine whether it is standard in the transportation industry for carriers and shippers to

5

orally modify contracts.  Block Decl., Ex. R ("Bolton Rebuttal Report"), at 1 ("In the LTL

6

sector, oral agreements are the rare exception; contracts or pricing tariffs are the rule.").  This

7

statement will be offered to rebut CFL's expert's opinion to the contrary.  Dkt. No. 167-1, Ex. P

8

("Regan Report"), at 7 (filed under seal).  Under FRE 704, "[a]n opinion is not objectionable just

9

because it embraces an ultimate issue."  Her testimony regarding industry custom and practice

10

should not be excluded as a legal opinion. To the extent it is, Regan's similar testimony should

11

also be excluded as a legal opinion.

12

**F.      AFS Provided the Underlying Calculations Bolton Relied On**

13

CFL asks the Court to exclude Bolton's testimony because she did not provide a

14

spreadsheet with her calculation of industry averages.  Motion at 6.  AFS has provided this

15

spreadsheet to CFL.  Block Decl., ¶ 21.  Any delayed production of this document is not a basis

16

to exclude her testimony.  CFL is not prejudiced, as it was produced some three months prior to

17

trial.  *See* Block Decl., ¶ 21.  Moreover, the lack of prejudice is highlighted by CFL's own

18

delayed production of materials created by its own expert witness.  Block Decl., ¶ 22.  To the

19

extent any prejudice exists, it does not justify complete exclusion as trial is still months away.

20

**III. CONCLUSION**

21

CFL failed to present a well-reasoned *Daubert* motion, instead relying on perceived

22

issues that, at most, go to the weight of Bolton's analysis, and not to its admissibility.

23

Accordingly, the Court should deny CFL's motion.

24

25

26

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO
EXCLUDE CERTAIN TESTIMONY OF NICOLE BOLTON - 11
Case No. 2:17-cv-00814-JLR

**FOSTER PEPPER PLLC**
**1111 THIRD AVENUE, SUITE 3400**
**SEATTLE, WASHINGTON 98101-3299**
**PHONE (206) 447-4400   FAX (206) 447-9700**

DATED this 8th day of July, 2019.

FOSTER PEPPER PLLC


*/s/ Steven W. Block*
Steven W. Block, WSBA No. 24299
Christopher A. Rogers, WSBA No. 49634
1111 Third Avenue, Suite 3000
Seattle, Washington  98101-3299
Telephone: (206) 447-4400
Facsimile: (206) 447-9700
Email: steve.block@foster.com
Email: christopher.rogers@foster.com

Attorneys for Defendant Amazon Fulfillment
Services

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO
EXCLUDE CERTAIN TESTIMONY OF NICOLE BOLTON - 12
Case No. 2:17-cv-00814-JLR

53431230.3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## CERTIFICATE OF SERVICE

I certify that on July 8, 2019, I electronically filed the foregoing document with the Clerk of the Court via CM/ECF which will notify all parties in this matter who are registered with the Court's CM/ECF filing system of such filing.

Executed in Seattle, Washington this 8th day of July, 2019.


*s/Michelle Stark*
Michelle Stark, Legal Assistant

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO
EXCLUDE CERTAIN TESTIMONY OF NICOLE BOLTON - 13
Case No. 2:17-cv-00814-JLR

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON  98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

53431230.3