UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CENTRAL FREIGHT LINES, INC., | CASE NO. C17-0814JLR |
| Plaintiff, | ORDER DENYING DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR FOR A NEW TRIAL |
| v. | |
| AMAZON FULFILLMENT SERVICES, et al., | |
| Defendants. | |

## I. INTRODUCTION

Before the court is Defendant Amazon Fulfillment Services, Inc.'s ("AFS")

renewed motion for judgment as a matter of law or for a new trial (Mot. (Dkt. # 286)).

CFL filed a response to the motion (Resp. (Dkt. # 302)) and AFS filed a reply (Reply

(Dkt. # 306)). The court has considered the motion, the parties' submissions concerning

//

//

the motion, the relevant portions of the record, and the applicable law.  Being fully

advised,[1] the court DENIES the motion.

## II.  BACKGROUND

**A.    Factual Background**

The facts of this case have been detailed in several prior orders.  (*See, e.g.*, MSJ

Order (Dkt. # 214) (sealed) at 2-17.)  Therefore, the court offers only a brief summary of

the facts before turning to the relevant procedural history.

This case arises from a contract dispute between CFL, a freight carrier, and AFS.

(*See generally* FAC (Dkt. # 139).)  AFS is a subsidiary of Amazon.com, Inc., which

arranges inbound transportation of merchandise from vendors to Amazon Fulfillment

Centers.  (CFL MSJ Resp. (Dkt. ## 156 (redacted), 166 (sealed)) at 12.)  CFL provided

shipping services to AFS pursuant to a Transportation Agreement executed on July 7,

2011.  (FAC ¶¶ 13-14, Ex. A ("Agreement").)  The Agreement adopts and applies

CzarLite, a third-party freight rating system, for pricing and shipments, including

CzarLite's discount for less-than-truckload ("LTL") shipments.  (*See id.* at 13.) After

CFL complained to AFS that it was losing money on shipments that required more than

eight pallet spaces ("9+ pallet shipments"), the parties orally modified the Agreement to

allow CFL to apply volume rates calculated by its spot-quote system to 9+ pallet

shipments.  (*See* MSJ Order at 27, 32.)  After AFS withheld payments from CFL for

//

---

[1] Neither party requested oral argument (*see* Mot. at 1; Resp. at 1), and the court finds
that oral argument would not be helpful to its disposition of the motion, *see* Local Civil Rules
W.D. Wash. LCR 7(b)(4).

shipments that CFL completed to offset alleged overcharges for prior shipments, this litigation commenced. (*See id.* at 16-17.) CFL claimed that AFS breached the parties' Agreement by withholding payment for those shipments, and AFS counterclaimed, alleging that CFL overcharged AFS. (*See* FAC ¶¶132-37 (alleging that AFS "[w]rongfully with[held] payments as purported set-off to the amounts it wrongfully claimed it overpaid" to CFL); Answer and Counterclaim (Dkt. # 48) ¶¶ 40-45.)

**B.   Procedural History**

    1.   <u>Partial Summary Judgment</u>

      The court granted in part and denied in part CFL's motion for partial summary judgment and AFS's motion for partial summary judgment. (*See generally* MSJ Order.) In relevant part, the court held that (1) the parties orally modified the Agreement on January 16, 2014, to allow CFL to charge spot-quoted volume rates for its 9+ pallet shipments without AFS's prior approval (*see id.* at 26-27); (2) the Agreement allowed CFL to bill AFS using multiple bills of lading ("BOL") at least until January 13, 2016, but a genuine dispute of material fact remains whether CFL was contractually obligated to use a single master bill of lading ("MBOL") for same day/same origin/same destination shipments after January 13, 2016 (*see id.* at 37-39); and (3) a genuine dispute of material fact remained regarding whether CFL's invoices to AFS required a valid Tender ID (*see id.* at 40-41). Further, the court granted summary judgment in favor of CFL on CFL's declaratory judgment claim that AFS's $2,856,602.00 setoff was improper. (*See id.* at 49.) The court held that AFS's setoff was improper under both the Agreement and the common law. (*See id.* at 47-48 ("The court now concludes that the

Agreement does not allow for setoff."), 49 ("The court concludes that AFS's setoff was improper.").)

On October 16, 2019, the court denied as premature and without prejudice CFL's motion for entry of monetary judgment on its declaratory judgment that AFS's setoff was improper. (*See* 10/16/19 Order (Dkt. # 263) at 12-13.) Because AFS was not precluded from challenging at trial the timeliness, validity or cost of the invoices on which AFS withheld payment as setoff, and because CFL was pursuing an overlapping breach claim based on nonpayment of the same invoices, the court determined that it would be premature to award a "necessary and proper" sum to CFL prior to trial under 28 U.S.C. § 2202. (*See id.* at 12.)

2. The Pretrial Order

The parties submitted their proposed pretrial order on September 30, 2019, and included a list of stipulated facts, including:

- "AFS decided to withhold money it owed Central Freight for freight services rendered in order to 'set off' the $2,856,602 million it had demanded from Central Freight but that Central Freight refused to pay";
- "AFS did not inform Central Freight in advance of its intent to effectuate a set off"; and
- "AFS began withholding payments to Central Freight on March 13, 2017."

(*See* Prop. PTO (Dkt. # 242) at 8-12.)[2]

_____

[2] The court entered the pretrial order on October 15, 2019. (*See* PTO (Dkt. # 254).)

The parties also included agreed issues of law, including "[w]hether Central Freight agreed to consolidate shipments onto MBOL, such that Central Freight and AFS formed a contract on the MBOL Issue, after April 30, 2016"; "[w]hether AFS breached the Transportation Agreement by withholding as set off $431,028 on the MBOL Issue"; "[w]hether Central Freight breached the oral agreement found by the Court by failing to use its spot quote system to rate shipments that occupied 9 or more pallet spaces as agreed"; "[w]hether AFS breached the oral agreement found by the Court by setting off funds for shipments that were rated pursuant to the oral agreement (i.e., those occupying 9 or more pallet spaces)"; and "[w]hether AFS should repay Central Freight the $112,203.52 it paid AFS because the payment was contingent on resolving all payment issues between Central Freight and AFS." (*See id.* at 12-14.)

3. <u>Jury Instructions</u>

At the pretrial conference, the court cautioned the parties to hew closely to the applicable model jury instructions, namely the Ninth Circuit's model civil jury instructions and the Washington civil pattern jury instructions. (*See* PTC Tr. (Dkt. # 248) at 21-22.) The parties jointly submitted agreed and disputed jury instructions on October 16, 2019. (Agreed Instr. (Dkt. # 262); Disputed Instr. (Dkt. # 261)); *see also* Local Rules W.D. Wash. LCR 51(f) (instructing parties to submit a document titled "Joint Instructions" that reflects all agreed-upon instructions, and a second document titled "Joint Statement of Disputed Instructions" that includes all disputed instructions).

//

//

The parties submitted a separate breach instruction for each of CFL's alleged breaches of contract. In the proposed instruction for CFL's breach claim based on the 9+ pallet shipments, the parties stated that CFL has the burden of proving:

> 1. Central Freight charged a rate using its spot quote software program for shipments that were 9 or more pallet spaces in size and did not inflate the rates;
>
> 2. That AFS breached the agreement by withholding as setoff money for shipments that were nine (9) or more pallet spaces in size; [and]
>
> 3. That AFS should reimburse Central Freight for the amounts set off for the 9 or more pallets shipments.

(Agreed Instr. at 62.) In the proposed instruction for CFL's breach claim based on the MBOL issue, the parties stated that CFL has the burden of proving that:

> 1. That Central Freight was entitled to send one invoice for each bill of lading;
>
> 2. That Central Freight was not required to combine bills of lading for shipments that were on the same day and were going from the same origin to the same destination;
>
> 3. That AFS breached the parties' written contract by clawing back money for shipments that were on the same day and were going from the same origin to the same destination that were not combined into a master bill of lading; and
>
> 4. That Central Freight was damaged as a result of AFS's claw back.

(*Id.* at 65.) The parties submitted a single instruction for AFS's breach counterclaim. (*Id.* at 68.) In relevant part, that proposed instruction states that AFS has the burden of proving:

> That the terms of the contract included that Central Freight was to charge for all LTL shipments pursuant to the rate schedule in the Transportation Agreement for shipments fewer [sic] pallet spaces in size; that Central

Freight was required to combine separate bills of lading for shipments that were on the same day and were going from the same origin to the same destination, and by failing to include required Tender IDs; [and]

***

That AFS was not in breach of the contract . . . .

(*Id.*)

The court read preliminary jury instructions to the jury on the first day of trial, October 21, 2019, including the joint statement of the case drafted by the parties. (*See* 10/22/19 Min. Entry (Dkt. # 270); Prelim. Instr. (Dkt. # 269) at 3-5.) The court modified the parties' proposed jury instruction on the parties' breach claims and counterclaims in order to hew closely to the model instructions, to maintain consistency with the court's prior rulings, and to ensure that the burden of proof was on the proper party for each claim. (*See* Final Instr. (Dkt. # 278) at 30-42, Instruction Nos. 27-35.) Accordingly, the instruction for CFL's breach claim based on the 9+ pallet shipments states, in relevant part:

The court has determined that AFS entered into a contract with CFL (known as the Transportation Agreement). The court has determined that the parties modified that contract. The court has determined that the terms of the contract, as modified:

• Allow CFL to spot quote shipments consisting of nine or more pallet spaces at its volume rate without AFS's preapproval.

• Do not allow for setoff.

CFL alleges five breaches of contract, as set forth in this instruction and Instructions 28, 29, 30, and 31. CFL has the burden of proving each of the following propositions on its first alleged breach of contract:

//

1.      That AFS breached the foregoing terms of the Transportation Agreement by withholding payment on shipments to set off alleged overcharges for shipments consisting of nine or more pallet spaces;

2.      That CFL was not in material breach of the contract; and

3.      That CFL was damaged by AFS's breach.

(*See id.* at Instruction No. 27.)  The instruction for CFL's breach claim based on the

MBOL issue states, in relevant part:

The court has determined that AFS entered into a contract with CFL (known as the Transportation Agreement).  The court has determined that the terms of that contract:

•       Allow CFL to bill AFS through the use of multiple bills of lading ("BOL")—as opposed to a single master bill of lading—("MBOL") for shipments from the same origin, to the same destination, on the same day; and

•       Do not allow for setoff.

CFL has the burden of proving each of the following propositions on its third alleged breach of contract:

1.      That AFS breached the foregoing terms of the Transportation Agreement by withholding payment on shipments to set off alleged overcharges for CFL's use of multiple BOLs—as opposed to a single MBOL—for shipments from the same origin, to the same destination, on the same day;

2.      That CFL was not in material breach of the contract; and

3.      That CFL was damaged by AFS's breach.

(*Id.* at Instruction No. 29.)  The instructions for AFS's breach counterclaims

followed the formatting for the CFL breach instructions.  For AFS's breach

//

//

counterclaim based on the 9+ pallet shipments, the instruction states that AFS

bears the burden of proving:

> 1. That CFL breached the foregoing term of the Transportation Agreement by failing to spot quote shipments consisting of nine or more pallet spaces at its volume rate;
>
> 2. That AFS was not in material breach of the contract; and
>
> 3. That AFS was damaged as a result of CFL's breach.

(*Id.* at Instruction No. 32.) The instruction for AFS's counterclaim based on the MBOL

issue states:

> The court has determined that AFS entered into a contract with CFL (the "Transportation Agreement"). The court has determined that the terms of that contract:
>
> Allow CFL to bill AFS through the use of multiple bills of lading ("BOL")—as opposed to a single master bill of lading—("MBOL") for shipments from the same origin, to the same destination, on the same day.
>
> AFS has the burden of proving each of the following propositions on its fourth alleged breach of contract:
>
> 1. That CFL and AFS modified the contract on or after February 13, 2016, to require CFL to bill AFS through the use of a single MBOL—as opposed to multiple BOLs—for shipments from the same origin, to the same destination, on the same day;
>
> 2. That CFL breached the contract by failing to bill AFS through the use of a single MBOL for shipments from the same origin, to the same destination, on the same day;
>
> 3. That AFS was not in material breach of the contract; and
>
> 4. That AFS was damaged as a result of CFL's breach.

(*Id.* at Instruction No. 35.)

*//*

4. <u>The Trial</u>

At trial the parties introduced evidence of AFS's setoff amount for 1-8 pallet shipments, 9+ pallet shipments, the MBOL issue, and the Tender ID issue. Among the exhibits the parties relied on are two AFS audit spreadsheets: the first supports AFS's demand letter asking CFL to repay $2,389,538.00 in alleged overcharges for 1-8 pallet shipments and 9+ pallet shipments (*see* Trial Ex. 110 ("Original AFS Audit"); Trial Ex. 18 ("Demand Ltr.")), and the second showed a higher amount of $2,415,787.27 (*see* Trial Ex. 111 ("Second AFS Audit")). CFL witness Doug Culbertson's analysis of CFL's alleged damages relied on the Second AFS Audit and was admitted into evidence. (*See* Trial Ex. 123 ("Culbertson Analysis").) In both CFL's opening statement and closing argument, and without objection from AFS, CFL used a demonstrative that relied upon the numbers in the Second AFS Audit. (*See* Day 1 Tr. (Dkt. # 292) at 144; Day 5 Tr. (Dkt. # 296) at 56; (Rogers Decl. (Dkt. # 287) ¶ 4, Ex. C ("Demonstrative").)

CFL introduced evidence from a number of witnesses on CFL's process for spot-quoting 9+ pallet shipments. Tom Botsios, CFL's Executive Vice President of Operations, testified that CFL used its spot-quote program to bill these shipments, and that he personally observed CFL personnel pricing AFS's 9+ pallet shipments using the spot quote program. (*See* Day 2 Tr. (Dkt. # 293) at 215-17.) Rob Harris, CFL's rate auditor, testified that he audited CFL's bills to all of CFL's customers, including AFS. (*See* Day 3 Tr. (Dkt. # 294) at 401-30.) Mr. Harris testified that he trained both of the night clerks who input the data on how to rate the AFS large-volume shipments in accordance with CFL's agreement with AFS, and audited the bills and did not find

deviations from the way he trained them. (*See id.*) Mr. Harris further testified that he occasionally personally input the data for AFS 9+ pallet shipments into the spot quote program himself. (*See id.*) Doug Culbertson, CFL's Vice President of Pricing during the relevant time period, testified that he observed CFL employees using the spot quote program to rate AFS's 9+ pallet shipments, and performed an analysis of the shipments and concluded that the pricing was "remarkably consistent" for shipments of the same size and the same number of pallets. (*See* Day 2 Tr. at 325-27.)

CFL rested its case on the third day of trial. (*See* Day 3 Tr. at 129.) AFS made an oral motion for judgment as a matter of law on CFL's claims and AFS's counterclaims under Federal Rule of Civil Procedure 50. (*See* Day 3 Tr. at 217-26.) AFS argued that there was a "complete failure of evidence" from CFL on the issue of whether CFL billed AFS according to its spot-quote volume rate for 9+ pallet shipments, and that "[t]here is no evidence in the record, nor will there be, that the spot-quote program was ever used." (*See id.* at 218-19.) AFS further argued that CFL failed to prove that CFL and AFS entered into a settlement agreement with respect to CFL's $112,203.52 payment to AFS. (*See id.* at 221.) The court heard a brief oral response from CFL. (*See id.* at 222-23.) Although the court deferred ruling on AFS's motion, the court noted that the burden to prove that CFL charged AFS the incorrect amount for the 9+ pallet shipments is on AFS as part of AFS's counterclaim, not on CFL. (*See id.* at 220.)

AFS filed a brief in further support of its motion for judgment as a matter of law on the fourth day of trial. (*See* AFS JMOL Brief (Dkt. # 272).) AFS argued that the court had ruled that CFL was required to calculate its volume rates for the 9+ pallet

shipments "through its spot quote software program," and argued that CFL's use of its spot quote software program was an "express condition precedent" to the parties' oral modification of the Agreement. (*See id.* at 4-5.) AFS also argued, for the first time, that the issue of setoff is separate and apart from the issue of breach of contract, and that the language regarding setoff in the jury instructions reflects "[c]onfusion regarding CFL's obligation to prove compliance with its contract obligations." (*See id.* at 8.) AFS further argued that the court's ruling that the Agreement "does not allow for setoff" means only that the Agreement is "silent as to setoff" and neither "permit[s] nor prohibit[s] it." (*See id.* at 9.) AFS then, again for the first time, took issue with setoff-related language in the jury instructions, portions of which AFS and CFL jointly proposed. (*See id.* at 8-9.)

AFS rested its case on the fourth day of trial. (*See* Day 4 Tr. (Dkt. # 295) at 149.) CFL moved for judgment as a matter of law on AFS's counterclaims. (*See id.* at 155-57.) The court heard brief argument from the parties on CFL's motion and took it under advisement. (*See id.* at 155-67.) The court noted that AFS appeared to invent its "condition precedent" theory on the eve of trial, and AFS conceded that the words "condition precedent" do not appear in the court's summary judgment order, in the pretrial order, or in any other filing in this case prior to AFS's trial brief. (*See id.* at 164-66; *see generally* MSJ Order; PTO.)

The court subsequently took the parties' formal exceptions to the court's proposed jury instructions and verdict form. (*See id.* at 167-77.) AFS took exception to all of the court's breach instructions, again based on the language regarding setoff. (*See id.* at 169-78 (taking exception to Jury Instruction Nos. 27-35).)

The court read the jury instructions on the morning of the fifth and final day of trial.  (*See* Day 5 Tr. at 3-31.)  After closing statements, the jury retired to deliberate.  (*See id.* at 102.)  The same afternoon, the jury reached a verdict, finding AFS liable for breach of contract; determining that AFS' breach caused CFL $2,472,227.10 in damages; and finding CFL not liable for breach of contract against AFS.  (*See id.* at 104-07; Verdict Form (Dkt. # 280) at 2.)  AFS subsequently filed the present motion, which the court now considers.

### III.   ANALYSIS

**A.    Legal Standards for Renewed Motion for Judgment as a Matter of Law**

The court may grant AFS's renewed motion for judgment as a matter of law if it "finds that a reasonable jury would not have a legally sufficient evidentiary basis" to find for CFL.  *See* Fed. R. Civ. P. 50(a).  The court must view the evidence and draw all reasonable inferences in favor of CFL—the party in whose favor the jury returned its verdict.  *Ostad v. Oregon Health Sci. Univ.*, 327 F.3d 876, 881 (9th Cir. 2003).  Granting a motion for judgment as a matter of law is proper if "the evidence permits only one reasonable conclusion, and the conclusion is contrary to that reached by the jury."  *Id.*  Judgment as a matter of law "is appropriate when the jury could have relied only on speculation to reach its verdict."  *Lakeside-Scott v. Multnomah Cnty.*, 556 F.3d 797, 802-03 (9th Cir. 2009).

Because it is a renewed motion for judgment as a matter of law, a proper post-verdict Rule 50(b) motion is limited to the grounds asserted in the pre-deliberation Rule 50(a) motion.  *EEOC v. GoDaddy Software, Inc.*, 581 F.3d 951, 961-62 (9th Cir.

2009).  Thus, a party cannot properly raise arguments in its post-trial motion under Rule

50(b) that it did not raise in its pre-verdict Rule 50(a) motion.  *Id.* (citing *Freund v.

Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003) and other cases).  In its Rule

50(a) motion, AFS argued that (1) CFL's evidence is insufficient to prove that CFL spot-

quoted the 9+ pallet shipments at its volume rate and (2) CFL offered no evidence of a

settlement agreement on the MBOL issue.  (*See* Day 3 Tr. at 218-23.)  These issues are

properly before the court, and the court will consider them under the standards recited

above.

**B.     Grounds Raised for Judgment as a Matter of Law**

1.   Sufficiency of Evidence on CFL's Breach Claim and AFS's Breach
        Counterclaim

AFS argues that CFL "failed to offer evidence at trial sufficient for a jury to

reasonably conclude that CFL complied with the contract modification" that allowed

CFL to spot-quote 9+ pallet shipments.  (*See* Mot. at 6.)  It is unclear whether AFS's

argument is aimed at CFL's breach claim or AFS's breach counterclaim.  (*See* Mot. at

6-8.)  Although AFS argues in terms of the sufficiency of CFL's evidence, AFS also

argues in terms of CFL's burden to comply with the contract by charging AFS the proper

amount, which is the subject of AFS's counterclaim.  (*See id.* at 6.)  The court addresses

both.

*a.  Sufficiency of Evidence for CFL's Breach Claim*

In order to prove CFL's claim for breach of contract, CFL bore the burden to

prove that AFS withheld payment to CFL on shipments to set off alleged overcharges for

prior shipments.  (*See* Final Instr. at Nos. 27-30.)  AFS, however, provides no argument

regarding the sufficiency of CFL's evidence that AFS withheld payment, and instead

focuses entirely on the sufficiency of CFL's evidence that CFL accurately billed AFS.

(*See* Mot. at 6-8.)  During trial the jury was presented with sufficient evidence to

conclude CFL met its burden to prove that AFS withheld payment, including the parties'

stipulated facts.  (*See* Trial Ex. 600 ¶¶ 31-32, 34-35.)   Accordingly, the court will not

overturn the jury's verdict on CFL's breach claim on the grounds of sufficiency of the

evidence.

AFS argues that because contract modification is an affirmative defense, CFL has

the burden to prove that its "noncompliance" with the Agreement (i.e. its compliance

with the modified contract) was justified only if CFL generated 9+ pallet rates through its

spot quote software.  (*See* Mot. at 6.)  AFS then argues that CFL failed to provide

evidence that it did so.  (*See id.* at 7-8.)

AFS confuses the defense of contract modification with CFL's burden on CFL's

breach of contract claim against AFS.  It goes without saying that CFL does not bear the

burden to prove an affirmative defense on CFL's own claim.  CFL's burden to prove

breach of contract was to prove that AFS breached the contract as modified.  Any burden

to prove that CFL failed to charge AFS the correct amount, and in doing so breached the

contract, is properly on AFS for AFS's breach counterclaim.

Even if CFL had borne the burden on its affirmative breach claim to show that it

properly billed AFS, there is sufficient evidence in the record from which a jury could

have so found.  Tom Botsios, CFL's Executive Vice President of Operations, testified

that CFL used its spot-quote program to bill these shipments, and that he personally observed CFL personnel pricing AFS's 9+ pallet shipments using the spot quote program. (*See* Day 2 Tr. at 215-17.)  Rob Harris, CFL's rate auditor, testified that he audited CFL's bills to all of CFL's customers, including AFS.  (*See* Day 3 Tr. at 401-30.)  Mr. Harris testified that he trained both of the night clerks who input the data on how to rate the AFS large-volume shipments in accordance with CFL's agreement with AFS, and audited the bills and did not find deviations from the way he trained them.  (*See id.*)  Mr. Harris further testified that he occasionally personally input the data for AFS 9+ pallet shipments into the spot quote program himself.  (*See id.*)  Doug Culbertson, CFL's Vice President of Pricing during the relevant time period, testified that he observed CFL employees using the spot quote program to rate AFS's 9+ pallet shipments, and performed an analysis of the shipments and concluded that the pricing was "remarkably consistent" for shipments of the same size and the same number of pallets.  (*See* Day 2 Tr. at 325-27.)

Although AFS may disagree with the weight the jury may have given this evidence, the court must view the evidence and draw all reasonable inferences in favor of CFL—the party in whose favor the jury returned its verdict.  *See Ostad*, 327 F.3d at 881. Therefore, even if the burden to prove that CFL accurately billed AFS was on CFL, which it is not, the court would conclude that a jury could have reasonably found that CFL met that burden.

//

//

### b. *Sufficient Evidence for AFS's Breach Counterclaim*

AFS's arguments regarding contract modification and evidence that CFL properly billed AFS are issues that are more relevant to AFS's counterclaim than CFL's claim. However, because the court held on summary judgment that the parties modified the contract to allow CFL to spot-quote 9+ pallet shipments (*see* MSJ Order at 27, 32), at trial CFL no longer bore the burden to prove that modification occurred.

On its counterclaim, AFS properly bore the burden to prove that CFL billed AFS more than the contract as modified allowed. As stated above, AFS fails to show that, in the light most favorable to CFL, the evidence permits only the conclusion that CFL overcharged AFS. AFS cites to no evidence that CFL overbilled AFS. Therefore, AFS fails to meet the Rule 50(a) standard for renewed judgment as a matter of law.

### 2. CFL's Evidence of a Settlement Agreement

AFS argues that CFL presented no evidence that CFL's payment of $112,203.52 to AFS was in furtherance of a settlement agreement and argues that CFL's majority owner and former president both agreed that "[t]here was no agreement." (*See* Mot. at 8 (citing Day 3 Tr. at 116:14-17, 120:11-25; Day 2 Tr. at 101:7-16).) CFL disputes AFS's characterization of the evidence. (*See* Resp. at 5-6.) However, CFL points only to the testimony of Mr. Orr, a CFL witness, as evidence of a MBOL settlement agreement. (*See id.* (citing Day 3 Tr. at 119-20 (Mr. Orr testifying that "[t]here was no agreement because [Mr.] Piller wanted a much larger sum"); *id.* at 124-25 (Mr. Orr testifying that it was his "hope" that CFL's MBOL payment would settle the parties' MBOL dispute, but that he didn't know if Mr. Piller agreed to a settlement)).)

Mr. Orr's testimony is insufficient to show that there was mutual assent as required to form a settlement agreement between CFL and AFS regarding the parties' MBOL dispute. Nevertheless, it is undisputed that CFL's payment was in response to AFS's demands regarding the MBOL issue. At trial, AFS failed to prove its counterclaim that the parties modified their contract to require CFL to use MBOLs for same day/same origin/same destination shipments. Accordingly, the jury could have reasonably found that CFL was entitled to recover the $112,203.52 payment as damages for AFS's breach of contract even in the absence of a settlement agreement. Therefore, the evidence does not permit "only one reasonable conclusion" that is contrary to the jury's verdict. *See Ostad*, 327 F.3d at 881.

## C. Legal Standard for Motion for a New Trial

The standard under which the court considers AFS's motion for a new trial is distinct from the standards under which it considers AFS's renewed motion for judgment as a matter of law. Under Rule 59(a)(1)(A), the "court may, on motion, grant a new trial on all or some of the issues—and to any party . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). "Rule 59 does not specify the grounds on which a motion for new trial may be granted." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007). Rather, the court is "bound by those grounds that have been historically recognized." *Id.* "Historically recognized grounds include, but are not limited to, claims 'that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving.'" *Id.* (citation omitted).

Courts apply a lower standard of proof to motions for new trial than they do to motions for judgment as a matter of law. Thus, even if the court declines to grant judgment as a matter of law, it may order a new trial under Rule 59. A verdict may be supported by substantial evidence, yet still be against the clear weight of evidence. *Id.* Unlike a motion for judgment as a matter of law, in addressing a motion for a new trial, "[t]he judge can weigh the evidence and assess the credibility of witnesses, and need not view the evidence from the perspective most favorable to the prevailing party." *Id.* Instead, if, "having given full respect to the jury's findings, the judge on the entire evidence is left with the definite and firm conviction that a mistake has been committed," then the motion should be granted. *Id.* at 1371-72.

However, a motion for new trial should not be granted "simply because the court would have arrived at a different verdict." *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002); *U.S. v. 40 Acres*, 175 F.3d 1133, 1139 (9th Cir. 1999). Indeed, when a motion for a new trial is based on insufficiency of the evidence, "a stringent standard applies" and a "new trial may be granted . . . only if the verdict is against the great weight of the evidence" or "it is quite clear that the jury has reached a seriously erroneous result." *Digidyne Corp. v. Data Gen. Corp.*, 734 F.2d 1336, 1347 (9th Cir. 1984) (internal quotations and citations omitted). Further, the court should uphold a jury's award of damages unless the award is based on speculation or guesswork. *See City of Vernon v. S. Cal. Edison Co.*, 955 F.2d 1361, 1371 (9th Cir. 1992). Finally, the court notes that "denial of a motion for a new trial is reversible 'only if the record contains no evidence in support of the verdict' or if the district court 'made a mistake of law.'" *GoDaddy*

*Software, Inc.*, 581 F.3d at 962 (citing *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007)).

**D.    Grounds Raised for a New Trial**

AFS raises three issues in its motion for a new trial:  (1) that CFL made misleading statements during closing argument (Mot. at 9-10); (2) that the jury instructions improperly shifted the burden to AFS to prove that CFL did not use its spot-quote software program (*id.* at 10-12); and (3) that the portions of the jury instructions regarding setoff denied AFS a fair trial (*id.* at 12-14).  The court considers each in turn.

1.    CFL's Closing Argument

AFS argues that the jury's verdict "was based on misrepresentations of fact by CFL" in a demonstrative that CFL showed to the jury during closing argument.  (*See* Mot. at 9-10 (citing Demonstrative).)  The Demonstrative outlined CFL's claimed damages:

| Damages | |
|---|---|
| 9+ Pallets Set Off Amount | $1,781,158.01 |
| *1-8 Pallet Shipments Amazon incorrectly calculated for Set Off Amount* | *$634,629.25* |
| *1-8 Pallet Price as Rated Under the TA* | *$522,827.68* |
| Difference | $165,309.09 |
| MBOL Set Off Amount | $431,028.00 |
| CFL MBOL Payment to AFS | $112,203.52 |
| Tender ID Issue | $36,036 |
| Total Amount Amazon Owes CFL | $2,525,734.62 |

(*Id.*)[3] AFS argues that the jury arrived at its verdict of $2,472,227.10 (*see* Verdict Form at 2) in three steps:  (1) adding the amount AFS failed to pay for 9+ pallet shipments ($1,781,158.01), 1-8 pallet shipments ($634,629.25), the MBOL set off amount ($431,028.00), and the amount AFS failed to pay based on alleged Tender ID defects ($36,038), to reach a top-line overcharge of $2,882,851.26; (2) adding CFL's payment on the MBOL issue to AFS ($112,203.52); and (3) subtracting the amount CFL admitted it overcharged AFS ($522,827.68).  (*See* Mot. at 9-10.)  However, AFS argues that the evidence in the record does not support the top-line overcharge amount of $2,882,851.26.  (*See id.*)  AFS contends that CFL's only evidence of the amount of its unpaid invoices to AFS is contained in Trial Exhibit No. 107, which reflects a setoff amount of $2,847,666.33, and Todd Militzer's testimony that he saw another aging statement with $12,000 more in withholding.  (*See id.* at 10 (citing Day 3 Tr. at 41:25-42:21).)  AFS argues that the jury's reliance on the erroneous demonstrative warrants a new trial.  (*See id.*)

CFL responds that (1) AFS waived any objection to CFL's use of the demonstrative by not objecting to its use at trial; and (2) the numbers in the demonstrative are supported by evidence in the record.  (*See* Resp. at 7.)  CFL points to AFS's audit spreadsheets (Original AFS Audit; Second AFS Audit) and AFS's demand letter (Trial Ex. 18 ("Demand Letter")) for the damages for the MBOL and Tender ID issues; Doug Culbertson's damages analysis (Trial Ex. 123) for the damages for unpaid

---

[3] CFL used the same demonstrative during its opening statement, also without objection. (*See* Day 1 Tr. at 144-45.)

invoices for 9+ and 1-8 pallet shipments; and states that the "CFL MBOL Payment to AFS" was undisputed. (*See* Resp. at 7.)

The court instructed the parties at the pretrial conference that any demonstratives need to be shown to opposing counsel prior to their use at trial. (*See* PTC Tr. (Dkt. # 248) at 9.) CFL used the same demonstrative in its opening statement, and emailed AFS the evening before closing statements and stated "[w]e're just using what we disclosed earlier in the week." (*See* Willis Decl. (Dkt. # 303) ¶ 3, Ex. 2.) AFS did not object to CFL's use of the demonstrative at any point during the trial. (*See generally* Day 1 Tr.; Day 5 Tr.) By failing to object, AFS waived its right to later challenge CFL's use of the demonstrative.

Moreover, even if AFS had preserved its objection, sufficient evidence in the record supports the numbers CFL presented to the jury in its demonstrative. CFL witness Doug Culbertson calculated the amount AFS purportedly withheld based on an audit spreadsheet prepared and produced by AFS. (*See* Culbertson Analysis; 2nd AFS Audit.) Although AFS also produced a separate audit spreadsheet with a lower number, it is the duty of the jury, not the court, to weigh this conflicting evidence and reach a resolution. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict."). Based on the testimony of Mr. Culbertson and the Second AFS Audit, the jury could have reasonably concluded that the higher number was the proper amount to award CFL.

AFS also states that CFL concedes that the higher number based on the Second AFS Audit is more than the amount AFS actually withheld.  However, the evidence AFS points to for this assertion is ambiguous:  Trial Exhibit 600, containing the parties' admitted facts, contains this statement from AFS: "However, [the Second AFS Audit] calculated the overcharge to be $2,415,787.27, more than the amount shown in [the Original AFS Audit] and the amount AFS set off from CFL."  (*See* Trial Ex. 600.)  This statement is ambiguous and has at least two plausible interpretations:

- The amount in the Second AFS Audit is more than the amount shown in the Original AFS Audit, and the amount in the Second AFS Audit is "the amount AFS set off from CFL."; or

- The amount in the Second AFS Audit is more than the amount shown in the Original AFS Audit, and also more than the amount AFS set off from CFL.

In either case, the jury was presented with two audit spreadsheets, and the court cannot say it was unreasonable for the jury to conclude that the Second AFS Audit contained the amount AFS set off.  Therefore, CFL's use of the demonstrative does not meet the "stringent standard" to show that the verdict is "against the great weight of the evidence" or that "it is quite clear that the jury has reached a seriously erroneous result," *see Digidyne Corp.*, 734 F.2d at 1347, and is not grounds for a new trial.

2.  Burden of Proof

AFS argues that the court's final jury instructions "improperly shifted to AFS the burden of proving that CFL did not use its spot quote software to generate rates for 9+ pallet shipments."  (*See* Mot. at 10-12.)  AFS contends that (1) because contract

1  modification is an affirmative defense, and the party asserting modification has the

2  burden of proof, the burden should have been on CFL to prove that CFL complied with

3  the Agreement as modified, which in AFS's view means proving that it used its spot-

4  quote software to generate the volume rates that it billed AFS for 9+ pallet shipments

5  (*see id.* at 11); and (2) that AFS should not have to "prove a negative" because CFL "had

6  exclusive control of the information regarding use (or lack thereof) of its software."  (*See*

7  *id.* (citing *Jolliffe v. N. Pac. R. Co.*, 100 P. 977, 978 (Wash. 1909); *United States v. New*

8  *York, N.H. & H.R. Co.*, 355 U.S. 253, 256 n.5 (1957).  Once again, AFS does not

9  specifically state whether its claimed improper burden-shifting occurred in the

10  instructions for CFL's breach claim or AFS's breach counterclaim, although it cites to an

11  instruction for each.  (*See* Mot. at 10-11 (citing Final Instr. Nos. 27, 32).)

12      The court has already addressed the proper burdens of proof for CFL's breach of

13  contract claim and AFS's breach of contract counterclaim.  (*See supra* § III.B.1.)  The

14  instructions properly placed the burden of proving CFL's breach claim (that AFS failed

15  to pay CFL) on CFL, and the burden of proving AFS's breach claim (that CFL

16  overcharged AFS) on AFS.  *See* Washington Pattern Civil Jury Instructions WPI 300.02

17  (placing on the party claiming breach of contract the burden to prove that the defendant

18  breached a term of a contract in the ways claimed by the plaintiff—in this case, by

19  withholding payments to set off alleged prior overcharges).

20      AFI relies on a "narrow exception" and argues that notwithstanding the ordinary

21  burdens of proof set forth above and as expressed in the Washington Pattern Instructions,

22  CFL should have borne the burden to prove that it used its spot-quote software to bill

AFS accurately under the parties' oral modification on 9+ pallet shipments. (*See* Mot. at 11-12.) Under this narrow exception, when necessary information "is exclusively within the knowledge of one or the other of the parties, the burden would be on the party possessed of that knowledge to make the proof." (*See id.* at 11 (quoting *Jolliffe v. N. Pac. R. Co.*, 100 P. 977, 978 (Wash. 1909).) As the authority AFS relies on makes clear, however, "[t]his consideration should not be overemphasized" because "[n]early all required allegations of the plaintiff in actions for tort or breach of contract relating to the defendant's acts or omissions describe matters particularly in the defendant's knowledge." 2 McCormick On Evid. § 337 (8th ed.). Here, the parties engaged in discovery for several years, and AFS does not explain why it could not have taken discovery, including depositions, of CFL employees with personal knowledge regarding CFL's billing of AFS. Moreover, AFS maintained a sophisticated auditing system to ensure that carriers' invoices were consistent with AFS's contracts.[4]

In sum, the jury instructions properly placed the burdens on the respective parties to prove their claims and are not grounds for a new trial. However, even if CFL had properly borne the burden to prove that it used its spot-quote program to generate the volume rates for AFS's 9+ pallet shipments, a reasonable jury could have found that CFL met that burden. (*See supra* § II.B.4.)

//

---

[4] In its initial motion for judgment as a matter of law, AFS argued that CFL lacked evidence to prove that it used its spot-quote software program because the employees who did not physically punch in the numbers into the system did not testify. However, AFS did not seek to depose any of these clerks.

1     3. <u>Jury Instructions Regarding Setoff</u>

2     AFS's final argument ignores the court's prior orders, the parties' joint proposed

3 jury instructions, and the parties' stipulated facts. CFL maintained declaratory judgment

4 and breach of contract claims based on AFS's withholding of payments to set off alleged

5 overcharges. (*See* FAC ¶¶ 131.F (seeking declaratory judgment that AFS "wrongfully

6 withheld payments as purported set-off to the amounts it wrongfully claimed it overpaid),

7 136.e (alleging in breach of contract claim that AFS "[w]rongfully withh[eld] payments

8 as purported set-off to the amounts it wrongfully claimed it overpaid" to CFL).) The

9 court granted summary judgment in favor of CFL on CFL's declaratory judgment claim

10 that AFS's $2,856,602.00 setoff was improper. (*See* MSJ Order at 49.) The court held

11 that AFS's setoff was improper under both the Agreement and the common law. (*See id.*

12 at 47-48 ("The court now concludes that the Agreement does not allow for setoff."), 49

13 ("The court concludes that AFS's setoff was improper.").)

14     AFS now argues that the court should not have included the term "setoff" in the

15 jury instructions, because "which party currently 'holds the money' is irrelevant to a

16 determination of the underlying issues." (*See* Mot. at 13.) AFS argues that "[i]f AFS

17 breached the contract, it did so by failing to pay invoices properly issued for shipments

18 made." (*See id.*) AFS fails to explain any meaningful difference between the language it

19 now proposes ("failing to pay invoices") and the language it argues was improper

20 ("withholding payment on shipments to set off alleged overcharges"). AFS takes issue

21 with the court's instruction that the contract "does not allow for setoff," but fails to

22 //

explain how the jury would evaluate the case any differently if the instructions stated that the contract included a term that requires AFS to pay for shipments CFL billed to AFS.

AFS's argument is all the more perplexing because AFS proposed the "setoff" terminology that it now complains of multiple times in pretrial filings. (*See, e.g.*, Prop. PTO at 12-14 (listing as an agreed issue of law "[w]hether AFS breached the oral agreement found by the Court by setting off funds for shipments that were rated pursuant to the oral agreement (i.e., those occupying 9 or more pallet spaces)"); Agreed Instr. at 62 (jointly proposing that CFL bears the burden on its breach of contract claim to prove, among other elements, that "AFS breached the agreement by withholding as setoff money for shipments that were nine (9) or more pallet spaces in size"; and that "AFS should reimburse Central Freight for the amounts set off for the 9 or more pallets shipments.").)

Moreover, AFS's attempts to distinguish "failing to pay" (which AFS now contends would have been proper language" and "withholding payment to set off" (which AFS now contends is improper) are unpersuasive. "Setoff" describes the purpose for which AFS withheld payment—a purpose that AFS stipulated to as an agreed fact.[5] (*See* Prop. PTO at 12-14) (stipulating that "AFS decided to withhold money it owed Central Freight for freight services rendered in order to 'set off' the $2,856,602 million it had demanded from Central Freight but that Central Freight refused to pay").

---

[5] AFS's attempt to define its withholding of payment as merely an issue of "who holds the money" while a dispute is resolved is unpersuasive. Neither party disputes that failing to pay amounts owed is a breach of contract. AFS's "holding" of the money (i.e. AFS's failure to pay CFL) is precisely the substance of CFL's breach of contract claim.

AFS's complaints that the jury instructions amounted to a directed verdict also ring hollow. AFS's argument is based on a combination of the "setoff" language in the jury instructions and the fact that AFS stipulated that it withheld $2,856,602 from CFL to set off alleged overcharges. (*See* Joint Prop. Instr. Nos. 37; *see also id.* No. 38 (requiring CFL to prove "[t]had AFS breached the parties' written Transportation Agreement by setting off more money than it was entitled to . . ."); No. 39 (requiring CFL to prove "[t]hat AFS breached the parties' written contract by clawing back money for shipments . . ."); *see also* Prop. PTO at 8-12 (stipulating that "AFS decided to withhold money it owed Central Freight for freight services rendered in order to 'set off' the $2,856,602 million it had demanded from Central Freight but that Central Freight refused to pay").)

AFS's argument that the instructions amounted to a directed verdict are inexplicable given that AFS proposed the very language it now complains of and the fact that along with that language, with full knowledge of the court's summary judgment order, stipulated that it took the actions that constitute a breach of contract in its stipulated facts. Having admitted that it withheld payments as setoff and submitted proposed jury instructions that speak in terms of setoff, AFS cannot now complain that the jury instructions included "setoff" language that accurately reflects the court's prior orders. (*See* Joint Prop. Instr. Nos. 37; *see also id.* Nos. 38 (proposing agreed instruction requiring CFL to prove "[t]had AFS breached the parties' written Transportation Agreement by setting off more money than it was entitled to . . ."), 39 (proposed agreed instruction requiring CFL to prove "[t]hat AFS breached the parties' written contract by

clawing back money for shipments . . .").) The fact that AFS conceded a fact that established liability under the proper jury instructions does not mean that those jury instructions were incorrect or unfair, and it is not grounds for a new trial.

## IV. CONCLUSION

Based on the foregoing analysis, the court DENIES AFS's renewed motion for judgment as a matter of law or for a new trial (Dkt. # 286).

Dated this 21st day of February, 2020.

JAMES L. ROBART
United States District Judge