UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CENTRAL FREIGHT LINES, INC., <br><br> Plaintiff, <br><br> v. <br><br> AMAZON FULFILLMENT SERVICES, INC., <br><br> Defendant. | CASE NO. C17-0814JLR <br><br> ORDER ON PLAINTIFF'S MOTIONS FOR PREJUDMGENT INTEREST AND ATTORNEY'S FEES |

## I. INTRODUCTION

Before the court are (1) Plaintiff Central Freight Lines, Inc.'s ("CFL") motion for attorney's fees (Fees Mot. (Dkt. # 285); *see also* Fees Mot. Reply (Dkt. # 307)); and (2) CFL's motion to alter or amend the judgment to include prejudgment interest (Interest Mot. (Dkt. # 283); *see also* Interest Mot. Reply (Dkt. # 299)). Defendant Amazon Fulfillment Services, Inc. ("AFS") filed responses to the motions. (*See* AFS Resp. to Fees Mot. (Dkt. # 300); AFS Resp. to Interest Mot. (Dkt. # 291).) The court has

reviewed CFL's motions, the parties' submissions in support of and in opposition to the motions, the relevant portions of the record, and the applicable law. Being fully advised,[1] the court DENIES CFL's motion for attorney's fees and GRANTS in part and DENIES in part CFL's motion to amend or alter the judgment to include prejudgment interest.

## II. BACKGROUND

The facts of this case have been detailed in several prior orders. (*See, e.g.*, MSJ Order (Dkt. # 214) at 2-17.) Therefore, the court provides only a brief summary of the facts relevant to the present motions.

This case arises from a contract dispute between CFL, a freight carrier, and AFS. (*See generally* FAC (Dkt. # 139).) AFS, which is a subsidiary of Amazon.com, Inc., arranges inbound transportation of merchandise from vendors to Amazon Fulfillment Centers. (CFL MSJ Resp. (Dkt. ## 156 (redacted), 166 (sealed)) at 12.) CFL provided shipping services to AFS pursuant to a Transportation Agreement executed on July 7, 2011. (FAC ¶¶ 13-14, Ex. A ("Agreement").) The Agreement adopts and applies CzarLite, a third-party freight rating system, for pricing and shipments, including CzarLite's discount for less-than-truckload ("LTL") shipments. (*See id.* at 13.) After CFL complained to AFS that it was losing money on shipments that required more than eight pallet spaces ("9+ pallet shipments"), the parties orally modified the Agreement to allow CFL to apply volume rates calculated by its spot-quote system to 9+ pallet

//

---

[1] Neither party requests oral argument (*see* Fees Mot. at 1; Interest Mot. at 1; AFS Resp. to Fee Mot. at 1; AFS Resp. to Interest Mot. at 1), and the court finds oral argument would not be helpful to its disposition of the motions, *see* Local Civil Rules W.D. Wash. LCR 7(b)(4).

shipments. (*See* MSJ Order at 27, 32.) After AFS withheld payments from CFL for shipments that CFL completed to offset alleged overcharges for prior shipments, this litigation ensued. (*See id.* at 16-17.) CFL claimed that AFS breached the Agreement by withholding payment for those shipments, and AFS counterclaimed, alleging that CFL overcharged AFS. (*See* FAC ¶¶ 132-37 (alleging that AFS "[w]rongfully with[held] payments as purported set-off to the amounts it wrongfully claimed it overpaid" to CFL); Answer and Counterclaim (Dkt. # 48) ¶¶ 40-45.)

After a trial, the jury rendered a verdict finding AFS liable for breach of contract; determining that AFS' breach caused CFL $2,472,227.10 in damages; and finding CFL not liable on AFS' counterclaim. (*See* Verdict Form (Dkt. # 280) at 2.)

### III.   ANALYSIS

**A.   CFL's Motion for Attorney's Fees**

The Agreement does not include an attorney's fees provision. (*See generally* Agreement.) Nevertheless, CFL argues that it is entitled to attorney's fees based on AFS's bad faith conduct both before and during this litigation. (*See* Fees Mot. at 2-3.) CFL bases its motion on an exception to the American Rule[2] under Washington law that allows fee awards for bad faith conduct. (*See id.*) AFS responds that CFL is not entitled to attorney's fees because (1) the Federal Aviation Administration Authorization Act of 1994 ("FAAAA") preempts any Washington law-based fee award (*see* AFS Resp. to Fees

//

---

[2] Under the American Rule, a prevailing party does not recover its attorney's fees absent a contract, statute, or recognized ground of equity. *See Rorvig v. Douglas*, 873 P.2d 492, 497 (Wash. 1994).

Mot. at 3-7 (citing 49 U.S.C. § 14501(c))); (2) even if Washington law applies, bad faith based on pre-litigation conduct is not a recognized ground for attorney's fees under Washington law (*see id.* at 7-9); and (3) AFS's conduct did not rise to the level of bad faith (*see id.* at 9-14).

Although CFL relies exclusively on Washington law (*see* Fees Mot. at 2-3), Washington law does not apply to the entirety of CFL's fee request. In federal diversity actions, district courts may award attorney's fees under state law when they are part of the state's substantive, rather than procedural, requirements. *See In re Larry's Apartment, L.L.C.*, 249 F.3d 832, 838 (9th Cir. 2001). "However, when fees are based upon misconduct by an attorney or party in the litigation itself, rather than upon a matter of substantive law, the matter is procedural," and federal law applies. *See id.* (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 53 (1991)), and quoting *People by Abrams v. Terry*, 45 F.3d 17, 23 (2d Cir. 1995) ("[I]t is quite anomalous to suggest that a federal court must look to the . . . state legislature to vindicate an abuse of the federal judicial power.").[3] Accordingly, the court first analyzes whether Washington State substantive law allows an award of fees for AFS's pre-litigation conduct before applying federal procedural law to CFL's request for fees based on AFS's conduct during this litigation.

1. Fees for Pre-Litigation Conduct Under Washington Law

As a general matter, Washington State follows the American Rule, under which each side pays its own attorney's fees regardless of who prevails, and rejects punitive

---

[3] A district court's inherent authority to sanction parties for their litigation conduct applies with equal force in diversity actions. *See Chambers*, 501 U.S. at 35, 52.

damages. *See Dempere v. Nelson*, 886 P.2d 219, 222 (Wash. Ct. App. 1994), *overruled on separate grounds by Burnet v. Spokane Ambulance*, 933 P.2d 1036 (1997)).[4] Nevertheless, a court may award attorney's fees if authorized by contract, statute, or a recognized ground in equity. *See id.* at 220 (internal quotations and citations omitted). Here, it is undisputed that the Agreement does not contain a fees provision. (*See generally* Agreement.) Further, CFL does not point to any Washington statute entitling it to fees. (*See generally* Fees Mot.) Thus, CFL relies on the final ground upon which Washington law may allow an award of fees, "a recognized ground in equity." *See Dempere*, 886 P.2d at 220.

Like the federal courts, Washington courts have "inherent equitable powers" to "authorize the award of attorney fees in cases of bad faith." *Matter of Pearsall-Stipek*, 961 P.2d 343, 349 (Wash. 1998), *as amended* (Oct. 17, 2000). Although Washington courts often describe these "inherent equitable powers" in terms similar to those used by federal courts, *see, e.g.*, *Chambers*, 501 U.S. at 53, the scope of Washington State courts' equitable power to award bad-faith attorney's fees is not clearly defined. *See Rogerson Hiller Corp. v. Port of Port Angeles*, 982 P.2d 131, 135 (Wash. Ct. App. 1999) ("Although a number of cases have questioned the existence of bad faith as a basis of an attorney's fee award, the Washington Supreme Court has recently confirmed that 'bad

//

//

---

[4] The court in *Deutscher v. Gabel*, 202 P.3d 355, 366 (Wash. Ct. App. 2009), recognized *Burnet*'s overruling of *Dempere* on separate grounds.

faith litigation can warrant the equitable award of attorney fees.' . . . But Washington case law provides little precedent for what constitutes bad faith.'").[5]

Nevertheless, several Washington courts have determined that "it is bad faith in the conduct of litigation," not prelitigation misconduct, "which may warrant an award of attorney fees." *Dempere*, 886 P.2d at 221 (comparing fee awards based on prelitigation misconduct to punitive damages, which Washington law does not recognize); *see also Maytown Sand & Gravel, LLC v. Thurston Cty.*, 423 P.3d 223, 250 (2018), *as amended* (Oct. 1, 2018) (holding that sanctioning parties for "prelitigation conduct that occurred before the court was involved and before litigation was initiated" exceeds the scope of Washington courts' inherent authority to award bad faith attorney's fees, because "harm caused by malicious, prelitigation conduct fits more naturally within the meaning of damages and is therefore limited to that context"), *overruled on other grounds by Yim v. City of Seattle*, 451 P.3d 694 (Wash. 2019); *see also Maytown Sand & Gravel, LLC*, 423 P.3d at 250 ("Washington limits the situations in which such prelitigation attorney fees can be recovered as damages.").

CFL seizes on a sentence in *Rorvig v. Douglas*, 873 P.2d 492, 497 (Wash. 1994), to argue that Washington's bad faith exception to the American Rule applies to AFS's

//

---

[5] As an example of the sometimes-confusing nature of the Washington law bad faith exception, one Washington case describes intentionally bringing a frivolous claim with an improper motive as a form of "[s]ubstantive bad faith," whereas federal case law describes the same conduct as a matter of procedural law. *Compare Rogerson Hiller Corp.*, 982 P.2d at 136 (describing "[s]ubstantive bad faith"), with *Chambers*, 501 U.S. at 53 ("However, when fees are based upon misconduct by an attorney or party in the litigation itself, rather than upon a matter of substantive law, the matter is procedural.").

prelitigation conduct. (*See* Fees Mot. at 3.)  In that case, the Supreme Court of Washington recognized that attorney's fees may be recovered as special damages for prelitigation misconduct in certain circumstances, including in malicious prosecution and wrongful attachment or garnishment actions.  *See Rorvig*, 873 P.2d at 497.  In doing so, the court held that these special damages extend to slander of title actions, because in those actions, "[i]t is the defendant who by intentional and calculated action leaves the plaintiff with only one course of action: that is, litigation." *See id.*  In these limited types of cases, Washington law extends attorney's fees as special damages because "actual damages are difficult to establish" and thus "[f]airness requires the plaintiff to have some recourse against the intentional malicious acts of the defendants." *See id.*

CFL contends that *Rorvig* allows fees for AFS's prelitigation conduct because AFS left CFL with no choice but to litigate. (*See* Fees Mot. at 3.)  However, Washington courts have limited *Rorvig* to specific types of claims that do not include breach of contract.  *See Campbell v. McClelland*, 112 Wash. App. 1005, 2002 WL 1279903, at *1 (Wash. Ct. App. 2002) (unpublished) (declining to award fees based on prelitigation conduct to a case based on a restrictive covenant because to take "that language [in *Rorvig*] literally would destroy the American Rule of attorney fees in every intentional tort case and every intentional breach of contract case"); *see also Dempere*, 886 P.2d at 222 ("Consequently, we hold that bad faith in the underlying tortious conduct is not a recognized equitable ground for awards of attorney fees in Washington.").

CFL cites no case, and the court is aware of none, in which a Washington court has applied *Rorvig* to award attorney's fees based on prelitigation conduct in a breach of

contract case. (*See generally* Fees Mot.) One Washington case that CFL relies on discusses "prelitigation misconduct" in dicta but does not cite to any Washington case that stands for the proposition that Washington law allows attorney's fees based on prelitigation conduct that is connected to the underlying merits of the case. (*See* Fees Mot. at 3 (citing *Rogerson Hiller Corp.*, 982 P.2d at 136).) CFL also relies on *Hsu Ying Li v. Tang*, 557 P.2d 342 (Wash. 1976). (*See* CFL Reply to Fees Mot. at 6.) Yet, the *Hsu Ying Li* court concluded that the "bad faith" exception did "not apply . . . as the trial court did not find any bad faith conduct," and instead awarded fees based upon the defendant's constructive fraud. *See Hsu Ying Li*, 557 P.2d at 344. Finally, CFL relies on *Gunn v. Riely*, 200 Wash. App. 1039 (2017) (unpublished), but that case involved a quiet title action, one of the types of cases in which such fees are allowed under *Rorvig*. (*See* CFL Reply to Fees Mot. at 7.) Moreover, the purpose of awarding fees for prelitigation bad faith conduct as described by *Rorvig* does not apply to breach of contract cases like this one, because unlike slander or quiet title actions, damages are not generally "difficult to establish" in breach of contract cases. *See Rorvig*, 873 P.2d at 497.

Based on the foregoing authorities, the court concludes that Washington State substantive law does not allow for attorney's fees based on bad faith prelitigation conduct in breach of contract cases. Therefore, the court need not address AFS's arguments that the FAAAA preempts Washington law (*see* AFS Resp. to Fees Mot. at 3-7) or CFL's responses to those arguments (*see* CFL Reply to Fees Mot. at 2-5).

//

//

## 2. Fees for AFS's Litigation Conduct Under Federal Law

Having determined that Washington State substantive law does not allow attorney's fees for AFS's prelitigation conduct, the court next applies the applicable federal law to the portion of CFL's fee request based on AFS's conduct during this litigation. CFL focuses primarily on AFS's prelitigation conduct and spills little ink on AFS's conduct throughout this litigation, but argues that "AFS asserted positions that it *knew* were false, both before and after the commencement of this litigation." (*See* Fees Mot. at 2.)

District courts may award sanctions in the form of attorney's fees under their inherent equitable powers if the court finds bad faith or "conduct tantamount to bad faith." *B.K.B. v. Maui Police Dept.*, 276 F.3d 1091, 1108 (9th Cir. 2002) (quoting *Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001)) (internal quotation marks omitted). "Sanctions are available for a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Id.* (quoting *Fink*, 239 F.3d at 994) (internal quotation marks omitted). The decision to impose sanctions rests in the sound discretion of the district court. *See Air Separation v. Underwriters at Lloyd's of London,* 45 F.3d 288, 291 (9th Cir. 1994).

Inherent powers must be used only with restraint and discretion. *Leon v. IDX Sys. Corp.*, No. C03-1158 P, 2004 WL 5571412, at *3 (W.D. Wash. Sept. 30, 2004), *aff'd*, 464 F.3d 951 (9th Cir. 2006) (citing *Chambers*, 501 U.S. at 44). If conduct can be sanctioned adequately under existing rules, a court ordinarily should rely on the rules

rather than on inherent power to impose sanctions. *Herrera v. Singh*, 103 F. Supp. 2d 1244, 1256 (E.D. Wash. 2000) (citing *Chambers*, 501 U.S. at 50). However, "if in the informed discretion of the court, neither the statute nor the rules are up to the task, the court may safely rely on its inherent power." *Chambers*, 501 U.S. at 50.

The court's inherent power to sanction bad-faith conduct is based "not on which party wins the lawsuit, but on how the parties conduct themselves during the litigation." *See id.* at 53. "Sanctions are available for a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." *B.K.B.*, 276 F.3d at 1108 (quoting *Fink*, 239 F.3d at 994) (internal quotation marks omitted).

CFL does not seek sanctions under either Federal Rule of Civil Procedure 11, 28 U.S.C. § 1297, or any other federal rule or statute. (*See generally* Fees Mot.) To support an award of fees under Rule 11, AFS must be given notice and an opportunity to respond. *See* Fed. R. Civ. P. 11(c)(1). AFS did not have such notice here because CFL did not seek relief under Rule 11. (*See generally* Fees Mot.) To support an award of fees under 28 U.S.C. § 1927, AFS must have acted in subjective bad faith, which is present if AFS "knowingly or recklessly raise[d] a frivolous argument, or argue[d] a meritorious claim for the purpose of harassing an opponent." *In re Keegan Mgmt. Co. Sec. Litig.*, 78 F.3d 431, 436 (9th Cir. 1996). This standard is similar to the standard the Ninth Circuit applies to requests for fees under the court's inherent authority. *See B.K.B*, 276 F.3d at 1108.

//

The court concludes that an award of attorney's fees is not justified here. CFL does not point to any failure by AFS to disobey court orders or otherwise disrupt or delay court proceedings. (*See generally* Fees Mot.) Instead, CFL asserts that AFS "continu[ed] to assert positions it knew to be untrue throughout the litigation." (*See id.* at 3.) Although the court granted partial summary judgment in favor of CFL (*see* MSJ Order at 65-66), and CFL ultimately prevailed at trial on its breach of contract claim against AFS (*see* Verdict Form at 2), the court does not conclude from the evidence before it that AFS's litigation positions were frivolous, reckless, or for the purpose of harassing CFL. CFL prevailed in part based on a contract modification that the court determined existed on summary judgment only after a full period of discovery. (*See* MSJ Order at 27.) AFS's remaining positions, including that the parties did not enter a settlement agreement to resolve a dispute over master bills of lading ("MBOL") (*see id.* at 56), that CFL was required to include valid Tender IDs on its invoices to AFS (*see id.* at 41), and that CFL was required to submit a master bill of lading for same day/same origin/same destination shipments (*see id.* at 39), all involved genuine disputes of material fact that required a jury trial to resolve.[6] Therefore, the court DENIES CFL's motion for attorney's fees.

//

//

---

[6] To be sure, the court does not condone all of AFS's trial strategy, which included taking new litigation positions on the eve of and during the trial. (*See* 2/21/20 Order at 12 (discussing the court's rejection of AFS's new theory that the parties' modification included a condition precedent) *id.* at 26-29 (discussing AFS's proposal and subsequent rejection of "setoff" language in the jury instructions).) However, CFL does not discuss these positions in its motion for attorney's fees, and the court does not find they rise to a level that warrants sanctions. (*See generally* Fees Mot.)

**B.     CFL's Motion for Prejudgment Interest**

CFL moves to amend or alter the judgment to include prejudgment interest at the Washington State statutory rate of 12% per annum. (*See* Interest Mot. at 2 (citing *U.S. Fid. & Guar. Co. v. Lee Investments, LLC*, 641 F.3d 1126, 1139 (9th Cir. 2011); *Mutuelles Unies v. Kroll & Linstrom*, 957 F.2d 707, 714 (9th Cir. 1992) ("In diversity jurisdiction, state law governs all awards of pre-judgment interest.")).)

Although AFS agrees that state law generally provides the applicable prejudgment interest rate, AFS responds that 49 U.S.C. § 14501(c) of the FAAAA preempts the application of a state law interest rate in this case, and therefore the 52-week U.S. Treasury bill rate should apply. (*See* AFS Resp. to Interest Mot. at 8-13.) AFS also takes issue with CFL's proposed interest calculations. (*See id.* at 4-7.) The court addresses AFS's preemption argument before determining the proper prejudgment interest award in this case.

1. Preemption

"In diversity actions brought in federal court a prevailing plaintiff is entitled to pre-judgment interest at state law rates . . . ." *Onink v. Cardelucci*, 285 F.3d 1231, 1235 (9th Cir. 2002); *Northrop Corp. v. Triad Int'l Mktg., S.A.*, 842 F.2d 1154, 1155 (9th Cir. 1988) ("The recognized general rule is that state law determines the rate of prejudgment interest in diversity actions. . . . The general rule has been followed in this circuit.") (citations omitted). Because the Agreement does not specify an applicable rate, CFL seeks the 12% per annum rate allowed by RCW 4.56.110(6) and RCW 19.52.020(1). (*See* Interest Mot. at 2.)

AFS contends that 49 U.S.C. § 14501(c) of the FAAAA preempts the application of a state law interest rate because this case relates to a motor carrier and therefore the 52-week U.S. Treasury bill rate should apply. (*See* AFS Resp. to Interest Mot. at 8-13.) Section 14501(c)(1) provides, in relevant part:

> Except as provided in paragraphs (2) and (3), a State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier (other than a carrier affiliated with a direct air carrier covered by section 41713(b)(4)) or any motor private carrier, broker, or freight forwarder with respect to the transportation of property.

49 U.S.C. § 14501(c)(1).

An exception under the FAAAA allows the adjudication of state-law-based claims for breach of motor carrier-related contract claims, as long as there is "no enlargement or enhancement [of the contract] based on state laws or policies external to the agreement." *See Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 232-33 (1995). AFS relies on cases holding that the FAAAA preempts state laws allowing punitive damages and state-law based attorney's fees to argue that the FAAAA similarly preempts the application of Washington statutes providing 12% per annum interest in cases relating to motor carriers. (*See* AFS Resp. to Interest Mot. at 10-11 (citing *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1432 n.8 (7th Cir. 1996) (holding that the FAAAA preempts state law punitive damages because they represent an enlargement or enhancement of the parties' bargain); *ATA Airlines, Inc. v. Fed. Express Corp.*, No. 1:08-cv-00785, 2010 WL 1754164, at *4 (S.D. Ind. Apr. 21, 2010) (holding that the FAAAA similarly preempts state law-based attorney's fees)).) AFS cites only one case

that mentions state-law-based prejudgment interest in relation to the FAAAA. (*See* AFS Resp. to Interest Mot. at 11 (citing *Manassas Travel, Inc. v. Worldspan, L.P.*, 2:07-CV-701-TC, 2008 WL 1925135, at *2 (D. Utah April 30, 2008)). However, the portion of *Manassas Travel* that AFS cites simply recites a party's argument that to the extent the opposing party "is seeking extra-contractual relief, such as attorneys' fees, exemplary damages and interest, the ADA preempts such relief." *See Manassas Travel, Inc.*, at *2. The court did not ultimately adopt this position and reserved ruling on the issue. *See id.*

AFS cites to no case in which a court has held that the FAAAA preempts the application of state-law-based prejudgment interest in diversity breach of contract cases. (*See generally* AFS Resp. to Interest Mot.) On the other hand, at least one Ninth Circuit case has affirmed a district court's award of Washington law-based prejudgment interest in a contract-based diversity action involving a motor carrier. *See Oak Harbor Freight Lines, Inc. v. Sears Roebuck, & Co.*, 513 F.3d 949, 961-62 (9th Cir. 2008); *see also In re Exxon Valdez*, 484 F.3d 1098, 1101 (9th Cir. 2007). Further, the cases upon which AFS relies that hold that FAAAA preempts state-law-based punitive damages and attorney's fees are distinguishable from cases awarding prejudgment interest. Unlike punitive damages and fees, prejudgment interest does not enlarge or enhance what was owed, but rather is "necessary in the ordinary case to compensate a plaintiff fully for a loss suffered at time t and not compensated until t + 1." *See Hopi Tribe v. Navajo Tribe,* 46 F.3d 908, 922 (9th Cir. 1995) (internal quotation marks omitted); *see also Emp. Painters' Tr. v. Cascade Coatings*, No. C12-0101JLR, 2014 WL 2893298, at *7 (W.D. Wash. June 25,

2014) ("Prejudgment interest is appropriate as a form of compensatory relief, but not as a means of punitive damages").

Based on the foregoing authority, the court concludes that the FAAAA does not preempt the application of RCW 4.56.110(6) and RCW 19.52.020(1) in this case.

2. Standard for Prejudgment Interest

CFL seeks prejudgment interest on (1) the entire amount of the jury's verdict for the time period between July 31, 2019, and the verdict date of October 25, 2013; for the "full setoff" amount between May 15, 2017, and May 26, 2017; and for the "full setoff" amount minus $530,121.21 (totaling $2,856,602.00) for the time period between May 26, 2017, and July 31, 2019, for a total interest amount of $829,718.39. (*See* Interest Mot. at 6.) CFL also includes an "alternative" request for $727,736.05. (*See id.* at 8.)

"A party is entitled to prejudgment interest where the amount due is 'liquidated.'" *Unigard Ins. Co. v. Mutual of Enumclaw Ins. Co.*, 250 P.3d 121, 128 (Wash. Ct. App. 2011) (citing *Weyerhaeuser Co. v. Commercial Union Ins. Co.*, 15 P.3d 115, 132 (Wash. 2000)). Additionally, courts award prejudgment interest when "the amount of an 'unliquidated' claim is for an amount due upon a specific contract for the payment of money and the amount due is determinable by computation with reference to a fixed standard contained in the contract, without reliance on opinion or discretion," *see Maryhill Museum of Fine Arts v. Emil's Concrete Const. Co.*, 751 P.2d 866, 870 (1988) (quoting *Prier v. Refrigeration Eng'g Co.,* 442 P.2d 621, 626 (Wash. 1968)). A claim is liquidated "where the evidence furnishes data which, if believed, makes it possible to compute the amount with exactness, without reliance on opinion or discretion." *Egerer v.*

*CSR W., LLC*, 67 P.3d 1128, 1131 (Wash. Ct. App. 2003) (quoting *Prier*, 442 P.2d at 626). "[T]he existence of a dispute over part or all of a claim does not change the claim from a liquidated to an unliquidated one. It is the character of the claim and not of the defense that determines the question." *Prier*, 442 P.2d at 627.

AFS raises several objections to CFL's calculations. (*See* AFS Resp. to Interest Mot. at 4-7.) AFS contends that CFL improperly seeks interest on an unsupportable sum greater than the jury's verdict, relies on an arbitrary accrual date, and fails to support its calculations with accurate, invoice-by-invoice due dates and amounts. (*See id.*) The court first addresses the sum to which prejudgment interest properly applies before addressing the proper accrual date.

    3. <u>Sum to Which Interest Applies</u>

The court concludes that the jury's verdict of $2,472,227.10 is the proper sum upon which to apply prejudgment interest. (*See* Verdict Form at 2.) This sum represents the amounts the jury determined AFS withheld from CFL in violation of the Agreement, minus the amount CFL concedes it overcharged AFS. As AFS agrees, the jury appears to have calculated CFL's damages as follows:

    (1) The amount AFS failed to pay to set off alleged overcharges on 9+ pallet shipments ($1,781,158.01); plus

    (2) The amount AFS failed to pay to set off alleged overcharges on 1-8 pallet shipments ($634,629.25); plus

    (3) The MBOL setoff amount ($431,028.00); plus

//

(4) The amount AFS failed to pay based on alleged Tender ID defects ($36,036); plus

(5) CFL's payment to AFS in response to AFS's demands on the MBOL issue ($112,203.52); minus

(6) The amount CFL admitted it overcharged AFS for 1-8 pallet shipments ($522,827.68).

(*See* 2/21/20 Order (Dkt. # 309) at 20-21; AFS JMOL Mot. (Dkt. # 286) at 9-10.)

Evidence presented to the jury supports the above sums. (*See* 2/21/20 Order at 20-23 (analyzing the evidence supporting the jury's damages award).) However, the sums in excess of the jury's verdict upon which CFL seeks interest are not supported. In CFL's first calculation, CFL seeks prejudgment interest on the "full setoff" amount of $3,386,723.21, a sum that includes $530,121.21 that AFS reimbursed to CFL on May 26, 2017. (*See* Interest Mot. at 6.) CFL does not connect the $530,121.21 to any set of invoices or provide evidence of when such invoices were due. (*See generally id.*) Because the reimbursed amount could relate to invoices that were not yet due, CFL cannot obtain prejudgment interest on the $530,121.21 that AFS reimbursed more than two and a half years ago. Further, the "total setoff" amount upon which CFL seeks prejudgment interest is not a proper sum because it fails to account for the $522,827.68 that CFL conceded throughout trial that AFS in fact did not owe to CFL. (*See* 2/21/20 Order at 20 (discussing CFL's position that $522,827.68 should be deducted from its damages award because it overcharged AFS that amount for 1-8 pallet shipments).)

//

### 4. Accrual Date

Generally, the date an invoice becomes due is the proper accrual date for prejudgment interest. *See Weyerhauser Co. v. Commercial Union Ins. Co.*, 15 P.3d 115, 133 (Wash. 2000) ("The date those invoices were paid established the proper time interest began to run.") However, where voluminous separate invoices became due on separate dates, the court may determine a single date from which prejudgment interest accrues. *Oak Harbor Freight Lines, Inc.*, 513 F.3d at 961 (affirming a district court's adoption of a single prejudgment accrual date as opposed to a separate accrual date for each of the 3,386 freight bills at issue) (citing *Chandler v. Bombardier Capital, Inc.*, 44 F.3d 80, 84 (2d Cir. 1994) (holding that the district court did not abuse its discretion in applying, over a longer period of time, a lower interest rate than it otherwise might have applied because the interest was fair and the court avoided "establishing a separate interest figure for each lost monthly payment")).

Here, the Agreement required AFS to pay CFL's invoices within 60 days of receipt. (*See* Agreement § 2.2.) CFL proposes a May 15, 2017, accrual date for its "full setoff" calculation, and a May 26, 2017, accrual date for its calculation based on the amount of the jury's verdict. (*See* Interest Mot. at 6, 8.) AFS contends that May 15, 2017, is an "arbitrary" accrual date, and that many invoices on which CFL seeks prejudgment interest were not yet due as of that date. (*See* AFS Resp. to Interest Mot. at 5-6 (citing Trial Ex. 107).) CFL responds that only 51 of the 23,642 invoices were issued after May 15, 2017. (*See* CFL Reply to Interest Mot. at 2-3.)

//

The court adopts the method affirmed by the Ninth Circuit in *Oak Harbor Freight Lines* and sets an accrual date of December 26, 2017, sixty days after the final invoice issue date of October 27, 2017—and therefore the date the final invoice was due—on all portions of the jury's damages award except for the $112,203.52 MBOL payment. (*See* Tr. Ex. 107; Am. Answer (Dkt. # 6) ¶ 49.) The parties do not provide evidence of the exact date of that payment, but they agree that AFS received the payment by August 2016. Therefore, the court sets an accrual date of September 1, 2016, for prejudgment interest on the $112,203.52 MBOL payment.

5. Prejudgment Interest Award

Based on the foregoing analysis, the court awards CFL prejudgment interest as follows:

| Date Range | Days | Base Amount | Prejudgment Interest at 12% per annum |
|---|---|---|---|
| December 26, 2017-October 25, 2019 | 669 | $2,360,023.58 | $519,075.87 |
| September 1, 2016-October 25, 2019 | 1,150 | $112,203.52 | $42,422.15 |
| **Total Prejudgment Interest:** | | | **$561,492.02** |

IV. CONCLUSION

For the reasons set forth above, the court DENIES CFL's motion for attorney's fees (Dkt. # 285); GRANTS in part and DENIES in part CFL's motion to alter or amend

//

//

the judgment to include prejudgment interest (Dkt. # 283); and awards CFL $561,492.02 in prejudgment interest. An amended judgment will follow.

Dated this 26th day of February, 2020.

JAMES L. ROBART
United States District Judge